SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff Dmitry Borodaenko,*
*on behalf of himself and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DMITRY BORODAENKO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant | Case No. 3:22-cv-7226<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,<br>42 U.S.C. §§ 12101, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12940<br>3. DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-02 |

## I. INTRODUCTION

1. Plaintiff Dmitry Borodaenko files this Class Action Complaint against Defendant Twitter, Inc. ("Twitter"), on his own behalf and on behalf of other disabled Twitter employees across the country who have been discharged or constructively discharged from their jobs during the chaotic weeks since multi-billionaire Elon Musk purchased the company.

2. Plaintiff brings claims of discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and (for employees who worked out of California) California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, challenging the company's termination, or constructive termination, of employees with disabilities who can perform their jobs with or without reasonable accommodation but who were not permitted to continue their jobs, either through termination or forced resignation after being required to accept working under unreasonable circumstances for an employee with a disability.

3. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off half of its workforce.

4. Many of the employees who have lost their jobs since Musk's purchase of the company are disabled.

5. Prior to Musk's purchase of the company, Twitter employees were permitted to work remotely. In fact, over the spring and summer of 2022, Twitter reassured employees that, following Musk's purchase of the company, they would be permitted to continue working remotely for at least a year.

6. However, shortly after Musk completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that all remaining employees would need to work out of a company office – with only rare exceptions for "exceptional" employees, that Musk himself would have to approve.

7. Many disabled employees were able to perform their jobs adequately with the reasonable accommodation of working remotely, rather than from a physical Twitter office. Musk's declaration, however, that almost all employees would need to work out of physical offices made it not possible or viable for many disabled employees to continue their jobs.

8. In addition, Musk declared that, in order to remain employed at Twitter, employees would have to "work[] long hours at high intensity." Any employees who did not agree to this mandate would have to resign.

9. Many disabled employees who have, and could continue to, perform their jobs effectively have felt that, because of their disability, they will not be able to meet this new heightened standard of performance and productivity. Thus, many disabled employees have felt forced to resign.

10. Twitter has stated that these employees would receive severance agreements shortly. Plaintiff is very concerned that employees will be asked to sign away their rights without notice that they have legal claims of discrimination and that these legal claims have already been filed on their behalf.

11. Indeed, another company owned by Elon Musk, Tesla, recently engaged in mass layoffs without notice. That company attempted to obtain releases from laid off employees without informing them of their rights under the federal or California WARN Acts. A federal court subsequently ordered the company to provide employees notice of the claims that had been filed on their behalf. See Lynch v. Tesla, Inc., 2022 WL 42952953, at *6 (W.D. Tex. Sept. 16, 2022).

12. Plaintiff files this action, bringing claims of disability discrimination, under federal and California law, and seeks to ensure that Twitter not solicit releases of claims of any such employees without informing them of the pendency of this action and their right to pursue these claims.

13. Plaintiff seeks immediate injunctive relief, as well as a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, on behalf of himself and all similarly situated employees.

## II. PARTIES

14. Plaintiff Dmitry Borodaenko is an adult resident of Scotts Valley, California, where he worked for Twitter from June 2021 until November 2022.

15. Plaintiff brings this lawsuit as a Rule 23 class action on behalf of all similarly situated disabled Twitter employees across the United States whose jobs have been affected by the company's layoffs, terminations, and heightened demands on the workforce.

16. Defendant Twitter, Inc. ("Twitter") is a Delaware corporation, headquartered in San Francisco, California.

## III. JURISDICTION

17. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

18. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, because those claims derive from a common nucleus of operative facts with Plaintiff's federal claims.

19. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

20. Twitter is a social media company that employs thousands of people across the United States.

21. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

4
CLASS ACTION COMPLAINT

22. Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition.

23. In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

24. One of the promises was that employees would be able to continue working remotely, for at least a year after Musk's acquisition of the company. This promise was made repeatedly to employees by managers, the CEO, and other staff.

25. However, following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on this promise.

26. On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately.

27. At a meeting with Twitter employees on November 10, 2022, Musk reiterated that employees needed to return to the office full time. He told employees: "if you can show up at an office and you do not show up at the office, resignation accepted -- end of story." He elaborated: "Let me be crystal clear, if people do not return to the office when they are able to return to the office -- they cannot remain at the company." Victor Ordonez and Stephanie Wash, Exclusive audio: Musk talks potential Twitter bankruptcy, return to office meeting, ABC News (November 11, 2022), https://abcnews.go.com/Business/exclusive-audio-elon-musk-tells-twitter-employees-return/story?id=93087987.

28. Musk further stated that exceptions to this policy would be made only for "exceptional people".

29. In addition to requiring remaining employees to work at physical offices, Musk also immediately began a mass layoff that has been reported to have affected half of Twitter's workforce. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as

Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

30. Twitter's new requirement that employees report to physical offices, as well as rampant terminations and layoffs, have affected disabled employees, including Plaintiff Dmitry Borodaenko.

31. Mr. Borodaenko worked as an Engineering Manager. Throughout his employment at Twitter, he worked remotely from his home. Indeed, when he was hired in June 2021, he was assured that he would always have the option to work remotely.

32. Mr. Borodaenko has a disability that makes him vulnerable to COVID-19. Thus, working from an office while the pandemic is still ongoing would create an unacceptable risk to his health and life.

33. Mr. Borodaenko informed his manager of his disability and how it prevented him from working out of a company office.

34. Following Musk's announcement that employees would have to work out of company offices, Mr. Borodaenko wrote to his manager: "In case I didn't mention it before, as [a] cancer survivor I'm at extra risk from Covid (it also counts as a disability), so I'm definitely not working from [the] office until the pandemic is over."

35. Mr. Borodaenko was not given any information about how formally to request an "exception" to the return to the office policy that Musk instituted at Twitter.

36. Not long after sending this message to his manager, Mr. Borodaenko was terminated.

37. On November 15, 2022, Mr. Borodaenko received an email from Twitter Human Resources that stated: "Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy."

38. Mr. Borodaenko had not received any notice of behavior he was alleged to have engaged in that violated company policy, nor did he engage in any behavior that would appear to him to have violated company policy (other than informing his manager that he could not comply with Musk's demand that employees begin working out of company offices).

39. In addition to the requirement that employees begin working out of company offices, Musk also made clear that working for Twitter would demand extraordinary effort and long work hours.

40. Following Musk's purchase of the company, employees have been reported to have worked 12 hour shifts, 7 days a week. Some employees were told: "The expectation is literally to work 24/7 to get this out." Some employees slept in Twitter offices while being required to work around the clock. Grace Dean, <u>Twitter staff have been told to work 84- weeks and managers slept at the office over the weekend as they scramble to meet Elon Musk's Tight deadlines, reports say</u>, BUSINESS INSIDER (Nov. 1, 2022), <u>https://www.businessinsider.com/elon-musk-twitter-staff-layoffs-long-hours-shifts-work-jobs-2022-11</u>.

41. These demands occurred while the company was in the process of mass layoffs, thus signaling to employees that these extraordinary efforts were required in order to keep their jobs.

42. Indeed, Mr. Borodaenko's workload vastly increased following the beginning of Twitter's mass layoffs. As a manager, the number of employees assigned to report to him increased from about 10 to 16.

43. On November 16, 2022, Musk sent the following email to remaining Twitter employees:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore. This will mean working long hours at high intensity. Only exceptional performance will constitute a passing grade.

Twitter will also be much more engineering-driven. Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway. At its heart, Twitter is a software and servers company, so I think this makes sense.

If you are sure that you want to be part of the new Twitter, please click yes on the link below:

[LINK]

Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.

Whatever decision you make, thank you for your efforts to make Twitter successful.

Elon

44. This further ultimatum from Musk that working at Twitter will require "working long hours at high intensity", in which "[o]nly exceptional performance" will be acceptable, is highly discriminatory against disabled employees.

45. This ultimatum does not allow for employees who require reasonable accommodation for their disabilities but who are nevertheless capable of adequately performing their jobs.

46. Further, this ultimatum, as well as Musk's behavior since he took control of Twitter, is clearly deterring disabled employees from feeling they can continue to work at the company. Plaintiff asserts that Twitter's requirements for employees, under Musk's leadership, will force many disabled employees to leave their jobs.

47. As indicated in the November 16th email from Musk, Twitter has indicated that employees who do not accept Musk's ultimatum will receive a severance package. Plaintiff is concerned that, absent court intervention, as part of that severance package, Twitter will seek releases from employees without informing them of their rights, including their right to challenge Twitter's actions as discriminatory, or the pendency of this case. Plaintiff therefore seeks immediate relief to ensure that Twitter does not violate the law and then seek to obtain releases

from the many employees who do not have notice of their rights or the pendency of the claims brought here on their behalf.

48. Indeed, Elon Musk engaged in similar behavior with respect to mass layoffs conducted earlier this year at another company he owns, Tesla. In the summer of 2022, Tesla engaged in mass layoffs without providing advanced written notice as required by the federal and California WARN Acts. Former Tesla employees brought a suit against Tesla for these violations. See Lynch et al. v. Tesla, Inc., Civ. Act. No., 1:22-cv-00597-RP (W.D. Tex.). Tesla sought to obtain full releases of all federal and California WARN Act claims in exchange for small severance payments for less than the employees were legally entitled to, as alleged in the federal lawsuit. (Tesla offered one or two weeks' severance pay, rather than the 60 days pay required to satisfy the federal and California WARN Acts). See Lynch, 2022 WL 4295295, at *1-4.) A federal court ruled that Tesla's conduct was "misleading because [the separation agreements] fail to inform potential class members of this lawsuit and the rights that they are potentially giving up under the WARN Act." Id. at *4.

49. With respect to employees who were laid off by Twitter following Musk's purchase of the company, Twitter stated that it would begin distributing severance agreements, including releases of claims, beginning last week. However, after employees filed a class action lawsuit and emergency motion seeking to block the distribution of releases without employees being informed of their claims and the pendency of the case, see Cornet et al v. Twitter, Inc., C.A. No. 3:22-cv-06857-JD (N.D. Cal.) (Dkts. 6 and 7), Twitter agreed not to distribute releases until after the plaintiffs' motion could be heard (assuming it could be heard promptly).

50. In this case as well, Plaintiff seeks immediate relief to ensure that Twitter does not violate the law and then seek to obtain releases from the many disabled Twitter employees who do not have notice of their rights or the pendency of the claims brought here on their behalf.

## COUNT I

### Americans With Disabilities Act,
### 42 U.S.C. §§ 12101, *et seq.*

Plaintiff and other employees with disabilities, or who have been perceived to be disabled, who have worked for Twitter, and could perform the essential functions of their job with or without reasonable accommodation, have been entitled to the protections of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Plaintiff is disabled, as defined by the ADA, 42 U.S.C. § 12102, and could perform the essential functions of his job with the reasonable accommodation of working remotely. Twitter required its employees, including Plaintiff, to report physically to its offices, and terminated Plaintiff after he requested that he be permitted to continue to work remotely on account of his disability. Twitter, through the rigid enforcement of its return to office policy, as well as its unreasonable physical demands on employees since Elon Musk's purchase of the company, has discriminated against Plaintiff and other disabled Twitter employees in violation of the ADA.

## COUNT II

### California Fair Employment and Housing Act,
### Gov. Code § 12940

Plaintiff and other employees with disabilities, or who have been perceived to be disabled, who have worked for Twitter in California, and could perform the essential functions of their job with or without reasonable accommodation, have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940. Plaintiff is disabled, as defined by the FEHA, Gov. Code § 12926.1, and could perform the essential functions of his job with the reasonable accommodation of working remotely. Twitter required its employees, including Plaintiff, to report physically to its offices, and terminated Plaintiff after he requested that he be permitted to continue to work remotely on account of his disability. Twitter, through the rigid enforcement of its return to office policy, as well as its unreasonable

10
CLASS ACTION COMPLAINT

physical demands on employees since Elon Musk's purchase of the company, has discriminated against Plaintiff and other disabled Twitter employees who have worked in California in violation of the FEHA.

## COUNT III

### Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

Plaintiff seeks a declaratory judgment and an injunction prohibiting Twitter from soliciting disabled employees to sign separation agreements that release their discrimination claims asserted herein, without first informing them of their rights under these statutes, the pendency of this case filed on their behalf, and Plaintiff's counsel's contact information.

## JURY DEMAND

Plaintiff requests a trial by jury on the claims asserted here.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a. Declare and find that Twitter is liable to Plaintiff and other similarly situated disabled employees under the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12940;

b. Certify this case as a class action;

c. Enter declaratory relief and an injunction enjoining Twitter from seeking releases of claims asserted herein from employees without first informing them of their rights under the law, the pendency of this lawsuit, and contact information for Plaintiffs' counsel;

d. Reinstate disabled employees who wish to return to their jobs with reasonable accommodations;

e. Award compensatory and any other appropriate damages, in an amount according to proof;

f. Award pre- and post-judgment interest;

g. Award reasonable attorneys' fees, costs, and expenses; and

h. Award any other relief to which Plaintiff and other similarly situated Twitter employees may be entitled.

Respectfully submitted,

DMITRY BORODAENKO, on behalf of himself and all others similarly situated,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

Dated:        November 16, 2022