1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO and ABHIJIT MEHTA, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>       vs.<br><br>TWITTER, INC.,<br><br>              Defendant. | Case No. 4:22-cv-7226-HSG<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF ABHIJIT MEHTA TO ARBITRATION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     April 20, 2023<br>Time:    2:00 p.m.<br>Judge:   Hon. Haywood S. Gilliam, Jr. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on April 20, 2023, at 2:00 p.m. or as soon thereafter as

3

may be heard in Courtroom 2 on the 4th Floor of the United States Courthouse, located at 1301

4

Clay Street, Oakland, California 94612, Defendant Twitter, Inc. ("Twitter"), will and hereby does

5

move this Court for an Order compelling Plaintiff Abhijit Mehta to arbitrate the claims alleged in

6

this action on an individual basis. Mehta clearly and unequivocally agreed to arbitrate any

7

employment-related disputes with Twitter on only an individual basis. In contravention of his

8

agreement, Mehta has alleged employment-related claims in a putative class action against

9

Twitter. Because Mehta has refused to abide by his arbitration agreement, Twitter must seek

10

relief from the Court. The arbitration agreement, including its class action waiver provision, is

11

valid, binding, and legally enforceable under the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1

12

*et seq.*; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1616, 1632 (2018). As a result, the Court

13

should compel Mehta to arbitrate his claims on an individual basis.

14

This Motion is based on this Notice of Motion and Motion, the accompanying

15

Memorandum of Points and Authorities, the Declaration of Fidelma Callaghan and all exhibits

16

attached thereto, the evidence to which the Court may take judicial notice, the record in this

17

action, and any other evidence as may be presented by Twitter at or before the hearing on this

18

Motion.

19

Dated: December 21, 2022                    MORGAN, LEWIS & BOCKIUS LLP

20

21

By   */s/ Eric Meckley*

22

Eric Meckley
Brian D. Berry

23

Ashlee N. Cherry
Attorneys for Defendant

24

TWITTER, INC.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND ........................................................................ 1

    A. Plaintiff Entered into a Binding Dispute Resolution Agreement with Twitter. .............................................................................................................. 1

    B. The Relevant Terms of the Dispute Resolution Agreement. ................................. 3

    C. Despite His Agreement to Arbitrate on an Individual Basis Only, Plaintiff Filed a Putative Class Action in This Court. ......................................................... 4

III. ARGUMENT ...................................................................................................................... 5

    A. The Court Must Compel Mehta to Arbitration on an Individual Basis ................. 6

        1. Mehta Assented to the Agreement Both By Signing It and By Remaining Employed for 30 Days Without Opting Out. ........................... 6

        2. The Agreement Encompasses the Claims Alleged in the FAC. ................. 8

        3. The Class Action Waiver is Enforceable. .................................................. 9

        4. The Delegation Clause Is Enforceable ..................................................... 10

    B. The Agreement Is Enforceable ............................................................................ 11

        1. The Agreement Is Not Procedurally Unconscionable .............................. 11

        2. The Agreement Is Not Substantively Unconscionable. ........................... 13

IV. CONCLUSION ................................................................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*24 Hour Fitness, Inc. v. Superior Court,*
   66 Cal.App.4th 1199 (1998)...................................................................................... 11

*Am. Express Co. v. Italian Colors Rest.,*
   570 U.S. 228 (2013).................................................................................................... 9

*Armendariz v. Foundation Health Psychare Services, Inc.,*
   24 Cal. 4th 83 (2000) .................................................................................... 11, 13, 14

*Asher v. E! Ent. Television, LLC,*
   No. CV 16-8919-RSWL-SSX, 2017 WL 3578699 (C.D. Cal. Aug. 16, 2017)...................... 12

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011).................................................................................................... 9

*Baltazar v. Forever 21, Inc.,*
   62 Cal. 4th 1237 (2016) ............................................................................................ 11

*Beckman v. Zuffa LLC,*
   No. CV215570MWFAGRX, 2021 WL 5445464 (C.D. Cal. Nov. 15, 2021) ..................... 6, 7

*Callahan v. Paychex N. Am. Inc.,*
   No. 21-CV-05670-CRB, 2022 WL 11902205 (N.D. Cal. Oct. 20, 2022) ...................... 15, 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000)..................................................................................... 6

*Circuit City Stores v. Ahmed,*
   283 F.3d 1198 (9th Cir. 2002)..................................................................................... 12

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003)...................................................................................................... 5

*Davis v. Nordstrom, Inc.,*
   755 F.3d 1089 (9th Cir. 2014)..................................................................................... 6

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985).................................................................................................... 5

*Dean Witter Reynolds, Inc. v. Superior Court,*
   211 Cal.App.3d 758 (1989)......................................................................................... 12

*Dominguez v. Stone Brewing Co.,*
   LLC, No. 20-CV-251-WQH-BLM, 2020 WL 3606396 (S.D. Cal. July 2, 2020)................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ................................................................................................ 2, 5, 9

*Ferguson v. Countrywide Credit Industries, Inc.*,
    298 F.3d 778 (9th Cir. 2002) ................................................................................................ 11

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................ 6

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................ 11, 12

*Gonzalez v. Interstate Cleaning Corp.*,
    No. 19-CV-07307-KAW, 2020 WL 1891789 (N.D. Cal. Apr. 16, 2020) ............................ 15

*HM DG, Inc. v. Amini*,
    219 Cal.App.4th 1100 ................................................................................................ 13

*Jacobson v. Snap-on Tools Company*,
    No. 15-CV-02141-JD, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) ................................ 10

*Johnson v. Lowe's Home Centers, LLC*,
    No. 221CV00087TLNJDP, 2022 WL 4387796 (E.D. Cal. Sept. 22, 2022) ........................ 16

*Jones-Mixon v. Bloomingdale's, Inc.*,
    No. 14-cv-01103-JCS, 2014 WL 2736020 (N.D. Cal. June 11, 2014) ................................ 7

*Kilgore v. Keybank Nat'l Ass'n*,
    673 F.3d 947 (9th Cir. 2012) ................................................................................................ 11

*Kim v. Tinder, Inc.*,
    2018 WL 6694923 (C.D. Cal. July 12, 2018) .................................................................. 5

*Kinney v. United HealthCare Servs., Inc.*,
    70 Cal. App. 4th 1322 (1999) ................................................................................................ 13

*Lacour v. Marshalls of CA, LLC*,
    No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ............................ 10

*Lang v. Skytap, Inc.*,
    347 F.Supp.3d 420 (N.D. Cal. 2018) ................................................................................ 11

*Louis v. Healthsource Glob. Staffing, Inc.*,
    No. 22-CV-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022) ................................ 10

*Marchese v. Shearson Hayden Stone, Inc.*,
    734 F.2d 414 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987) .......................................... 8

*Martinez v. Ross Stores, Inc.*,
    No. 18-CV-04636-JD, 2019 WL 4221704 (N.D. Cal. Sept. 5, 2019) ................ 10, 11, 12, 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
No. 18-CV-05226-EMC, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022)............................. 16

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016)....................................................................................... 10

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011)......................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ............................................................................................................ 8

*Nanavati v. Adecco USA, Inc.*,
99 F.Supp.3d at 1076 ...................................................................................................... 7

*Ortega v. Spearmint Rhino Companies Worldwide, Inc.*,
No. EDCV17206JGBKKX, 2017 WL 11272598 (C.D. Cal. June 12, 2017)....................... 14

*Pambakian v. Blatt*,
859 F. App'x 808 (9th Cir. 2021) .................................................................................. 12

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
55 Cal. 4th 223 (2012) ................................................................................................. 11

*Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*,
No. 17-CV-02794-VKD, 2018 WL 4599645 (N.D. Cal. Sept. 25, 2018) ........................... 15

*Radcliff v. San Diego Gas & Elec. Co.*,
No. 20-CV-1555-H-MSB, 2022 WL 4229305 (S.D. Cal. Sept. 12, 2022) ........................... 16

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
232 Cal.App.4th 836 (2014).......................................................................................... 7

*Sanchez v. Carmax Auto Superstores California, LLC*,
224 Cal. App. 4th 398 (2014), review denied (June 11, 2014) ....................................... 14, 15

*Shams v. Revature LLC*,
No. 22-CV-01745-NC, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022)................................ 16

*Smith v. Rent-A-Center, Inc.*,
No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019)............................ 6

*Tagliabue v. J.C. Penney Corp., Inc.*,
No. 1:15-CV-01443-SAB, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) .......................... 7

*U.S. v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007)........................................................................................... 5

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017)........................................................................................... 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ................................................................................................. 15, 16

*Williams v. Eaze Sols., Inc.*,
   417 F. Supp. 3d 1233 (N.D. Cal. 2019) ................................................................................. 10

**STATUTES**

9 U.S.C. §§ 1 ......................................................................................................................... 2, 3

9 U.S.C. § 2 ................................................................................................................................. 5

9 U.S.C. § 5 ........................................................................................................................... 4, 13

Cal. Civ. Code § 1633.1 *et seq.* ................................................................................................. 6

Cal. Civ. Code § 1633.7(a) .......................................................................................................... 6

Cal. Civ. Code § 1633.9 ............................................................................................................... 7

Federal Arbitration Act ...................................................................................................... *passim*

**COURT RULES**

Fed. R. Evid. 901(a) ..................................................................................................................... 6

Fed. R. Evid. 901(b)(4) ................................................................................................................. 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

I.      **INTRODUCTION**

Plaintiff Abhijit Mehta agreed to resolve all employment-related disputes with Defendant Twitter, Inc. exclusively through binding arbitration on an individual basis only. On December 7, 2022, original plaintiff Dmitry Borodaenko amended his complaint to add Mehta as a named plaintiff.[1]  Mehta alleges claims based on his employment with Twitter. These claims fall squarely within the scope of his arbitration agreement and therefore must be compelled to arbitration.  As this Court is aware, the Federal Arbitration Act ("FAA") and applicable United States Supreme Court precedent dictate that where, as here, a plaintiff has entered into an arbitration agreement with a class action waiver, his claims must be compelled to arbitration on an individual basis. Mehta cannot prosecute his claims before this Court because he agreed to binding arbitration, on an individual basis, as the exclusive means to resolve any employment-related disputes. The Court should grant Twitter's motion.

II.     **RELEVANT FACTUAL BACKGROUND**

A.      **Plaintiff Entered into a Binding Dispute Resolution Agreement with Twitter.**

When Twitter offers a job to an applicant for an employment position in the United States, a member of Twitter's Global People Services team prepares an offer packet in Twitter's internal OWL system. Declaration of Fidelma Callaghan ("Callaghan Decl.") ¶ 3. The offer packet includes the applicant's offer letter, a separate standalone Dispute Resolution Agreement, and other documents. *Id.* Twitter sends the applicant's offer packet to the applicant via the email address provided by the applicant during the application process (or their @twitter.com email address if the offer was made in connection with a conversion from a contractor role to an employee position). *Id.* An applicant's offer letter explains the steps the applicant must take to accept the offer, which includes signing the offer letter and signing the Dispute Resolution Agreement (as well as other documents in the offer packet) and returning the signed documents to Twitter on or before the date on which the offer expires. *Id.* ¶ 4. The offer letter provided to

---

[1] Twitter does not seek to compel Plaintiff Borodaenko to arbitration, as Borodaenko timely opted out of Twitter's Dispute Resolution Agreement. However, due to the numerous deficiencies in Borodaenko's First Amended Complaint, in addition to this motion to compel arbitration as to Mehta, Twitter is concurrently moving to dismiss Borodaenko's First Amended Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

Mehta stated:

> **Dispute Resolution**. We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Policy. A copy of the Dispute Resolution Policy is enclosed with this letter.

The offer letter ended by stating:

> To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to [Twitter representative].

*Id.* ¶ 7, Ex. A.

In the space immediately above the location where the applicant is directed to sign, Mehta's offer letter contained the following attestation: "I have read, understood and accept all the provisions of this offer of employment." *Id.* When an applicant receives an electronic link to an offer letter and clicks on the link, the internet-based Adobe Sign program launches and presents the applicant with the complete offer packet in PDF format.[2] *Id.* ¶ 5. The program allows the applicant to scroll up and down to review the text of each document on the applicant's computer screen; there is no time limit on this review and the applicant can take as long as desired to read the text of each document. *Id.* The program also identifies the portions of the documents that require an applicant's signature or initials, and the program allows the applicant to apply his or her electronic signature or initials via their choice of typing, drawing, or taking a picture of their signature. *Id.* When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button that finalizes and applies the electronic signatures, which submits the entire executed packet to Twitter, and also provides a hyperlink to the documents for the applicant to download. *Id.* The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address. *Id.* ¶ 6. When Twitter receives a copy of the signed offer letter and Dispute Resolution Agreement, Twitter saves the signed documents in the applicant's personnel file. *Id.*

Here, Mehta received an offer packet from Twitter that included his offer letter and the

---

[2] Adobe Sign is a type of cloud-based electronic signature application program that allows users to send, sign, track, and manage signature processes using a browser or mobile device.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

Dispute Resolution Agreement. *Id.*, Ex. 7. Mehta electronically signed his offer letter, and separately signed the Dispute Resolution Agreement. *Id.* Mehta further manifested assent to the Dispute Resolution Agreement by remaining employed by Twitter 30 days without submitting a request to opt out of arbitration. *Id.* ¶ 8.

**B.**     **The Relevant Terms of the Dispute Resolution Agreement.**

The Dispute Resolution Agreement that Mehta signed contains the following material terms:

- Introductory Paragraph: The Agreement contains the following prefatory paragraph:

> "**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**"

*Id.*, ¶ 7, Ex. A (emphasis in original).

- Governing Law. The Agreement expressly states that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. and evidences a transaction involving commerce." *Id.* § 1.

- Covered Claims. The Agreement states that it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates. . . . [and] "also applies, without limitation, to disputes regarding the employment relationship . . . termination . . . and claims arising under . . . state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims." *Id.*

- Commitment to Arbitrate Claims. The Agreement provides: "Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.*

- Right to Opt Out. The Agreement explicitly states that arbitration is not a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

mandatory condition of an employee's employment with Twitter and provides an opt-out procedure for employees who do not want to be bound by the terms of the Agreement.

> **Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com.
> . . .
>
> An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. . .

*Id.* § 8 (emphasis in original).

- <u>Delegation Clause</u>. The Agreement contains a delegation clause that authorizes the arbitrator to resolve all "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id.* § 1.

- <u>Class Action Waiver</u>. The Agreement contains an explicit class action waiver:

> **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**.

*Id.* § 5. The Agreement also expressly provides that the enforceability of the class action waiver may be determined only by a "court of competent jurisdiction" and not by an arbitrator. *Id.*

- <u>Arbitration Provider</u>. The Agreement does not specify an arbitration provider. *Id.* § 3.

**C.      Despite His Agreement to Arbitrate on an Individual Basis Only, Plaintiff Filed a Putative Class Action in This Court.**

On November 16, 2022, Plaintiff Dmitry Borodaenko filed a complaint alleging putative class claims for discrimination in violation of the Americans with Disabilities Act, discrimination

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1  in violation of the California Fair Employment and Housing Act, and the Declaratory Judgment

2  Act. ECF No. 1. On December 7, 2022, Borodaenko filed the operative First Amended Complaint

3  ("FAC") adding Mehta as a named plaintiff and alleging additional putative class claims for

4  alleged violation of the Family and Medical Leave Act and violation of the California Family

5  Rights Act. ECF No. 8. Each of these claims arises out of and relates to Mehta's employment

6  with Twitter.

7  **III.   ARGUMENT**

8         Where, as here, an arbitration agreement has an express "FAA choice-of-law" provision,

9  the FAA governs the agreement. *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12,

10  2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-1131 (9th Cir. 2015)); *Rodriguez v.*

11  *American Technologies*, Inc., 136 Cal.App.4th 1110, 1122 (2006). Even if the Agreement did not

12  expressly incorporate the FAA, the FAA still applies because Twitter's business plainly

13  "involve[es] commerce."  *See* 9 U.S.C. § 2. Indeed, courts broadly construe the FAA's use of the

14  term "involving commerce" to cover any contract affecting interstate commerce to the full extent

15  of Congress's Commerce Clause power. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56

16  (2003) (citing *Allied–Bruce Terminix Cos.*, 513 U.S., at 273–274, 115 S.Ct. 834. As the Ninth

17  Circuit has explained, "the Internet is an instrumentality and channel of interstate commerce."

18  *U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) (quoting *United States v. Trotter*, 478 F.3d

19  918, 921 (8th Cir. 2007) (per curiam)). The FAA plainly governs the Agreements at issue here.

20         Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable,

21  save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.

22  § 2. The US Supreme Court has mandated that arbitration agreements governed by the FAA

23  "must be enforced as written," subject only to generally applicable contract defenses such as

24  fraud, duress, or unconscionability. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).

25  The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates

26  that district courts shall direct the parties to proceed to arbitration on issues as to which an

27  arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218

28  (1985).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

In deciding a motion to compel arbitration under the FAA, the Court's role is limited to answering two questions: (1) does a valid agreement to arbitrate exist; and, if so, (2) does the arbitration agreement encompass the dispute or claims at issue?  If the answer to both questions is "yes," then the Court must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). Here, because the answer to both inquiries is unequivocally "yes," the Court should compel Mehta to arbitrate his claims on an individual basis.

**A.**     **The Court Must Compel Mehta to Arbitration on an Individual Basis**

**1.**     **Mehta Assented to the Agreement Both By Signing It and By Remaining Employed for 30 Days Without Opting Out**.

Courts generally apply state-law principles of contract formation when deciding whether parties assented to a contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). In California, an agreement to arbitrate may be either express or implied in fact. *Davis*, 755 F.3d at 1093. "A defendant may meet its initial burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature to the defendant's motion to compel arbitration."  *Smith v. Rent-A-Center, Inc.*, No. 118CV01351LJOJLT, 2019 WL 1294443, at *4 (E.D. Cal. Mar. 21, 2019) (quoting *Espejo v. S. California Permanente Med. Grp.*, 246 Cal.App.4th 1047, 1060 (2016)).

California enacted the Uniform Electronic Transactions Act, Cal. Civ. Code § 1633.1 *et seq*., which provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" and specifies that "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a). A defendant must show by a preponderance of the evidence that the electronic signature on an agreement is attributable to a plaintiff (*i.e.*, that it is more likely than not it was the plaintiff's act that caused the signature to be created). Fed. R. Evid. 901(a); *see, e.g., Beckman v. Zuffa LLC*, No. CV215570MWFAGRX, 2021 WL 5445464, at *4 (C.D. Cal. Nov. 15, 2021) (granting motion to compel arbitration in employment case where the employee affixed electronic signature to the agreement using Adobe Sign). This "may be shown in any manner," including by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1   circumstantial evidence, and it "is not a difficult evidentiary burden to meet." *Ruiz v. Moss Bros.*

2   *Auto Grp., Inc.*, 232 Cal.App.4th 836, 843-844 (2014) (citing Cal. Civ. Code § 1633.9); *see also*

3   *Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d at 1076 (holding that a detailed declaration "easily

4   satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the

5   existence of a valid arbitration agreement"). Fed. R. Evid. 901(b)(4) allows consideration of the

6   "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item,

7   taken together with all the circumstances to authenticate a document."  Declarations from

8   company representatives are sufficient to authenticate electronic signatures. *See Nanavati v.*

9   *Adecco USA, Inc.*, 99 F.Supp.3d 1072, 1076 (N.D. Cal. 2014); *Jones-Mixon v. Bloomingdale's,*

10  *Inc.*, No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11, 2014). In *Tagliabue v.*

11  *J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15,

12  2015), the plaintiff disputed the validity of his electronic signature on an arbitration agreement.

13  The employer submitted evidence regarding its onboarding system and process for new hires to

14  complete designated steps, including electronically signing an arbitration agreement, to complete

15  the hire process. *Id*. The court in *Tagliabue* found that this evidence, coupled with the fact the

16  plaintiff's electronic signature appeared on other documents presented to him during onboarding,

17  established that the plaintiff more likely than not had signed the agreement. *Id.*; *see also*

18  *Beckman*, 2021 WL 5445464, at *4.

19       Here, Plaintiff cannot dispute that he electronically signed his Agreement; his signature

20  appears on the Agreement, his signature appears on his offer letter, and he could not have

21  completed the process and been hired by Twitter without signing the Agreement. Callaghan Decl.

22  ¶ 7, Ex. A. Plaintiff further manifested his assent to the Agreement by remaining employed at

23  Twitter for 30 days without submitting an opt out request. *Id.*, ¶¶ 7-8, Ex. A § 8 ("Should an

24  Employee not opt out of this Agreement within 30 days of the Employee's receipt of this

25  Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of

26  this Agreement by Employee and the Company"). As a result, the Court must find that a valid

27  agreement to arbitrate exists for Mehta.

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

7

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1

**2.    The Agreement Encompasses the Claims Alleged in the FAC.**

To determine the scope of an arbitration agreement, the Court must look to the express

terms of the parties' agreement. *United States ex rel. Welch v. My Left Foot Children's Therapy,*

*LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,

207 F.3d 1126, 1130 (9th Cir. 2000)). "If the text is plain and unambiguous, that is the end of our

analysis in this case because we must rigorously enforce arbitration agreements according to their

terms." *United States ex rel. Welch*, 871 F.3d at 796 (citations omitted). A claim is subject to

arbitration "unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." *Marchese v. Shearson Hayden*

*Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987). "[A]ny doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

*Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

Here, the FAC alleges claims for discrimination in violation of the Americans with

Disabilities Act, discrimination in violation of the California Fair Employment and Housing Act,

violation of the Family and Medical Leave Act, violation of the California Family Rights Act, and

the Declaratory Judgment Act.  Each of these claims are premised upon Mehta's employment

with Twitter. The discrimination claims are based on Plaintiff Borodaenko's disability and

alleged need for remote work as a reasonable accommodation.[3] FAC, pp. 11-12. Specifically,

Borodaenko alleges that Twitter's return-to-work directive and work culture "discriminated

against Plaintiff Borodaenko and other disabled Twitter employees" in violation of the ADA and

FEHA." *Id*. The Family and Medical Leave Act and California Family Rights Act claims arise

from Mehta's termination while he was on unpaid family leave.[4] FAC, pp. 12-13. Mehta alleges

that Twitter's layoffs allegedly "disproportionally impacted employees who have taken or who

have applied to take family and medical leave." *Id.*  Plaintiffs' derivative claim for a declaratory

---

[3] The FAC does not include any facts alleging that Mehta suffered from a disability or required an accommodation. *See generally* FAC, pp. 11-12. Indeed, Counts One and Two in the FAC do not mention Mehta at all by name. *Id.*
[4] The FAC does not include any facts alleging that Borodaenko took or planned to take a protected leave. *See generally* FAC, pp. 12-13. Counts Three and Four in the FAC do not mention Borodaenko at all by name. *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1   judgment is predicated on the same facts alleged in support of Counts One, Two, Three, and Four.

2   *Id.* p. 14. Each of these claims fall squarely within the scope of the Agreement because they are

3   disputes "arising out of or related to [Plaintiffs'] employment with Twitter" and their termination.

4   As a result, Mehta cannot dispute that the claims in the FAC are covered by and subject to

5   arbitration under the plain terms of his Agreement.

6   ### 3.   The Class Action Waiver is Enforceable.

7   Class waivers in arbitration agreements are enforceable under the FAA. Courts must

8   "rigorously enforce" arbitration agreements according to their terms, including terms that

9   "specify *with whom* [the parties] choose to arbitrate their disputes." *Am. Express Co. v. Italian*

10  *Colors Rest.*, 570 U.S. 228, 233 (2013) (italics and brackets in original) (citations omitted). There

11  is no "entitlement to class proceedings for the vindication of statutory rights." *Id.* at 234. The

12  Supreme Court overruled prior California law barring enforcement of class action waivers. *AT&T*

13  *Mobility LLC v. Concepcion*, 563 U.S. 333, 341-52 (2011). Recognizing that "[t]he overarching

14  purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their

15  terms so as to facilitate streamlined proceedings," the Supreme Court held that California law

16  restricting class action waivers was "inconsistent with the FAA." *Id.* at 344. In *Epic Systems*

17  *Corp. v. Lewis*, 138 S. Ct. at 1632, the Supreme Court confirmed that arbitration agreements in

18  the employment context are no exception to the rule that class waivers are enforceable under the

19  FAA.

20  Here, Mehta expressly waived his right to file or participate in a class action when he

21  entered into the Agreement:

22      **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly, (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").**

25  Callaghan Decl., ¶ 7, Ex. A § 5.

26  Only the Court is authorized to resolve the enforceability of the class action waiver. *See*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

*Id*.[5]  Because the plain language of the Agreement clearly prohibits arbitration on a class basis, and because such waivers are enforceable as a matter of law, the Court should compel Mehta to submit his claims to arbitration on an individual basis only. *See, e.g., Martinez v. Ross Stores, Inc.*, No. 18-CV-04636-JD, 2019 WL 4221704, at *3 (N.D. Cal. Sept. 5, 2019) (acknowledging the validity of class action waiver); *Jacobson v. Snap-on Tools Company*, No. 15-CV-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (enforcing class action waiver and ordering plaintiff to submit his claims to arbitration on an individual basis); *Lacour*, 2021 WL 1700204 at *6 (striking class claims and compelling individual arbitration).

### 4.    The Delegation Clause Is Enforceable

Parties may agree to delegate gateway issues of arbitrability to an arbitrator so long as there is "clear and unmistakable" evidence of their intent to do so. *Momot v. Mastro*, 652 F.3d 982, 987-988 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). Here, the Agreement states:

> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Because these terms clearly and unmistakably manifest the parties' intent to delegate certain issues to the arbitrator, the Agreement's delegation clause is enforceable. The Court should decide questions of contract formation and enforceability of the class action waiver and defer to the arbitrator questions related to the interpretation and enforceability of the Agreement. *See, e.g., Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-CV-02436-JD, 2022 WL 4960666, at *2 (N.D. Cal. Oct. 3, 2022) (enforcing delegation clause); *Williams v. Eaze Sols., Inc.*, 417 F.

---

[5] Such a determination should be made in the Court's order compelling Mehta's individual claims to arbitration, and not be deferred pending any challenges to the Agreement's enforceability. *See, e.g., Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *6 (N.D. Cal. Apr. 29, 2021) (enforcing the class action waiver while ordering the arbitrator to determine all other issues of enforceability).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1  Supp. 3d 1233, 1241 (N.D. Cal. 2019) (enforcing delegation clause).

2      **B.**    <u>**The Agreement Is Enforceable.**</u>

3      Since Twitter has shown that a valid agreement to arbitrate exists and applies to the claims

4  at issue, Mehta bears the burden of proving that the Agreement is not valid or enforceable. *Lang*

5  *v. Skytap, Inc.*, 347 F.Supp.3d 420, 426 (N.D. Cal. 2018); *Pinnacle Museum Tower Assn. v.*

6  *Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 226 (2012). An arbitration agreement

7  can be invalidated only if there is a showing that the agreement is both procedurally and

8  substantively unconscionable. *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778,

9  783 (9th Cir. 2002); *see also Armendariz v. Foundation Health Psychare Services, Inc.,* 24 Cal.

10  4th 83, 114 (2000). While courts "use a sliding scale in analyzing these two elements . . . [n]o

11  matter how heavily one side of the scale tips, both procedural and substantive unconscionability

12  are required for a court to hold an arbitration agreement unenforceable." *Kilgore v. Keybank*

13  *Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare*

14  *Servs., Inc.*, 24 Cal. 4th 83, 99 (2000)). As explained above, these issues are delegated to the

15  arbitrator. However, to the extent the Court chooses to address them, the Court should find that

16  the Agreement is enforceable.

17      **1.**    <u>**The Agreement Is Not Procedurally Unconscionable.**</u>

18      Procedural unconscionability refers to "oppression" or "surprise" due to unequal

19  bargaining power that results in no real negotiation and an absence of meaningful choice. *24*

20  *Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1213 (1998). The procedural element

21  to unconscionability may arise in connection with adhesion contracts, but the finding of an

22  adhesion contract does not "per se" render an arbitration agreement unenforceable. *See, e.g.*,

23  *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245, 1251 (2016) (enforcing arbitration

24  agreement where acceptance was a condition of employment); *see also Martinez*, 2019 WL

25  4221704, at *2 (holding that a contract of adhesion carries only a "modicum of procedural

26  unconscionability" that is "not enough to find an agreement to arbitrate unenforceable"). Further,

27  the U.S. Supreme Court has recognized that "there often will be unequal bargaining power

28  between employers and employees." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

(1991). However, "[m]ere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable. *Id*. Further, the "freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability." *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 769-771 (1989); *see also Circuit City Stores v. Ahmed,* 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability, in part, because the plaintiff had an opportunity to opt out of arbitration).

Here, the Agreement is not procedurally unconscionable. The Agreement is a standalone document entitled "Dispute Resolution Agreement."  The Agreement contains a disclaimer, in bold type, at the top of the first page advising applicants that the Agreement "is a contract and covers important issues relating to your rights" and advising them of their right to "seek assistance from independent advisors" regarding the Agreement. *See* Callaghan Decl., ¶ 7, Ex. A. The Agreement uses plain language to explain the arbitration process and the rights an applicant is waiving by entering into the Agreement. Further, the Agreement contains an opt-out provision stated in a conspicuous, standalone section entitled (in bold), "**An Employee's Right to Opt Out of Arbitration**." The opt-out section states in bold text, "**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement**," and then proceeds to explain how the employee can obtain an opt-out form. *Id.* at § 8.

Twitter anticipates that Mehta may argue that the Agreement is procedurally unconscionable because it does not identify an arbitral forum. This argument is unavailing. "[T]he validity of an arbitration agreement is not contingent upon the agreement identifying a specific arbitrator or specifying a particular method for appointing an arbitrator."  *Pambakian v. Blatt*, 859 F. App'x 808, 809 (9th Cir. 2021) (quoting *HM DG, Inc. v. Amini*, 219 Cal.App.4th 1100, 1108); *Asher v. E! Ent. Television, LLC,* No. CV 16-8919-RSWL-SSX, 2017 WL 3578699, at *4 (C.D. Cal. Aug. 16, 2017); *see also Martinez*, 2019 WL 4221704, at *3 (granting motion to compel arbitration even though the agreement at issue "does not name a specific arbitration entity such as AAA or JAMS"). In addition, the FAA itself specifies a procedure for appointment of an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

1   arbitrator in the absence of an arbitrator-selection process. 9 U.S.C. § 5 ("if no method be

2   provided therein . . ."); *Dominguez v. Stone Brewing Co*., LLC, No. 20-CV-251-WQH-BLM,

3   2020 WL 3606396, at *7 (S.D. Cal. July 2, 2020) (rejecting procedural unconscionability

4   argument under *HM DG, Inc.* and the FAA).  No evidence exists of oppression or surprise and,

5   accordingly, Mehta cannot demonstrate that the Agreement is procedurally unconscionable.

6                    **2.        The Agreement Is Not Substantively Unconscionable.**

7                Substantive unconscionability "focuses on the terms of the agreement and whether those

8   terms are so one-sided as to shock the conscience." *Kinney v. United HealthCare Servs., Inc.*, 70

9   Cal. App. 4th 1322, 1330 (1999). The California Supreme Court in *Armendariz* set forth criteria

10  for assessing whether an agreement may be substantively unconscionable. An employment

11  arbitration agreement must provide for the following: (1) a neutral arbitrator, (2) adequate

12  discovery, (3) a written award, (4) the availability of all the types of relief that would otherwise

13  be available in court, (5) payment by the employer of any arbitration fees beyond what the

14  employee would have to pay in court, and (6) include a "modicum of bilaterality."  *Armendariz*,

15  24 Cal. 4th at 102-14, 117-18. Here, the Agreement satisfies each of these criteria.

16               First, the Agreement provides for the selection of a neutral arbitrator. The Agreement

17  states that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the

18  Employee" and "[i]f for any reason the parties cannot agree to an Arbitrator, either party may

19  apply to a court of competent jurisdiction with authority over the location where the arbitration

20  will be conducted for appointment of a neutral Arbitrator."  Callaghan Decl., ¶ 7, Ex. A § 3.

21  Second, the Agreement provides for discovery sufficient to vindicate Mehta's claims, stating:

22  "[T]he parties will have the right to conduct adequate civil discovery, bring dispositive motions,

23  and present witnesses and evidence as needed to present their cases and defenses, and any

24  disputes in this regard shall be resolved by the Arbitrator." *Id.* § 5. Third, the Agreement

25  specifically provides for a written, reasoned award: "The Arbitrator will issue a decision or award

26  in writing, stating the essential findings of fact and conclusions of law." *Id.* § 7. Fourth, nothing

27  in the Agreements limits the legal rights, remedies, or defenses that would be available in court

28  and provides for all types of relief that otherwise would be available in court. *Id.* § 7 ("The

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

13

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement"). Fifth, the Agreement provides that Twitter will pay all costs unique to arbitration "in all cases where required by law."[6] *Id.* § 6. Finally, the Agreement provides that all parties are mutually required to submit their claims to arbitration. *Id.* § 1 ("This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. . .") The Agreement is binding on both Mehta and Twitter, thereby satisfying the final *Armendariz* requirement of a "modicum of bilaterality."

Twitter anticipates that Mehta may argue that the confidentiality provision and the PAGA waiver in the Agreement render it substantively unconscionable.[7] Both arguments fail. The Agreement contains a confidentiality provision that states:

> Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties.

*Id.* § 7.

This provision is similar to the confidentiality provision in *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398 (2014), review denied (June 11, 2014), which required "that the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public unless the parties agree otherwise, or as appropriate in any subsequent proceeding between the parties, or as may be appropriate in response to government or legal process." *Id.* at 408. The *Sanchez* court found that there was "nothing unreasonable or prejudicial about" the confidentiality requirement and it was "not unconscionable." *Id*. The Ninth

---

[6] Similar fee provisions have been upheld as satisfying *Armendariz*. *See, e.g., Ortega v. Spearmint Rhino Companies Worldwide, Inc*., No. EDCV17206JGBKKX, 2017 WL 11272598, at *6 (C.D. Cal. June 12, 2017) (fee provision that stated "to the extent required by the law of the jurisdiction in which Club operates, the Companies shall pay those costs and fees unique to the arbitration process" was not unconscionable).

[7] In addition, such an argument would be of "no moment" because the First Amended Complaint does not assert a PAGA claim. *See Martinez v. Ross Stores, Inc.,* No. 18-CV-04636-JD, 2019 WL 4221704, at *3 (N.D. Cal. Sept. 5, 2019).

1    Circuit reached the same conclusion when evaluating an identical confidentiality provision. *See*

2    *Poublon*, 846 F.3d at 1268 ("Here, there is no persuasive data that the California Supreme Court

3    would reach a different conclusion than [*Sanchez*], and the fact that the California Supreme Court

4    declined review of [*Sanchez*] supports this conclusion.")  In line with these appellate opinions,

5    courts in this District routinely reject the argument that standard confidentiality provisions are

6    substantively unconscionable. *See, e.g., Callahan v. Paychex N. Am. Inc*., No. 21-CV-05670-

7    CRB, 2022 WL 11902205, at *7 (N.D. Cal. Oct. 20, 2022) (explaining that finding a standard

8    confidentiality provision in an arbitration agreement to be substantively unconscionable would

9    run afoul of the FAA); *Gonzalez v. Interstate Cleaning Corp*., No. 19-CV-07307-KAW, 2020

10   WL 1891789, at *7 (N.D. Cal. Apr. 16, 2020) (explaining that *Poublon* superseded *Ting v. AT&T*,

11   319 F.3d 1126, 1152 (9th Cir. 2003) and "find[ing] that the confidentiality clause is not

12   substantively unconscionable," based on *Poublon* and *Sanchez*); *Prasad v. Pinnacle Prop. Mgmt.*

13   *Servs*., LLC, No. 17-CV-02794-VKD, 2018 WL 4599645, at *9 (N.D. Cal. Sept. 25, 2018)

14   (confidentiality clause that covered "all aspects" of the arbitration except where "otherwise

15   disallowed by statute" or "agree[d] in writing" by the parties was not substantively

16   unconscionable). Thus, there is no basis for finding that the Agreement is substantively

17   unconscionable based on its inclusion of a standard confidentiality provision.

18            With respect to the PAGA waiver, the Agreement states in bold text, "**You and the**

19   **Company agree to bring any dispute on an individual basis only** . . . ," and not as a class,

20   collective, or PAGA representative claim. Callaghan Decl., ¶ 7, Ex. A § 5. It then states that

21   "[t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a private

22   attorney general representative action ('Private Attorney General Waiver')" and concludes with a

23   severability clause that explicitly distinguishes between an "individual action" and an action that

24   would invoke the claim-aggregating devices of a class, collective, or representative PAGA action.

25   *Id.* The U.S. Supreme Court's recent landmark decision in *Viking River Cruises, Inc. v. Moriana*,

26   142 S. Ct. 1906 (2022) held that "the FAA preempts the rule of *Iskanian* insofar as it precludes

27   division of PAGA actions into individual and non-individual claims through an agreement to

28   arbitrate." *Id.* at 1924. In the wake of *Viking River*, District Courts have concluded arbitration

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG

agreements do not contain a "wholesale" PAGA waiver where, as here, the agreement distinguishes between individual actions and claim-aggregating, "representative" actions. *See, e.g., Shams v. Revature LLC,* No. 22-CV-01745-NC, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022), at *2 (enforcing PAGA waiver under *Viking River* because the "context of where 'private attorney general' appears makes clear that the waiver applies to non-individual representative actions, not [the employee's] individual PAGA claims on behalf of the State."); *Callahan,* 2022 WL 11902205, at *2 (N.D. Cal. Oct. 20, 2022).[8]  Moreover, even if the Agreement had an impermissible "wholesale" PAGA waiver, it has a PAGA-specific severability provision that would require severance of the unenforceable provision. Callaghan Decl., ¶ 7, Ex. A § 5; *Viking River*, 142 S. Ct. at 1925. Thus, Mehta cannot prove that the Agreement is substantively unconscionable on this basis.

## IV.    CONCLUSION

Mehta signed an arbitration agreement that mutually binds him and Twitter to arbitrate any dispute arising from or related to his employment on an individual basis. The agreement encompasses the claims asserted in the FAC. As a result, the Court should compel Mehta to arbitrate his claims on an individual basis.

Dated: December 21, 2022                              MORGAN, LEWIS & BOCKIUS LLP


By   */s/ Eric Meckley*
     Eric Meckley
     Brian D. Berry
     Ashlee Cherry
     Kassia Stephenson
     Attorneys for Defendant
     TWITTER, INC.

---

[8] *See also, e.g., Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022), *11; *Johnson v. Lowe's Home Centers, LLC*, No. 221CV00087TLNJDP, 2022 WL 4387796, at *2 (E.D. Cal. Sept. 22, 2022); *Radcliff v. San Diego Gas & Elec. Co.*, No. 20-CV-1555-H-MSB, 2022 WL 4229305, at *2 (S.D. Cal. Sept. 12, 2022).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TWITTER'S MTC ARBITRATION
CASE NO. 4:22-CV-7226-HSG