SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko*
*and Abhijit Mehta, on behalf of themselves*
*and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO and ABHIJIT MEHTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant. | Case No. 4:22-cv-07226-HSG<br><br>**PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:          April 20, 2023<br>Time:          2:00 PM, PST<br>Judge:        Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ......................................... 3

III. LEGAL STANDARD ........................................................................................ 6

      A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6). ................................. 6

      B.   Legal Standard for Motion to Strike Under Rule 12(f)........................................... 7

IV. ARGUMENT..................................................................................................... 7

      A.   Plaintiffs Have Stated a Claim for Discrimination Under the ADA and FEHA. ................................................................................................................. 7

            1.   Exhaustion of Administrative Remedies is Not a Jurisdictional Prerequisite and Should Be Excused Here................................. 7

            2.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Disparate Impact Claim. ......................................................... 12

            3.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Disparate Treatment Claim. .................................................... 14

      B.   The Court Should Not Dismiss Plaintiffs' FMLA and CFRA Claims, But Instead Allow Plaintiffs to Substitute Into Their Complaint One or More New Lead Plaintiffs Who Can Advance Those Claims........................................ 16

      C.   The Court Should Deny Defendant's Motion to Dismiss or Strike Plaintiffs' Class Action Claims........................................................................... 17

            1.   Defendant's Motion to Dismiss Plaintiffs' Class Action Claims is Premature and Without Merit. .................................................. 17

            2.   Defendant's Motion to Strike Plaintiffs' Class Action Claims is Premature and Without Merit. .................................................. 21

V.   CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

Aguilar v. Boulder Brands, Inc.,
     2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) ................................................................. 16

Allen v. Highlands Hosp. Corp.,
     545. F.3d 387 (6th Cir. 2008) ............................................................................................. 9

Allen v. INC Research,
     2018 WL 113551568 (C.D. Cal. Nov. 29, 2018)........................................................ 2, 8

Amey v. Cinemark USA, Inc.,
     2014 WL 4417717 (N.D. Cal. Sept. 5, 2014) ................................................................. 22

Amparan v. Plaza Home Mortgage, Inc.,
     2009 WL 2776486 (N.D. Cal. Aug. 28, 2009) ................................................................. 2

Anton v. San Antonio Community Hosp.,
     19 Cal. 3d 802 (1977) ...................................................................................................... 10

Ashcroft v. Iqbal,
     556 U.S. 662 (2009).................................................................................................... 6, 14

Bates v. Leprino Foods Co.,
     2022 WL 3371584 (E.D. Cal. Aug. 16, 2022) ................................................................ 16

Bell Atl. Corp. v. Twombly,
     550 U.S. 544 (2007)...................................................................................................... 6, 7

California Dep't of Toxic Substances Control v. Alco Pac., Inc.,
     217 F. Supp. 2d 1028 (C.D. Cal. 2002) ........................................................................... 7

Carson v. Lacy,
     2021 WL 1526433 (8th Cir. Apr. 19, 2021) ................................................................... 13

Chaidez v. Ford Motor Company,
     937 F.3d 998 (7th Cir. 2019) .......................................................................................... 13

City of San Jose v. Operating Engineers Local Union No. 3,
     49 Cal. 4th 597 (2010) .................................................................................................... 10

Clerkin v. MyLife.Com,
     2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) ............................................................... 17

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD, Joint Response to Order Re: Notice, Dkt. 43-1
    (N.D. Cal. Dec. 19, 2022) ............................................................................................ 6

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD, Order Re Arbitration, Dkt. 52 (N.D. Cal. Jan. 13,
    2023) ....................................................................................................................... 1

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD, Order Re Litigation Notice, Dkt. 42 (N.D. Cal.
    Dec. 14, 2022) .......................................................................................................... 6

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD (N.D. Cal.) .............................................................. 5, 10

Cruz v. Sky Chefs, Inc.,
    2013 WL 1892337 (N.D. Cal. May 6, 2013) ......................................................... 17, 18

Daly-Murphy v. Winston,
    837 F.2d 348 (9th Cir. 1987) ................................................................................. 2, 10

Deposit Guaranty Nat'l Bank v. Roper,
    445 U.S. 326, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980) ............................................ 17

DeSoto v. Yellow Freight Sys., Inc.,
    957 F.2d 655 (9th Cir. 1992) ..................................................................................... 20

Diaz v. United Agr. Employee Welfare Benefit Plan Trust,
    50 F.3d 1478 (9th Cir. 1995) ..................................................................................... 11

Dietary Supplemental Coalition, Inc. v. Sullivan,
    978 F.2d 560 (9th Cir. 1992) ..................................................................................... 11

Doninger v. Pac. Nw. Bell, Inc.,
    564 F.2d 1304 (9th Cir. 1977) ................................................................................... 18

Francis v. City of New York,
    235 F.3d 763 (2d Cir. 2000) ........................................................................................ 9

Freeman v. Cty. of Sacramento Dep't of Human Assistance,
    2020 WL 2539268 (E.D. Cal. May 19, 2020) ............................................................ 12

Galvan v. Bexar Cty.,
    785 F.2d 1298 (5th Cir. 1986) ..................................................................................... 8

Garcia v. Country Wide Financial Corp.,
    2008 WL 7842104 (C.D. Cal. Jan. 17, 2018) ............................................................ 14

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Gillibeau v. City of Richmond,
    417 F.2d 426 (9th Cir. 1969) .......................................................................... 17

Green v. City of Oceanside,
    194 Cal. App. 3d 212 (1987) ......................................................................... 10

Hemmings v. Tidyman's Inc.,
    285 F.3d 1174 (9th Cir. 2002) ....................................................................... 12

Henderson v. J.M. Smucker Co.,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) .............................................. 19

Hibbs-Rines v. Seagate Technologies, LLC,
    2009 WL 513496 (N.D. Cal. March 2, 2009) ............................................... 22

Holland v. Union Pac. RR Co.,
    154 Cal. App. 4th 940 (2007) ......................................................................... 9

Howell v. STRM LLC – Garden of Eden,
    2020 WL 5816582 (N.D. Cal. Sept. 30, 2020) ............................................ 14

Humphrey v. Mem'l Hosps. Ass'n,
    239 F.3d 1128 (9th Cir. 2001) ....................................................................... 15

In re Wal-Mart Stores, Inc. Wage and Hour Litig.,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................... 18, 21

James v Uber Technologies.,
    338 F.R.D. 123 (N.D. Cal. 2021) .................................................................. 21

Jensen v. Knowles,
    621 F. Supp. 2d 921 (E.D. Cal. 2008) .......................................................... 12

Johnson v. City of Loma Linda,
    24 Cal. App. 4th 61 (2000) ............................................................................. 9

Jue v. Costco Wholesale Corp.,
    2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ............................................... 20

Kaiser Foundation Hospitals v. Superior Court,
    128 Cal. App. 4th 85 (2005) ......................................................................... 10

Karpe v. Chao,
    416 F. Supp. 3d 1021 (S.D. Cal. 2019) ........................................................ 13

Keiffer v. Bechtel Corp.,
    65 Cal. App. 4th 893 (1998) ........................................................................... 9

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Kick v. Alibab.com, Inc.,
        2018 4181955 (N.D. Cal. Aug. 30, 2018)..........................................................22

Kim v. Konad USA Distribution, Inc.,
        226 Cal. App. 4th 1336 (2014) ..................................................................2, 9

King v. National General Insurance Co.,
        2021 WL 2400899 (N.D. Cal. June 11, 2021) ...........................................3, 18

Klein v. Sullivan,
        978 F.2d 520 (9th Cir. 1992) ..........................................................................11

League of United Latin Am. Citizens v. Wheeler,
        899 F.3d 814 (9th Cir. 2018) .............................................................................8

Lopez v. Pacific Maritime Association,
        2009 WL 10680881 (C.D. Cal. April 3, 2009) ...............................................12

Luna v. Universal Studio City Productions LLP,
        2013 WL 12308198 (C.D. Cal., Aug. 27, 2013)..............................................22

Lyons v. England,
        307 F.3d 1092 (9th Cir. 2002) ...................................................................14, 15

Marlo v. United Parcel Serv.,
        639 F.3d 942 (9th Cir. 2011) ..........................................................................17

Marshall v. Burlington Northern, Inc.,
        595 F.2d 511 (9th Cir. 1979) ..........................................................................10

McAllister v. Monterey,
        147 Cal. App. 4th 253 (2007) .........................................................................10

McDonnell Douglas Corp. v. Green,
        411 U.S. 792 (1973)........................................................................................15

McGinest v. GTE Service Corp.,
        360 F.3d 1103 (9th Cir. 2004) ........................................................................15

Morales v. Laborers' Union 304,
        2012 U.S. Dist. LEXIS 2234 (N.D. Cal. Jan. 9, 2012) .....................................6

Moussouris v. Microsoft Corp.,
        2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) ......................................12, 14

Myers v. MedQuest, Inc.,
        2006 WL 3751210 (D.N.J. Dec. 20, 2006)......................................................22

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001) ............................................................................ 7

O'Donnell v. U.S. Bancorp Equip. Fin., Inc.,
    2010 WL 2198203 (N.D. Cal. May 28, 2010) ...................................... 7, 12, 15

Ogo Associates v. City of Torrance,
    37 Cal. App. 3d 830 (1974) ............................................................................ 10

Ogola v. Chevron Corp.,
    2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) .................................... 3, 18, 20

Parducci v. Overland Sols, Inc.,
    2019 WL 3220282 (N.D. Cal. July 17, 2019) ................................................ 18

Phillips v. Ford Motor Co.,
    435 F.3d 785 (7th Cir. 2006) .......................................................................... 16

Prince v. CLS Transp., Inc.,
    118 Cal. App. 4th 1320 (2004) ...................................................................... 19

Public Employment Relations Bd. v. Superior Court,
    13 Cal. App. 4th 1816 (1993) ........................................................................ 10

Rhoades v. Progressive Cas. Ins. Co.,
    2011 WL 397657 (E.D. Cal. Feb. 3, 2011) .................................................... 20

Rivera v. U.S. Postal Service,
    830 F.2d 1037 (9th Cir. 1987) ........................................................................ 11

Sablan v. A.B. Won Pat Int'l Airport Auth., Guam,
    2010 WL 5148202 (D. Guam Dec. 9, 2010) .................................................... 6

Sanchez-Velazquez v. Autonomous Municipality of Carolina,
    2012 WL 6552789 (D.P.R. Dec. 14, 2012) ...................................................... 8

Santiago-Rodriguez v. Puerto Rico,
    546 F. Supp. 3d 155 (D.P.R. 2021) .................................................................. 8

Seifi v. Mercedes-Benz USA, LLC,
    2013 WL 2285339 (N.D. Cal. May 23, 2013) ................................................ 19

Simmons v. Navajo Cnty.,
    609 F.3d 1011 (9th Cir. 2010) ........................................................................ 15

SJBC, LLC v. Horwedel,
    201 Cal. App. 4th 339 (2011) ..................................................................... 2, 10

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Sokol v. New United Mfg., Inc.,
    1999 WL 1136683 (N.D. Cal. Sept. 20, 1999) ................................................ 21

Sommatino v. United States,
    255 F.3d 704 (9th Cir. 2001) .......................................................................... 9

Stickrath v. Globalstar, Inc.,
    2008 WL 5384760 (N.D. Cal. 2008) .............................................................. 16

Sullivan v. Ashley Furniture Industries, Inc.,
    2022 WL 9680392 (C.D. Cal. Oct. 13, 2022) ................................................. 15

Surrell v. Cal Water Serv. Co.,
    518 F.3d 1097 (9th Cir. 2008) ......................................................................... 9

Swierkiewicz v. Sorema N. A.,
    534 U.S. 506 (2002) ....................................................................................... 12

Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,
    135 S. Ct. 2507 (2015) ................................................................................... 14

Tolbert v. U.S.,
    916 F.2d 245 (5th Cir. 1990) .......................................................................... 11

TopDevz, LLC v. LinkedIn Corp.,
    2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ................................................. 20

United Farm Workers v. Arizona Agr. Employment,
    669 F.2d 1249 (9th Cir. 1982) ........................................................................ 10

Unnamed Physician v. Board of Trustees,
    93 Cal. App. 4th 607 (2001) ........................................................................... 10

Vinole v. Countrywide Home Loan, Inc.,
    571 F.3d 935 (9th Cir. 2009) ...................................................................... 3, 18

Watson v. Fort Worth Bank & Trust,
    487 U.S. 977 (1988) ....................................................................................... 12

Weiner v. Dannon Co., Inc.,
    255 F.R.D. 658 (C.D. Cal. 2009) ................................................................... 16

Whittlestone, Inc. v. Handi–Craft Co.,
    618 F.3d 970 (9th Cir. 2010) ...................................................................... 7, 17

Wilburn v. Dial Corp.,
    724 F. Supp. 530 (W.D. Tenn. 1989)................................................................ 8

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Williams v. Washington Metro. Area Transit Auth.,
    721 F.2d 1412 (D.C. Cir. 1983) ..................................................................... 8

Wilson v. MVM, Inc.,
    475 F.3d 166 (3d Cir. 2007) ........................................................................ 9

Wyatt v. Terhune,
    315 F.3d 1108 (9th Cir. 2003) ................................................................... 12

Zipes v. Trans World Airlines, Inc.,
    455 U.S. 385 (1982) ..................................................................................... 9

**Statutes**

Americans with Disabilities Act ("ADA"),
    42 U.S.C. §§ 12101, *et seq.* ............................................................... passim

California Fair Employment and Housing Act ("FEHA"),
    Gov. Code. § 12940 ............................................................................ passim

California Family Rights Act ("CFRA"),
    Gov. Code. § 12945.2 ........................................................................ passim

Declaratory Judgment Act,
    28 U.S.C. §§ 2201-02 ............................................................ 3, 5, 6, 10

Family and Medical Leave Act ("FMLA"),
    29 U.S.C. § 2601, *et seq.* ................................................................ passim

**Rules**

Fed. R. Civ. P. 12 ..................................................................... 3, 7, 17, 18

Fed. R. Civ. P. 23 ............................................................................ 17, 21

Fed. R. Civ. P. 8 ........................................................................................ 6

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

**I.     INTRODUCTION**

This case was originally brought by Plaintiff Dmitry Borodaenko on behalf of disabled Twitter employees who have been laid off or constructively discharged in the wake of the purchase of the company by multi-billionaire Elon Musk. See Class Action Complaint (Dkt. 1). It was later amended to add Abhijit Mehta as an additional named plaintiff, asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and California Family Rights Act ("CFRA"), Gov. Code. § 12945.2, challenging Twitter's termination of employees who were taking, or had informed the company they planned to take, a family or medical leave. See Amended Class Action Complaint (Dkt. 8).[1]

In its Motion to Dismiss and/or Strike Portions of Plaintiffs' First Amended Complaint, Twitter argues first that the Court should dismiss Plaintiffs' discrimination claims arising under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the California Fair Employment and Housing Act ("FEHA"), Gov. Code. § 12940, because Plaintiff Borodaenko failed to exhaust his administrative remedies by declining to wait for the Equal Employment Opportunity Commission ("EEOC") and/or the Department of Fair Employment and Housing ("DFEH") to issue a notice of right to sue before filing his individual and class claims in court, and because he has failed to state a claim under either a disparate impact or disparate treatment theory of discrimination. Twitter's motion to dismiss on these grounds should be denied. First, the administrative exhaustion requirement under both the ADA and

---

[1]     Twitter has moved to compel Plaintiff Mehta's claims to arbitration. Plaintiffs are not contesting that motion, in light of the court's recent decision in Cornet, et al., v. Twitter, Inc., Civ. Act No. 3:22-cv-06857-JD, Order Re Arbitration, Dkt. 52 (N.D. Cal. Jan. 13, 2023), granting Twitter's motion to compel arbitration. Following that decision, Plaintiff Mehta has now filed an arbitration demand against Twitter. He thus recognizes that his claims are stayed now in this Court, and they will proceed in arbitration. He will raise issues or claims in this Court if there are issues with him being able to proceed with his claim in arbitration. As described below, Plaintiffs request that the Court allow them to substitute in another named plaintiff who is not bound by Twitter's arbitration agreement (either because they opted out of it or their employment preceded Twitter's arbitration program) and thus may be able to pursue these claims for the putative class.

FEHA is non-jurisdictional (i.e. it does not implicate a court's subject matter jurisdiction) and is subject to equitable doctrines such as waiver, estoppel, and equitable tolling. See Allen v. INC Research, 2018 WL 113551568, at *3 (C.D. Cal. Nov. 29, 2018); Kim v. Konad USA Distribution, Inc., 226 Cal. App. 4th 1336, 1347 (2014). In general, the Ninth Circuit has long recognized that a plaintiff may be excused from exhausting his administrative remedies under certain circumstances, including where the remedies offered by the administrative agency are inadequate or inefficacious, or when the pursuit of administrative remedies to exhaustion would cause irreparable harm. See, e.g., Daly-Murphy v. Winston, 837 F.2d 348, 354 (9th Cir. 1987); see also SJBC, LLC v. Horwedel, 201 Cal. App. 4th 339, 346 (2011). Here, Borodaenko should be excused from exhausting his administrative remedies before filing suit because the EEOC and DFEH are not empowered to order the emergency injunctive relief that Plaintiffs sought, and Plaintiffs would have suffered irreparable harm if they had waited for the issuance of a notice of right to sue before seeking to enjoin Twitter from distributing a severance package and release of claims to laid-off employees. Second, as discussed at length below, see infra §§ IV(A)(b) and (c), Plaintiffs have met their burden of pleading that Twitter's conduct discriminated against disabled employees under either a disparate impact or disparate treatment theory.

Next, Twitter argues that the Court should dismiss Plaintiffs' claims alleging violations of the FMLA and CFRA because Mehta, the Plaintiff advancing those claims, will likely have his claims compelled to arbitration and Borodaenko lacks standing to prosecute those claims. The Court should defer dismissing those claims from this class action complaint and instead allow Plaintiffs to substitute in one or more additional Plaintiffs who have opted out of Twitter's arbitration agreement (or are otherwise not bound by the agreement) and thus can advance those claims on behalf of the putative class. Courts have routinely permitted the amendment of complaints to add named plaintiffs in similar circumstances in order to continue to advance the rights of absent class members. See Amparan v. Plaza Home Mortgage, Inc., 2009 WL 2776486, *2 (N.D. Cal. Aug. 28, 2009).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

Finally, Twitter argues that Plaintiffs' class action allegations should be dismissed or stricken. This argument is premature and unsupported by law. Courts in the Ninth Circuit have taken an "overwhelmingly negative" view of motions challenging the sufficiency of class allegations at the Rule 12 stage. King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021). As the Ninth Circuit has explained, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole v. Countrywide Home Loan, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted). Thus, courts only dismiss class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). Such is not the case here. Plaintiffs have plausibly alleged that Twitter is liable to its employees on a classwide basis, and Twitter cannot misuse Rule 12 to launch a preemptive effort to defeat class certification.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Borodaenko filed this class action lawsuit on November 16, 2022, asserting class claims for discrimination in violation of ADA, FEHA, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiffs filed an Amended Class Action Complaint (Dkt. 8) on December 7, 2022, adding Mehta as a plaintiff and asserting additional class claims for violations of the FMLA and CFRA.

As Plaintiffs alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce. (Am. Compl. ¶¶ 3, 23, 31 Dkt. 8.) In April 2022, after it was announced that Musk would be purchasing Twitter, Twitter employees raised concerns regarding the company's policies following the acquisition. (Am. Compl. ¶ 24, Dkt. 8.) In order to allay employees' concerns and in an effort to prevent employees from leaving Twitter to work at other companies, Twitter made various promises to employees, which were repeatedly communicated through staff, managers, and the CEO. (Am. Compl. ¶¶ 25-26, Dkt. 8.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

After Musk completed his acquisition of Twitter in late October 2022, he quickly and openly reneged on these promises. (Am. Compl. ¶¶ 26-30, Dkt. 8.) Specifically, on November 9, 2022, Musk announced that he was ending Twitter's remote work policy effective immediately and that all employees who did not return to the office would be terminated, with exceptions made for only "exceptional people." (Am. Compl. ¶¶ 28-30, Dkt. 8.)

Plaintiffs allege that Twitter's sudden and uncompromising reversal of its liberal remote work policy, requiring employees to report to physical offices or else "resign" discriminates against disabled employees (Am. Compl. ¶¶ 29-30, 32, Counts I-II, Dkt. 8.) For example, Borodaenko, who has a cancer-related disability that makes him vulnerable to COVID-19, was promised when he joined Twitter that he would always have the option to work remotely. (Am. Compl. ¶¶ 33-34 Dkt. 8.) Borodaenko informed his manager of his disability and the necessity for him to continue to work from home shortly after Musk announced that he was ending Twitter's remote work policy. (Am. Compl. ¶¶ 35-36, Dkt. 8.). However, Twitter laid Mr. Borodaenko off on November 15, 2022, just days after he reminded his manager of his disability and his need to continue working from home as a reasonable accommodation. (Am. Compl. ¶¶ 38, Dkt. 8.) Twitter explained that it was laying off Borodaenko because "[his] recent behavior has violated company policy", though Borodaenko never received any notice or warning regarding the alleged problematic behavior, and it is not clear exactly what policy his behavior violated – other than asserting that he needed a reasonable accommodation for his disability of being allowed to continue working from home. (Am. Compl. ¶¶ 39-40, Dkt. 8.)

Shortly after Musk acquired Twitter, he also made clear that continuing to work for Twitter would demand extraordinary effort and long work hours. (Am. Compl. ¶¶ 41-46, Dkt. 8.) Indeed, employees were observed working 12 hour shifts, 7 days a week, sleeping in Twitter offices, and working nonstop to complete certain projects. (Am. Compl. ¶ 42, Dkt. 8.) Around this time, Mr. Borodaenko's workload ballooned, and his number of direct reports increased from approximately 10 to 16. (Am. Compl. ¶ 44, Dkt. 8) On November 16, 2022, Musk himself

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

informed his employees that continuing to work for Twitter would require "working long hours at high intensity" and being "extremely hardcore", and that only those employees who demonstrate "exceptional performance" would pass muster. (Am. Compl. ¶¶ 45-46, Dkt. 8.) Employees were told that if they did not affirmatively opt in to Musk's "hardcore" conditions by November 17, 2022 at 5:00 PM, they would be laid off. (Am. Compl. ¶¶ 45-46, Dkt. 8). Plaintiffs allege that these conditions, and the accompanying ultimatum that employees must meet them or else depart the company, discriminated against disabled employees and did not allow for reasonable accommodation of disabled employees, as required by the ADA and FEHA; this conduct led to the layoff or constructive dismissal of Twitter employees with disabilities. (Am. Compl. ¶¶ 47-48, Counts I-II, Dkt. 8.)

Plaintiffs also allege that the mass layoffs and constructive dismissals that have taken place under Musk's leadership have adversely and disproportionately affected employees who were either taking family or medical leave, or preparing to do so in the near future. (Am. Compl. ¶¶ 49-52, Counts III-IV, Dkt. 8.) Specifically, some 60% of employees who were on leave at the time the layoffs began on November 4, 2022 were notified that day that their employment was being terminated (compared to only 51% of employees overall). (Am. Compl. ¶ 52, Dkt. 8.) After November 17, 2022, the deadline by which Twitter employees had to agree to Musk's ultimatum that they be "extremely hardcore" and "work[] long hours at high intensity", most employees who were on leave were no longer employed by the company. (Am. Compl. ¶ 52, Dkt. 8.) Mehta, a high performer who was laid off from Twitter on November 4, 2022 shortly before his 20-week family leave was set to begin, is a representative example of the discriminatory impact of Twitter's layoffs. (Am. Compl. ¶¶ 50-51, Dkt. 8.)[2]

---

[2]     Finally, Plaintiffs brought a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaratory judgment and an injunction prohibiting Twitter from soliciting putative class members in this case to sign separation agreements that release their claims without first informing them of their rights under the law and of the pendency of this case. (Am. Compl., Count V.) Plaintiffs sought the same relief in the Cornet case, and the Court granted their emergency motion requiring employees to be notified of the case if Twitter sought releases

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

### III.    LEGAL STANDARD

#### A.    Legal Standard for Motion to Dismiss Under Rule 12(b)(6).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Plaintiff need only "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss." Twombly, 550 U.S. at 555. "A claim that is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants liable for the misconduct alleged." Morales v. Laborers' Union 304, 2012 U.S. Dist. LEXIS 2234, *3 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for determining whether a motion to dismiss should be granted." Sablan v. A.B. Won Pat Int'l Airport Auth., Guam, 2010 WL 5148202, at *2 (D. Guam Dec. 9, 2010). At the first step, the court parses out legal conclusions from factual statements. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)). "[T]he second step is to take any remaining well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. at 664)). At the motion to dismiss stage, the court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "[I]t would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim in the absence of direct evidence of

---

from them through severance agreements. See Cornet, et al., v. Twitter, Inc., Civ. Act No. 3:22-cv-06857-JD, Order Re Litigation Notice, Dkt. 42 (N.D. Cal. Dec. 14, 2022). As a part of that notice that was issued with Twitter's distribution of severance agreements, Twitter agreed to include notice of this case as well. See Cornet, et al., v. Twitter, Inc., Civ. Act No. 3:22-cv-06857-JD, Joint Response to Order Re: Notice, Dkt. 43-1 (N.D. Cal. Dec. 19, 2022). Thus, this claim was effectively already adjudicated, through Twitter's agreement effectively to apply the Cornet ruling to the Declaratory Judgment Act relief sought here.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

discrimination." <u>O'Donnell v. U.S. Bancorp Equip. Fin., Inc.</u>, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting <u>Twombly</u>, 550 U.S. at 569-70). Rather, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

**B.      Legal Standard for Motion to Strike Under Rule 12(f).**

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." <u>Whittlestone, Inc. v. Handi–Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." <u>California Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Additionally, "[g]iven their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." <u>Alco Pac.</u>, 217 F.Supp.2d at 1033 (internal quotation marks and citations omitted). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." <u>Id.</u>

**IV.   ARGUMENT**

**A.      Plaintiffs Have Stated a Claim for Discrimination Under the ADA and FEHA.**

**1.      Exhaustion of Administrative Remedies is Not a Jurisdictional Prerequisite and Should Be Excused Here.**

Contrary to Twitter's claim that Plaintiffs "never filed any administrative charges", Twitter's Motion to Dismiss and/or Strike at 7 (Dkt. 15), Plaintiff Borodaenko in fact filed federal and state charges with the EEOC on November 17, 2022, nearly simultaneously with filing his initial complaint. <u>See</u> EEOC Charge Form, attached hereto as Exhibit A. As discussed

at length below, Borodaenko filed an EEOC/DFEH charge requesting the right to sue together with his initial complaint because he was seeking emergency declaratory and injunctive relief that those administrative agencies are not empowered to award. Borodaenko successfully obtained that relief from the courts, see supra note 2, and expects to receive a notice of right to sue shortly. Given that Borodaenko is likely to have received his right to sue notice before further substantive proceedings in this case, the Court should permit Plaintiffs' discrimination claims under the ADA and FEHA to proceed, rather than dismissing and requiring a refiling of the case. See Wilburn v. Dial Corp., 724 F. Supp. 530, 536 (W.D. Tenn. 1989) ("[W]here a Title VII plaintiff files his action first and then subsequently receives a right to sue notice while that action is pending, the requirement of a right to sue letter is satisfied.") (citing Williams v. Washington Metro. Area Transit Auth., 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); Galvan v. Bexar Cty., 785 F.2d 1298, 1305-06 (5th Cir. 1986)); see also Santiago-Rodriguez v. Puerto Rico, 546 F. Supp. 3d 155, 161-62 (D.P.R. 2021) (granting plaintiff's motion to amend complaint after failing to exhaust administrative remedies) (citing Sanchez-Velazquez v. Autonomous Municipality of Carolina, 2012 WL 6552789, *4 (D.P.R. Dec. 14, 2012) (denying defendant's motion to dismiss plaintiff's Title VII claim for failure to exhaust administrative requirement where "the filing of the Third Amended Complaint after having received the right-to-sue letter from the U.S. Department of Justice cured any defect that the first and second amended complaint may have had")).

Importantly, the administrative exhaustion requirement for filing a discrimination claim is not jurisdictional under either the ADA or FEHA, contrary to Twitter's assertions. See Allen, 2018 WL 113551568 at *3 ("Defendant has not demonstrated that the exhaustion requirements of FEHA, the ADA or Title VII are *jurisdictional* in the sense that they deprive the Court of *subject matter jurisdiction*.") (citing League of United Latin Am. Citizens v. Wheeler, 899 F.3d 814, 821-22 (9th Cir. 2018) ("'[T]hreshold requirements claimants must complete, or exhaust, before filing a lawsuit' are typically 'treated as nonjurisdictional.'") (citations omitted); Surrell v.

Cal Water Serv. Co., 518 F.3d 1097, 1104 (9th Cir. 2008) ("Failure to obtain a federal right-to-sue letter does not preclude federal jurisdiction.")).[3] Rather, in federal actions, the administrative exhaustion requirement is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see also Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001); Francis v. City of New York, 235 F.3d 763, 767 (2d Cir. 2000); Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007); Allen v. Highlands Hosp. Corp., 545. F.3d 387, 401 (6th Cir. 2008) (failure to exhaust administrative remedy does not affect federal court's subject matter jurisdiction). Similarly, while California state courts have historically referred to FEHA's administrative exhaustion requirement as "a jurisdictional prerequisite to resort to the court," Johnson v. City of Loma Linda, 24 Cal. App. 4th 61, 70 (2000), recent decisions have clarified that the administrative exhaustion requirement is "'jurisdictional' in the sense only that a court's failure to apply the rule is judicial error and can be corrected by issuance of a writ of prohibition[,]" Kim, 226 Cal. App. 4th at 1347 ("[T]he administrative exhaustion requirement does not implicate the court's subject matter jurisdiction."); see also Holland v. Union Pac. RR Co., 154 Cal. App. 4th 940, 946 (2007) (failure to exhaust administrative remedy does not divest court of subject matter jurisdiction); Keiffer v. Bechtel Corp., 65 Cal. App. 4th 893, 897-98 (1998). Consequently, a plaintiff's failure to exhaust his administrative remedies under FEHA prior to filing suit for a claim arising under California state law is similarly subject to equitable considerations.

In other contexts, the Ninth Circuit has long recognized the existence of equitable exceptions to federal administrative exhaustion requirements. "'Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings

---

[3]      Most of the cases that Twitter cites for the proposition that a plaintiff must exhaust EEOC administrative remedies before a federal court can establish subject matter jurisdiction predate Reed-Elsevier, Inc. v. Muchnick, in which the Supreme Court of the United States indicated that "threshold requirements that claimants must complete, or exhaust, before filing a lawsuit" are non-jurisdictional. 559 U.S. 154, 166 (2010).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

themselves are void[.]'" <u>Daly-Murphy</u>, 837 F.2d at 354 (quoting <u>United Farm Workers v. Arizona Agr. Employment</u>, 669 F.2d 1249, 1253 (9th Cir. 1982)). Similarly, under California state law, the doctrine of exhaustion of judicial remedies "'has not hardened into inflexible dogma.'" <u>SJBC, LLC</u>, 201 Cal. App. 4th at 346 (quoting <u>Ogo Associates v. City of Torrance</u>, 37 Cal. App. 3d 830, 834 (1974)). California courts recognize exceptions to administrative exhaustion requirements "for example, 'when the administrative remedy is unavailable, when it is inadequate, or when it is futile to pursue it. … Other exceptions include 'situations where the agency indulges in unreasonable delay …, when the subject matter lies outside the administrative agency's jurisdiction, [or] when pursuit of an administrative remedy would result in irreparable harm …'" <u>Id.</u> (citing <u>McAllister v. Monterey</u>, 147 Cal. App. 4th 253, 275 (2007); <u>City of San Jose v. Operating Engineers Local Union No. 3</u>, 49 Cal. 4th 597, 609 (2010); <u>Anton v. San Antonio Community Hosp.</u>, 19 Cal. 3d 802, 829 (1977); <u>Kaiser Foundation Hospitals v. Superior Court</u>, 128 Cal. App. 4th 85, 105 (2005); <u>Unnamed Physician v. Board of Trustees</u>, 93 Cal. App. 4th 607, 620 (2001); <u>Public Employment Relations Bd. v. Superior Court</u>, 13 Cal. App. 4th 1816, 1827 (1993); <u>Green v. City of Oceanside</u>, 194 Cal. App. 3d 212, 222 (1987)).

Here, Plaintiff Borodaenko should be excused from exhausting his administrative remedies before filing suit because the remedies that the EEOC and DFEH offer would have been inadequate to his emergency request for relief and irreparable harm would have resulted to the putative class had he been required to wait for the issuance of a notice of right to sue before bringing his complaint in court. As discussed above, Plaintiff filed a Declaratory Judgment Act claim, so that he could seek immediate court intervention in order to prevent Twitter from seeking and obtaining releases of discrimination claims from employees who were laid off, without them knowing of their rights or the pendency of this case. This claim was successful, as it led to Twitter agreeing to include this notice, upon the granting of a similar request in the <u>Cornet</u> case. <u>See</u> <u>supra</u> note 2. Unlike this Court, the EEOC and DFEH are not empowered to order emergency injunctive relief and therefore do not offer the remedy that Plaintiff sought. <u>See</u>

Diaz v. United Agr. Employee Welfare Benefit Plan Trust, 50 F.3d 1478 (9th Cir. 1995) (inadequacy of remedy is an exception to the exhaustion requirement); Dietary Supplemental Coalition, Inc. v. Sullivan, 978 F.2d 560, 564 (9th Cir. 1992) (exhaustion will not be required if administrative remedies are inadequate or not efficacious). Plaintiff would have risked irreparable harm by waiting for those agencies to issue a notice of right to sue before seeking emergency injunctive relief before this Court, given Twitter's express intention of offering severance packages and Musk's past practice of seeking full releases from his laid-off employees. Klein v. Sullivan, 978 F.2d 520 (9th Cir. 1992) (court may excuse exhaustion requirement where claimant interest in having particular issue resolved promptly is so great that deference to agency judgment of lack of finality is inappropriate). For these reasons, Borodaenko should be excused from exhausting his administrative remedies before filing suit, under the particular circumstances of this case.

Defendant's reliance on Tolbert v. U.S., 916 F.2d 245 (5th Cir. 1990), is unavailing. In Tolbert, the plaintiff asserted no urgency or pressing need to bring her claim in court prior to the EEOC's issuance of a final decision on her appeal. Indeed, Tolbert sought redress for an instance of alleged sexual harassment that occurred *more than five years* prior to the date she filed her claim with the EEOC. See Tolbert, 916 F.2d at 147. As a result, there were no grounds upon which the court could have possibly found that Tolbert's failure to exhaust her administrative remedies was excused. Similarly, in Rivera v. U.S. Postal Service, 830 F.2d 1037, 1038-39 (9th Cir. 1987), which also concerned a plaintiff's failure to wait out the EEOC's internal appeal process, there was no harm to the plaintiff in waiting for the EEOC to rule on his appeal where he alleged discrimination as early as four years prior to filing the complaint. In contrast, there was good reason for Borodaenko to file suit quickly, prior to his inevitable receipt of a right to sue notice (which is expected to be issued shortly).

However, should this Court find that Plaintiff is not excused from having first exhausted his administrative remedies, the Court could dismiss without prejudice and allow for refiling

once the EEOC has issued the notice of right to sue. <u>See</u> <u>Jensen v. Knowles</u>, 621 F. Supp. 2d 921 (E.D. Cal. 2008) ("If a court finds that a plaintiff has failed to exhaust [nonjudicial remedies], 'the proper remedy is dismissal of the claim without prejudice.'") (quoting <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003)).

### 2.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Disparate Impact Claim.

Under both the ADA and the FEHA, to establish discrimination through disparate impact, a plaintiff must "(1) identify a specific practice of the Defendant, (2) show a disparate impact on a protected class, and (3) establish a causal relationship between the practice(s)." <u>Lopez v. Pacific Maritime Association</u>, 2009 WL 10680881, at *5 (C.D. Cal. April 3, 2009) (citing <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 994-95 (1988); <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1190 (9th Cir. 2002)). However, a plausible pleading of disparate impact is "not onerous." <u>Moussouris v. Microsoft Corp.</u>, 2016 WL 6037978, at *3, 6 (W.D. Wash. Oct. 14, 2016). "The plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." <u>Id.</u> Importantly, to state a plausible claim, "a plaintiff need not plead each element of a prima facie discrimination case." <u>Freeman v. Cty. of Sacramento Dep't of Human Assistance</u>, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) (citing <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 514-15 (2002)); <u>see also</u> <u>O'Donnell</u>, 2010 WL 2198203 at *3 ("[A] plaintiff is not required to establish a prima facie case in the complaint. The Supreme Court has explicitly held that the prima facie case in the discrimination context is an evidentiary standard, not a pleading requirement.").

Plaintiffs have plainly met their burden insofar as they have plausibly alleged each element of a prima facie disparate impact case, even though they do not need to do so. They have alleged that Twitter engaged in the specific practices of: (1) reneging on its promise to employees that they could continue to work remotely for at least a year following Musk's purchase of the company and informing them that refusal to comply with the return-to-office directive would result in termination; (2) stating that exceptions would be made to the

requirement that all employees return to the office only in the case of "exceptional people" (which was not defined); (3) delivering an ultimatum to employees that they "work[] long hours at high intensity", in some cases "literally [] work 24/7", and "be extremely hardcore" or else be laid off; and (4) actually conducting mass layoffs of Twitter employees who did not comply with these requirements or otherwise meet the company's demanding standards. See supra § II. Plaintiffs have also alleged that these practices, individually and collectively, had and caused a significant discriminatory impact on employees with disabilities, where the requirement that employees return to the office effective immediately without exception resulted in the laying off of disabled individuals like Borodaenko who either could not return to the office at all or could not do so without reasonable accommodation. Id. Additionally, Plaintiffs have alleged that Twitter's ultimatum that employees must be "extremely hardcore" and work long hours to stay at the company, without providing reasonable accommodation, disproportionately affected disabled employees by both sweeping them into the mass layoffs that affected more than half of Twitter's workforce and resulting in their constructive dismissal. Id.

In arguing that Plaintiffs have failed to allege the existence of a significant disparity by purportedly relying on "a single data point", Defendant overstates the burden that Plaintiffs carry at this stage of the litigation. Courts have well recognized that plaintiffs are not required to present statistical proof of disparate impact at the pleading stage. See, e.g., Chaidez v. Ford Motor Company, 937 F.3d 998, 1007 (7th Cir. 2019) (The plaintiff "for [his] part, will need to utilize the discovery process to support [his] allegations with statistical and comparative evidence."); Carson v. Lacy, 2021 WL 1526433, *1 (8th Cir. Apr. 19, 2021) (reversing dismissal of discrimination claim where plaintiff had alleged the employer's facially neutral policy of not hiring applicants with certain felony convictions had a disparate impact on Black applicants, but did not present statistics on hiring). Plaintiffs cannot be expected now—prior to discovery—to allege statistical support for their disparate impact claims. See Karpe v. Chao, 416 F. Supp. 3d 1021, 1029 (S.D. Cal. 2019) ("Indeed, Plaintiff 'is not required at the pleading stage to produce

statistical evidence proving a disparate impact [because] . . . all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level'") (citing Garcia v. Country Wide Financial Corp., 2008 WL 7842104, at *6 (C.D. Cal. Jan. 17, 2018)); Phelps v. Lee County, Florida, 2021 WL 5826235, at *5 (M.D. Fla. Dec. 8, 2021) ("Requiring evidence of disparate impact before discovery has commenced would effectively preclude any plaintiff without access to the records of his would-be employer from having his day in court.").

Twitter likewise misrepresents Plaintiffs' burden of pleading causality. At the pleading stage, a plaintiff may satisfy "th[e] 'robust causality requirement' [] by alleging nonconclusory facts that, accepted as true, support a reasonable inference that the challenged practice caused a disparate impact." Moussouris, 2016 WL 6037978 at *5 (citing Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2523 (2015); Iqbal, 556 U.S. at 678). Here, it is reasonable to infer that a policy and practice of requiring all but the most "exceptional" employees to report to an office and work 24/7 at a "hardcore" pace, without any sort of accommodation, as a condition of continued employment would have a disparate impact on individuals with disabilities who either cannot physically report to an office or cannot do so, or perform at such a level, without incurring risks to their health, and/or who require reasonable accommodations to complete their work.

### 3.    Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Disparate Treatment Claim.

The Ninth Circuit has held that to establish a case of disparate treatment, "a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (internal citations omitted). To state a disparate treatment claim under the ADA, a plaintiff must plead enough facts to allege that he: "(1) suffers from a disability; (2) is otherwise qualified for employment, and (3) suffered discrimination because of [his] disability." Howell v. STRM LLC – Garden of Eden, 2020 WL 5816582, *5 (N.D. Cal. Sept. 30, 2020) (citing Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1133 (9th

Cir. 2001)). This standard is the same under the FEHA. See Sullivan v. Ashley Furniture Industries, Inc., 2022 WL 9680392, *7 (C.D. Cal. Oct. 13, 2022) (describing the elements of a disability discrimination disparate treatment claim under the FEHA). With respect to the first factor, the ADA defines a disability as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such impairment, or (3) being regarded as having such an impairment." Id. (quoting 42 U.S.C. § 12102). With respect to the second factor, "the term 'qualified individual' means an individual who, 'with or without reasonable accommodation,' can perform the 'essential functions' of the position." Id. (quoting 42 U.S.C. § 12111(8)). With respect to the third factor, a plaintiff can show that he was discriminated against by reason of his disability "by alleging facts sufficient to establish that [his] disability was a 'motivating factor' in an adverse employment action." Id. (quoting Simmons v. Navajo Cnty., 609 F.3d 1011, 1021 (9th Cir. 2010)). A plaintiff may establish disparate treatment either through direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, see McGinest v. GTE Service Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004)), or "through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Lyons, 307 F.3d at 1112.

Here, even though Plaintiffs are not required to plead every element of disparate treatment in order to state a plausible claim, Plaintiffs have pled facts that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 8, 2010). Plaintiffs have alleged that Borodaenko suffers a disability—cancer—that substantially limits his ability to work from an office. (Am. Compl. ¶¶ 34-36, Dkt. 8.). Second, they have alleged that he was able to perform the essential functions of his position as Engineering Manager with the reasonable accommodation of working remotely from his home. (Am. Compl. ¶ 33, Dkt. 8.). Finally, they have alleged facts sufficient to show that his disability was a motivating factor in Twitter's

decision to select him for lay-off. Twitter's decision to terminate his employment for "violat[ing] company policy" shortly after he reminded his manager that he needed to continue to work from home on account of his disability, in the midst of a mass layoff, without any notice of the problematic behavior that he was alleged to have engaged in, constitutes powerful circumstantial evidence that his disability was a motivating factor in the adverse employment action. (Am. Compl. ¶¶ 36-40, Dkt. 8.).

**B.** **The Court Should Not Dismiss Plaintiffs' FMLA and CFRA Claims, But Instead Allow Plaintiffs to Substitute Into Their Complaint One or More New Lead Plaintiffs Who Can Advance Those Claims**

Twitter argues that the Court should dismiss Plaintiffs' FMLA and CFRA claims (Counts III and IV) because Mehta, the Plaintiff advancing those claims, will likely have his claims compelled to arbitration and Borodaenko lacks standing to prosecute those claims.

The Court should deny Twitter's motion to dismiss those class claims and allow Plaintiffs the opportunity to substitute in one or more plaintiffs who can advance those claims. Courts have consistently allowed plaintiffs to substitute in additional lead plaintiffs to serve as class representatives in class claims. See, e.g., Bates v. Leprino Foods Co., 2022 WL 3371584, at *1-4 (E.D. Cal. Aug. 16, 2022) (permitting plaintiffs to substitute a new plaintiff in as the class representative); Aguilar v. Boulder Brands, Inc., 2014 WL 4352169, at *7 (S.D. Cal. Sept. 2, 2014) (quoting Phillips v. Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) for the proposition that "The courts . . . disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs."); Weiner v. Dannon Co., Inc., 255 F.R.D. 658, 673 (C.D. Cal. 2009) (granting plaintiff leave to substitute proposed class representative after denying motion to certify the class for lack of typicality); Stickrath v. Globalstar, Inc., 2008 WL 5384760, at *7 (N.D. Cal. 2008) (where "class representative was removed from the case due to mootness, . .. substitution or intervention may be possible").

Thus, rather than dismissing those claims, the Court should give Plaintiffs an opportunity to substitute in one or more new lead plaintiffs who would not be bound by Twitter's arbitration

clause, in order to advance those claims on behalf of the putative class.[4]

### C.   The Court Should Deny Defendant's Motion to Dismiss or Strike Plaintiffs' Class Action Claims.

#### 1.   Defendant's Motion to Dismiss Plaintiffs' Class Action Claims is Premature and Without Merit.

Twitter has taken the unusual step of moving to dismiss Plaintiffs' class allegations in this matter even before the parties have engaged in discovery and before Plaintiffs have moved for class certification. The Court should reject Twitter's premature and incorrect argument.

To begin, courts have routinely held that Rule 12(b)(6) is not an "appropriate vehicle to challenge class allegations." Cruz v. Sky Chefs, Inc., 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013). For example, in Clerkin v. MyLife.Com, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011), the court held that such arguments are properly addressed through Fed. R. Civ. P. 23 for procedural reasons:

> First, Rule 12(b)(6) permits a party to assert a defense that the opposing party has failed "to state a claim upon which relief can be granted." A class action is a procedural device, not a claim for relief. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980). Second, other Federal Rules of Civil Procedure exist to address impertinent allegations and class certification. Thus, the use of Rule 12(b)(6) to address the same would create redundancies in the Federal Rules. Finally, the standard of review applied to orders granting motions to dismiss differs from that governing orders granting or denying class certification. The Ninth Circuit reviews *de novo* orders dismissing claims pursuant to Rule 12(b)(6). *Whittlestone, [Inc. v. Handi–Craft Co.,]* 618 F.3d 970, 974 [(9th Cir. 2010)]. Grants and denials of class certification, however, are reviewed for abuse of discretion. *Marlo v. United Parcel Serv.*, 639 F.3d 942, 946 (9th Cir. 2011).

As such, the court should reject Twitter's argument for this procedural reason alone. See also Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969) ("[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim . . . .").

Moreover, even if the Court considers Twitter's Rule 12(b)(6) arguments, they still fail.

---

[4]      Plaintiffs' counsel now represent many former Twitter employees who opted out of arbitration, or otherwise appear not to be bound by Twitter's arbitration agreement. These employees are now putative class members in this case. Plaintiffs' counsel are in the process of identifying such potential substitute lead plaintiffs.

"[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery." Cruz, 2013 WL 1892337, at *5. Courts only dismiss class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL at *2; see also Parducci v. Overland Sols, Inc., 2019 WL 3220282, at *4 (N.D. Cal. July 17, 2019) (same). "[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole, 571 F.3d at 942 (quoting Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)); see also In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and [] the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"). Courts have gone so far as to decline to address class allegations at the Rule 12 stage, even when the class allegations "are suspicious and may in fact be improper," because "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery . . . ." In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615-16; see also King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021) (describing the attitude of courts within this District toward motions to strike class allegations at the Rule 12 stage as "overwhelmingly negative").

Twitter begins by summarily asserting that Borodaenko cannot represent anybody who was affected by Musk's "extremely hardcore" ultimatum, which was communicated on November 16, 2022, because Borodaenko was laid off one day earlier on November 15, 2022. See supra § II. Twitter does not cite any case law suggesting that an individual whose employment is terminated in a mass layoff cannot represent other individuals with effective separation dates that post-date his own. It is doubtful that such case law exists, as it would make

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

no sense in circumstances such as those at issue here, where an employer conducts rolling mass layoffs over a period of days (if not weeks) that affect a large portion of its workforce. As alleged in Plaintiffs' Amended Complaint, Twitter began conducting layoffs in early November 2022 and continued to cull its workforce via layoffs and constructive dismissals at least through November 17, 2022, the deadline for responding to Musk's ultimatum. (Am. Compl. ¶¶ 31, 45-48, Dkt. 8.). Borodaenko was laid off within that timeline and is thus an appropriate class representative for those who similarly suffered involuntary loss of employment during that time.

Second, Twitter argues that Plaintiffs' allegations lack requisite specificity to establish that Plaintiff Borodaenko is similarly situated to other putative class members. They suggest that, because Plaintiffs plead a number of facts that are specific to Borodaenko, they have failed to allege *any* facts regarding other disabled employees. That is a mischaracterization of the Amended Complaint and of Plaintiffs' burden at the pleading stage. With respect to the absent class members, Plaintiffs have alleged that a specific set of policies and practices that Twitter engaged in between November 4, 2022 and November 17, 2022—including demanding that employees report to the office, delivering an ultimatum to employees that they "work[] long hours at high intensity" and "be extremely hardcore", and actually conducting mass layoffs of employees who did not comply with these requirements—had a discriminatory and disparate impact on employees who are disabled and who are taking or were preparing to take family or medical leave. These allegations are necessarily broad because plaintiffs are afforded discovery prior to class certification to determine the scope of the class. It is premature to require Plaintiffs to determine said scope at this stage. See, e.g., Prince v. CLS Transp., Inc., 118 Cal. App. 4th 1320, 1329 (2004) ("[C]lass action suitability should not have been decided at the pleading stage"); Seifi v. Mercedes-Benz USA, LLC, 2013 WL 2285339, *8 (N.D. Cal. May 23, 2013) ("Because the shape and form of a class action evolves only through the process of discovery, courts rarely dismiss class allegations before discovery has commenced.") (internal citation omitted); Henderson v. J.M. Smucker Co., 2011 WL 1050637, *2 (C.D. Cal. Mar. 17, 2011)

("We will not conduct a premature [] inquiry before the Parties have had an opportunity to fully ventilate all of the relevant issues with the benefit of discovery"); <u>Rhoades v. Progressive Cas. Ins. Co.</u>, 2011 WL 397657, *4 (E.D. Cal. Feb. 3, 2011) ("Defendant has not shown that its challenge to Plaintiffs' class allegations, including the class definition, should be addressed at this stage of the proceeding").

Third, Twitter contends that Plaintiffs have failed to adequately define an ascertainable class. However, as Twitter notes in its motion, Plaintiffs' Amended Complaint states that the claims are asserted by "Twitter employees across the country who are disabled, or are taking or were prepared to take family or medical leave, who have been terminated or constructively discharged from their jobs during the chaotic weeks since multi-billionaire Elon Musk purchased the company." (Am. Compl. ¶ 1, Dkt. 8.) Moreover, in the request for relief, Plaintiffs requested relief based on each claim on behalf of similarly situated Twitter employees who suffered the injuries alleged in each Count.[5] (Am. Compl. at p. 14-15, Dkt. 8.) These allegations suffice to define the class at this stage. Twitter's demand for greater specificity is unsupported by law. Indeed, as one court explained, a defendant's argument regarding "ascertainability is best decided at the class certification stage with the benefit of more complete briefing and development of the record." <u>TopDevz, LLC v. LinkedIn Corp.</u>, 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3, 2021).[6]

---

[5]     Twitter may argue that the Court must at least dismiss Plaintiffs' class allegations with respect to the FMLA and CFRA claims because the named Plaintiff advancing those claims will likely have his claim compelled to arbitration. However, as explained <u>supra</u>, Plaintiffs request that the Court allow them to substitute in one or more new lead plaintiffs who can advance those claims in court. Indeed, in <u>Jue v. Costco Wholesale Corp.</u>, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010), the court held in similar circumstances that it was "premature to evaluate the sufficiency of the class allegations in the current complaint" where all claims were dismissed, and "different factual allegations" were specifically anticipated in a future complaint.

[6]     Should the Court disagree with Plaintiffs, the Court should allow them leave to amend in order to supplement their allegations. <u>See</u> <u>Ogola</u>, 2014 WL 4145408, at *2 ("When a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.") (citing <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Finally, Twitter posits that Plaintiffs do not allege that common questions of law and fact apply to putative class members and narrowly highlights Plaintiffs' allegations regarding Twitter's revocation of its remote work policy. In fact, Plaintiffs' allegations are much broader than simply "whether Twitter's return-to-work directive is discriminatory to all disabled employees." Twitter's Motion to Dismiss and/or Strike at 20 (Dkt. 15). Plaintiffs have alleged that Twitter engaged in company-wide conduct in the form of laying off, terminating, and constructively discharging employees who did not meet its demanding new requirements and that such conduct disparately impacted putative class members, for which Twitter would be liable under Plaintiffs' counts of disability discrimination under the ADA and FEHA, and disparate impact under the FMLA and CFRA. (Am. Compl. ¶¶ 1-10, 25-52, Dkt. 8.) As a matter of common sense, the facts and law that will establish liability for this alleged unlawful conduct would apply commonly across putative class members. See James v Uber Technologies., 338 F.R.D. 123, 131 (N.D. Cal. 2021) ("In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must 'affirmatively demonstrate' that their claims depend upon at least one common contention the truth or falsity of which 'will resolve an issue that is central to the validity' of each one of the class members' claims in one stroke.") (internal citation omitted). For similar reasons, Plaintiffs' complaint plausibly alleges typicality. See Id. ("Representative claims are 'typical' if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.") (internal citation omitted). Twitter's reliance on Sokol v. New United Mfg., Inc., 1999 WL 1136683 (N.D. Cal. Sept. 20, 1999), a decision that arose at the class certification stage rather than the pleadings stage, is inappropriate at this stage.

## 2.   Defendant's Motion to Strike Plaintiffs' Class Action Claims is Premature and Without Merit.

As with motions to dismiss, motions to strike class allegations that are brought prematurely (e.g., prior to discovery, or even the filing of an answer) are widely disfavored by courts in the Ninth Circuit. See In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (denying motion to strike class allegations as premature where

defendant "ha[d] not answered in this case, discovery ha[d] not yet commenced, and no motion for class certification ha[d] been filed" and noting that "dismissal of class allegations at the pleading stage should be done rarely and … the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'") (quoting Myers v. MedQuest, Inc., 2006 WL 3751210, *4 (D.N.J. Dec. 20, 2006) (internal citations omitted)); Hibbs-Rines v. Seagate Technologies, LLC, 2009 WL 513496, at *3 (N.D. Cal. March 2, 2009) (denying motion to strike class allegations as premature and reserving determination on the propriety of class allegations for class certification briefing stage); see also Kick v. Alibab.com, Inc., 2018 4181955, *2 (N.D. Cal. Aug. 30, 2018) (citing Amey v. Cinemark USA, Inc., 2014 WL 4417717, *3-4 (N.D. Cal. Sept. 5, 2014)); Luna v. Universal Studio City Productions LLP, 2013 WL 12308198, at *9 (C.D. Cal., Aug. 27, 2013) (collecting cases). Thus, for the same reasons discussed above, the Court should deny Twitter's motion to strike.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Twitter's Motion to Dismiss. The Court should also reject Twitter's bid to dismiss or strike Plaintiffs' class claims. Discovery will determine whether similar individuals indeed exist for whom Plaintiffs may seek to have this Court certify a class.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT

1

2    Respectfully submitted,

3    DMITRY BORODAENKO and ABHIJIT MEHTA,
     on behalf of themselves and all others similarly
     situated,

4

5    By their attorneys,

6     /s/ Shannon Liss-Riordan
     Shannon Liss-Riordan, SBN 310719

7    Thomas Fowler (*pro hac vice* forthcoming)
     LICHTEN & LISS-RIORDAN, P.C.

8    729 Boylston Street, Suite 2000
     Boston, MA 02116

9    (617) 994-5800
     Email: sliss@llrlaw.com; tfowler@llrlaw.com

10

11    *Attorneys for Plaintiffs*

12   Dated:        January 20, 2023

13

14

15    **<u>CERTIFICATE OF SERVICE</u>**

16    I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document

17   was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on January 20, 2023.

18

19    <u>/s/ Shannon Liss-Riordan</u>
     Shannon Liss-Riordan

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS AND/OR STRIKE PORTIONS OF
PLAINTIFFS' FIRST AMENDED COMPLAINT