UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMITRY BORODAENKO, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TWITTER, INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-07226-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 14, 15 |

Pending before the Court are Defendant Twitter, Inc.'s motion to compel arbitration and motion to dismiss. Dkt. Nos. 14, 15. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion to compel arbitration and **GRANTS** the motion to dismiss.

**I.　BACKGROUND**

Plaintiffs Dmitry Borodaenko and Abhijit Mehta initially filed this putative class action in November 2022, Dkt. No. 1, and amended their complaint a month later in December 2022. *See* Dkt. No. 8 ("FAC"). Plaintiffs seek to represent a class of former Twitter employees who (1) are disabled, or were either on leave or preparing to take family medical leave at the time Elon Musk purchased the company, and (2) were either terminated or constructively discharged due to Twitter's new workplace policies. *See id.* at ¶¶ 2, 17. According to the complaint, Twitter employees had historically been permitted to work remotely, but shortly after purchasing the company, Mr. Musk announced that working remotely would only be permitted "for 'exceptional' employees that Musk himself would have to approve." *See id.* at ¶¶ 5–6, 28–30. Mr. Musk also announced that employees would be expected to work longer hours and "at high intensity" moving

forward. *See id.* at ¶¶ 8, 41–43, 45–46. These new policies, Plaintiffs contend, made it impossible for many disabled employees to continue working for Twitter and many felt forced to resign as a result. *See id.* at ¶¶ 7–9, 32, 46–48. At the same time, the company also began laying off a substantial portion of its workforce. *See id.* at ¶¶ 3, 10, 31. Plaintiffs contend that these layoffs disproportionately affected employees who were on or intending to take family or medical leave. *See id.* at ¶¶ 4, 49–52.

Based on these allegations, Plaintiffs bring causes of action for discrimination in violation of (1) the Americans with Disabilities Act ("ADA"); (2) the California Fair Employment and Housing Act ("FEHA"); and for violations of (3) the Family and Medical Leave Act ("FMLA"); and (4) the California Family Rights Act ("CFRA"). Plaintiffs seek to represent a class of "all similarly situated Twitter employees across the United States who are either disabled or have taken, or planned soon to take, a family or medical leave, and whose jobs have been affected by the company's layoffs, terminations, and heightened demands on the workforce." *Id.* at ¶ 17.

Defendant moves to compel arbitration of Plaintiff Abhijit Mehta and to dismiss the FAC in its entirety. Dkt. Nos. 14, 15. Plaintiffs agree that Mr. Mehta did not opt out of Defendant's arbitration agreement and that his claims should be compelled to arbitration. *See* Dkt. No. 20. The Court accordingly **GRANTS** the motion to compel arbitration and **STAYS** the action as to Mr. Mehta's claims. The Court therefore limits its analysis below to the motion to dismiss Plaintiff Borodaenko's claims. Any references to "Plaintiff" refer to Mr. Borodaenko unless otherwise specified.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

2

1   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
2   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
3   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
4       In reviewing the plausibility of a complaint, courts "accept factual allegations in the
5   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
6   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
7   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
8   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
9   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.   DISCUSSION

### A.   ADA and FEHA Discrimination Claims

#### i.   Administrative Exhaustion

As an initial matter, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's ADA and FEHA discrimination claims because Plaintiff did not exhaust his administrative remedies before filing this case. *See* Dkt. No. 15 at 6–8. Specifically, Plaintiff did not obtain right-to-sue notices from either the U.S. Equal Employment Opportunity Commission or the California Department of Fair Employment & Housing. *Id.* However, after briefing on the motion to dismiss was complete, Plaintiff received notices from both entities. *See* Dkt. No. 25-1, Ex. A; Dkt. No. 25-2, Ex. B.

Defendant nevertheless argues that the Court should disregard these notices because Plaintiff did not seek leave to file them on the docket. *See* Dkt. No. 26. However, under the circumstances, the Court declines to elevate form over substance in this way. The Court would have granted leave to file the notices, which establish that Plaintiff has administratively exhausted his ADA and FEHA claims. *See Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984) (finding that "subsequent issuance of the 'right to sue' letters cured any jurisdictional defects"). Despite Defendant's urging, it was not "sandbagged," as it responded to Plaintiff's filing anyway. *See* Dkt. No. 26 at 2. The Court therefore **DENIES** the motion to dismiss on this basis. The parties are nevertheless cautioned that the Court expects counsel will scrupulously

comply with the Federal Rules of Civil Procedure and the Civil Local Rules moving forward.

### ii. Failure to State a Claim

More substantively, Defendant argues that Plaintiff Borodaenko has failed to state a plausible claim for disability discrimination under either the ADA or FEHA. *See* Dkt. No. 15 at 8–11. Plaintiff confirms that he intends to bring claims for both disparate treatment and disparate impact under these statutes. *See* Dkt. No. 21 at 12–16. But Defendant contends that Plaintiff does not offer sufficient factual support for these claims.[1] *See* Dkt. No. 15 at 8–11.

### a. Disparate Treatment

The parties appear to agree that the elements of a disparate treatment claim under the ADA and FEHA are largely the same. *Compare* Dkt. No. 15 at 8–10, *with* Dkt. No. 21 at 14–16. Disparate treatment occurs "where an employer has treated [a] particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quotation omitted); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (Cal. 2000) (looking to federal law when applying FEHA and requiring that "circumstance[s] suggest[] discriminatory motive" to establish FEHA claim). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Ricci*, 557 U.S. at 577 (quotation omitted). "A discriminatory motive may be established by the employer's informal decisionmaking or 'a formal, facially discriminatory policy,' but 'liability depends on whether the protected trait . . . actually motivated the employer's decision.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

The Court agrees with Defendant that Plaintiff has not adequately alleged that Twitter terminated Plaintiff—or any other member of the putative class—because of a disability. Rather, the FAC states that Twitter's policies that required workers to return to work and to work "at high intensity" applied to all employees. For example, according to the FAC, "shortly after Musk

---

[1] Plaintiff points out that he need not establish a prima facie case of discrimination at the pleading stage. *See* Dkt. No. 21 at 12 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002)). Nevertheless, he still must allege sufficient facts to plead a plausible claim for relief. *See, e.g.*, *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136–38 (9th Cir. 2019) (affirming dismissal of sex discrimination claim because "[a] recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination").

4

completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that *all remaining employees* would need to work out of a company office . . . ." *See* FAC at ¶ 6 (emphasis added); *see also id.* at ¶ 28 ("On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately."). The FAC also states that "Musk declared that, in order to remain employed at Twitter, employees would have to 'work[] long hours at high intensity.'" *Id.* at ¶ 8. And "*[a]ny employees* who did not agree to this mandate would have to resign." *Id.* (emphasis added); *see also id.* at ¶ 45 (noting that Musk emailed all "remaining Twitter employees" that "working long hours at high intensity" was the new expectation).

In opposition, Plaintiff points to the timing of his own termination. After receiving the November 9 notification that employees had to return to work, Plaintiff emailed his manager that because he is a cancer survivor, he "definitely [is] not working from [the] office until the pandemic is over." *See id.* at ¶¶ 35–36. Plaintiff contends that approximately a week after sending this message to his manager, he "received an email from Twitter Human Resources that stated: 'Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy.'" *Id.* at ¶¶ 38, 39. Plaintiff alleges that aside from informing his manager that he could not return to the office, he did not engage in any behavior that would violate company policy. *Id.* at ¶ 40. The FAC also alleges that "[m]any of the employees who have lost their jobs since Musk's purchase of the company are disabled," and that "many disabled employees have felt forced to resign." *See* FAC at ¶¶ 4, 9. But even accepting these allegations as true, they suggest that Plaintiff and other employees were terminated because they refused to return to the office, not because of a disability. Plaintiff has not explained how these allegations give rise to a reasonable inference that Defendant had a discriminatory motive or intent in issuing its policies or in terminating employees. *Cf. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group. The plaintiff must show the employer chose the particular policy because of its effect on

members of a protected class."). The Court therefore **GRANTS** the motion to dismiss the disparate treatment claims under the ADA and FEHA.

### b. Disparate Impact

The parties also appear to agree that the elements of a disparate impact claim under the ADA and FEHA are largely the same. *Compare* Dkt. No. 15 at 10, *with* Dkt. No. 21 at 12. Both statutes prohibit facially neutral practices that have a significantly discriminatory impact on a protected group and that are not justified by business necessity. *See, e.g.*, *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); *Mahler v. Jud. Council of California*, 67 Cal. App. 5th 82, 112–13 (Cal. Ct. App. 2021). "At the pleading stage, the complaint need only allege facts giving rise to plausible inferences that the disparity exists and is caused by the identified practice." *See Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (collecting cases).

Plaintiff has failed to plausibly allege that a disparity actually exists here. Plaintiff alleges that "[m]any disabled employees . . . have felt that, because of their disability, they will not be able to meet [Defendant's] new heightened standard of performance and productivity," and "have felt forced to resign." *See* FAC at ¶¶ 7, 9, 48. But Plaintiff has not alleged that such individuals have actually resigned or that they have done so at higher rates than their non-disabled colleagues. Again, Plaintiff points only to his own circumstances of being terminated after telling his manager that he could not return to the office, *see* Dkt. No. 21 at 13, but "the Court cannot draw an inference of disparity from a single data point," *see Liu*, 551 F.Supp.3d at 991. It is not enough for Plaintiff to assert that "it is reasonable to infer" that Defendant's new policies "would have a disparate impact on individuals with disabilities who either cannot physically report to an office . . . or perform at such a level, without incurring risks to their health, and/or who require reasonable accommodations to complete their work." *See* Dkt. No. 21 at 14. Plaintiff must provide factual support for this conclusion. The Court therefore **GRANTS** the motion to dismiss the disparate impact claims under the ADA and FEHA.

### B. FMLA and CFRA Claims

Plaintiff does not allege that he was either on leave or intending to take leave at the time he was terminated, and Defendant argues that the Court should thus dismiss the FMLA and CFRA

6

claims for lack of standing. *See* Dkt. No. 15 at 11–13. The FAC only alleges that Mr. Mehta—whose claims were compelled to arbitration—"had previously informed Twitter (and received approval) to take a family leave . . . ." FAC at ¶ 50. However, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *see also Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.") (quotations omitted). Plaintiff acknowledges that he does not have standing to bring these claims himself and intends to find another named Plaintiff to assert these claims. *See* Dkt. No. 21 at 2, 16–17. The Court therefore **GRANTS** the motion to dismiss the FMLA and CFRA claims to the extent Plaintiff Borodaenko asserts them himself. Plaintiff Mehta's FMLA and CFRA claims, however, remain stayed pending arbitration.

### C. Declaratory Judgment Act

Defendant also moves to dismiss Plaintiff's claim under the Declaratory Judgment Act for an injunction prohibiting Twitter from soliciting separation agreements from disabled employees that release their discrimination claims without first notifying them of this case. *See* Dkt. No. 15 at 13–14. Defendant argues that because the Act is just "a procedural device," and "does not create any substantive rights," this claim must fail given the dismissal of the other claims. *Id.* at 13. In response, Plaintiff appears to argue that the claim is moot anyway because in a separate case, *Cornet v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, Twitter already agreed to include notice of this case as part of its distribution of severance agreements. *See* Dkt. No. 21 at 5, n.2. Plaintiff thus acknowledges that his claim for relief was "effectively adjudicated" already. *Id.* The Court therefore **GRANTS** the motion to dismiss this claim.

### D. Class Action Allegations

Lastly, Defendant argues that the Court should dismiss or strike the class allegations. *See* Dkt. No. 15 at 14–20. Defendant argues, for example that the complaint does not sufficiently allege that Plaintiff is similarly situated to the putative class because unlike the putative class, Plaintiff did not resign because of the company's new policies, but rather was laid off. *Id.* at 14. Defendant also contends that Plaintiff's alleged need to work remotely is insufficient to establish

1  that all other disabled employees were similar situated. *Id.* at 15–16.  Defendant also suggests that
2  evaluating whether Twitter's policies were discriminatory would require individual assessments of
3  class members' disabilities. *Id.* at 18–20.  Nevertheless, because the Court has dismissed all the
4  claims in this case, the Court need not reach this argument.

5  Still, the Court notes that a growing number of courts (including this one) generally
6  disfavor motions to strike, finding that they "serve little useful purpose in modern federal practice,
7  and are often wielded mainly to cause delay and inflict needless burdens on opposing parties."
8  *See Stiner v. Brookdale Senior Living, Inc.*, 354 F. Supp. 3d 1046, 1063, n.7 (N.D. Cal. 2019)
9  (quoting *Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*, No. 3:16-CV-00599-JD, 2016 WL
10 8469189, at *1 (N.D. Cal. Dec. 19, 2016)).  And although district courts have authority to strike
11 class allegations at the motion to dismiss stage, courts generally decline to do so because such
12 motions are usually premature before the issue of class certification is before the court.  *See, e.g.*,
13 *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 849 (N.D. Cal. 2019); *Astiana v. Ben*
14 *& Jerry's Homemade, Inc.*, 2011 WL 2111796, at *14–15 (N.D. Cal. May 26, 2011); *Rosales v.*
15 *FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012).

### IV.   CONCLUSION

Accordingly, the Court **GRANTS** the motion to compel arbitration and **STAYS** the action as to Plaintiff Mehta's claims.  Dkt. No. 14.  The parties shall file a status report with the Court every 120 days from the date of this order explaining the progress of the arbitration proceeding as to Plaintiff Mehta's claim, and shall notify the Court within 48 hours of the completion of arbitration.  The Court also **GRANTS** the motion to dismiss as to Plaintiff Borodaenko's claims. Dkt. No. 15.  Plaintiff may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a case management conference on June 20, 2023, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.

8

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The Court further **DIRECTS** the parties to meet and confer and submit a revised joint case management statement by June 13, 2023. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated: May 5, 2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge