SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,
on behalf of themselves and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DMITRY BORODAENKO AND HANA THIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC. AND X CORP.<br><br>Defendants | Case No. 3:22-cv-7226-AMO<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*<br>3. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12940 |

## I.     INTRODUCTION

1. Plaintiffs Dmitry Borodaenko and Hana Thier file this Class Action Complaint against Defendants Twitter, Inc. and X Corp. (collectively "Twitter"), on their own behalf and on behalf of other Twitter employees across the country who are disabled and who have been terminated or constructively discharged from their jobs during the chaotic months since multi-billionaire Elon Musk purchased the company.

2. Plaintiffs bring claims of discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, challenging the company's termination, or constructive termination, of employees with disabilities. This case is brought on behalf of disabled employees who can perform their jobs with or without reasonable accommodation but who were not permitted to continue their jobs, either through termination or constructive discharge, after being required to accept working under unreasonable circumstances for an employee with a disability.

3. Plaintiff Hana Thier also brings a claim of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, challenging the company's termination, or constructive termination, of female employees since Elon Musk's acquisition of the company.

4. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

5. Many of the employees who have lost their jobs since Musk's purchase of the company are disabled.

6. Prior to Musk's purchase of the company, Twitter employees were permitted to work remotely. In fact, over the spring and summer of 2022, Twitter reassured employees that, following Musk's purchase of the company, they would be permitted to continue working remotely for at least a year.

7. However, shortly after Musk completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that all remaining employees would need to work out of a company office – with only rare exceptions for "exceptional" employees, that Musk himself would have to approve.

8. Many disabled employees were able to perform their jobs adequately with the reasonable accommodation of working remotely, rather than from a physical Twitter office. Musk's declaration, however, that almost all employees would need to work out of physical offices made it not possible or viable for many disabled employees to continue their jobs. Musk's declaration made it clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation.

9. In addition, Musk declared that, in order to remain employed at Twitter, employees would have to "work[] long hours at high intensity." Any employees who did not agree to this mandate were laid off.

10. Many disabled employees who have, and could continue to, perform their jobs effectively have felt that, because of their disability, they would not be able to meet this new heightened standard of performance and productivity. Thus, many disabled employees, including Plaintiff Hana Thier, were forced out of their jobs.

11. The mass termination of employees at Twitter has also impacted female employees to a greater extent than male employees – and to a highly statistically significant degree. Elon Musk has made a number of publicly discriminatory remarks about females, so it is not surprising that the managers working under his direction laid off a higher proportion of female employees than male employees. Musk also quickly implemented new unreasonable work demands and policies at Twitter, which were intended to and did have a disparate impact on women, forcing a greater proportion of women than men to leave the company.

12. Plaintiffs file this action on their own behalf and on behalf of similarly situated individuals, bringing claims of disability and sex discrimination.

## II. PARTIES

13. Plaintiff Dmitry Borodaenko is an adult resident of Scotts Valley, California, where he worked for Twitter from June 2021 until November 2022. Mr. Borodaenko was employed by Twitter as an Engineering Manager. Throughout his employment with Twitter, Mr. Borodaenko's performance met the Company's expectations.

14. Plaintiff Hana Thier is an adult resident of Seattle, Washington, where she worked for Twitter from May 2021 until November 2022. Ms. Thier was employed by Twitter as a Senior Software Engineer. Throughout her employment with Twitter, Ms. Thier's performance met the Company's expectations.

15. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all similarly situated Twitter employees across the United States who are disabled and whose jobs have been affected by the company's layoffs, terminations, and constructive discharges based on the heightened and unreasonable demands placed on the company's workforce since Elon Musk acquired the company.

16. Ms. Thier also brings this lawsuit as a Rule 23 class action on behalf of all similarly situated female Twitter employees across the United States whose jobs have been affected by the company's layoffs, terminations, and constructive discharges since Elon Musk acquired the company.

17. Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

18. Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

19.     In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

## III.    JURISDICTION

20.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

21.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Mr. Borodaenko's state law claims, because those claims derive from a common nucleus of operative facts with Plaintiffs' federal claims.

22.     This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV.    STATEMENT OF FACTS

23.     Twitter is a social media company that used to employ thousands of people across the United States.

24.     In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

25.     Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition.

26.     In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

27.     One of the promises was that employees would be able to continue working remotely, for at least a year after Musk's acquisition of the company. This promise was made repeatedly to employees by managers, the CEO, and other staff.

28.     However, following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on this promise.

29. On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately.

30. At a meeting with Twitter employees on November 10, 2022, Musk reiterated that employees needed to return to the office full time. He told employees: "if you can show up at an office and you do not show up at the office, resignation accepted -- end of story." He elaborated: "Let me be crystal clear, if people do not return to the office when they are able to return to the office -- they cannot remain at the company." Victor Ordonez and Stephanie Wash, Exclusive audio: Musk talks potential Twitter bankruptcy, return to office meeting, ABC News (November 11, 2022), https://abcnews.go.com/Business/exclusive-audio-elon-musk-tells-twitter-employees-return/story?id=93087987.

31. Musk further stated that exceptions to this policy would be made only for "exceptional people".

32. In the months after he acquired Twitter and prohibited the company's employees from working remotely, Musk was openly hostile towards disabled employees and insinuated that they were lazy. For example, he tweeted that a disabled former Twitter employee used his disability as an excuse not to work. https://www.cnn.com/2023/03/07/tech/elon-musk-twitter-employee-disability/index.html. He has also joked about employees having Tourette's Syndrome. Id. Moreover, he has chastised employees who work from home for being "morally wrong." See https://www.cbsnews.com/news/elon-musk-work-from-home-morally-wrong/.

33. In addition to requiring remaining employees to work at physical offices, Musk also immediately began a mass layoff that has affected well more than half of Twitter's workforce. See See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html; Kate Conger, Ryan Mac, and Mike Isaac, In Latest Round of Job Cuts, Twitter is said to Layoff at Least 200

Employees, NEW YORK TIMES (February 26, 2023), https://www.nytimes.com/2023/02/26/technology/twitter-layoffs.html; Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

34. Twitter's new requirement that employees report to physical offices, as well as rampant terminations and layoffs, have disparately affected disabled employees, including Plaintiffs Dmitry Borodaenko and Hana Thier.

35. Mr. Borodaenko worked as an Engineering Manager. Throughout his employment at Twitter, he worked remotely from his home. Indeed, when he was hired in June 2021, he was assured that he would always have the option to work remotely.

36. Mr. Borodaenko has a disability that makes him vulnerable to COVID-19. Thus, working from an office while the pandemic is still ongoing would create an unacceptable risk to his health and life.

37. Mr. Borodaenko informed his manager of his disability and how it prevented him from working out of a company office.

38. Following Musk's announcement that employees would have to work out of company offices, Mr. Borodaenko wrote to his manager: "In case I didn't mention it before, as [a] cancer survivor I'm at extra risk from Covid (it also counts as a disability), so I'm definitely not working from [the] office until the pandemic is over."

39. Mr. Borodaenko was not given any information about how formally to request an "exception" to the return to the office policy that Musk instituted at Twitter, and Twitter never engaged in any discussions about Mr. Borodaenko's request to continue the reasonable accommodation he had always been provided for his disability.

40. Not long after sending this message to his manager, Mr. Borodaenko was terminated.

41. On November 15, 2022, Mr. Borodaenko received an email from Twitter Human Resources that stated: "Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy."

42. Mr. Borodaenko had not received any notice of behavior he was alleged to have engaged in that violated company policy, nor did he engage in any behavior that would appear to him to have violated company policy (other than informing his manager that he could not comply with Musk's demand that employees begin working out of company offices, and therefore needed a reasonable accommodation for his disability).

43. In addition to the requirement that employees begin working out of company offices, Musk also made clear that working for Twitter would demand extraordinary effort and long work hours.

44. Following Musk's purchase of the company, employees were reported to have worked 12 hour shifts, 7 days a week. Some employees were told: "The expectation is literally to work 24/7 to get this out." Some employees slept in Twitter offices while being required to work around the clock. Grace Dean, <u>Twitter staff have been told to work 84- weeks and managers slept at the office over the weekend as they scramble to meet Elon Musk's Tight deadlines, reports say</u>, BUSINESS INSIDER (Nov. 1, 2022), <u>https://www.businessinsider.com/elon-musk-twitter-staff-layoffs-long-hours-shifts-work-jobs-2022-11</u>.

45. These demands occurred while the company was in the process of mass layoffs, thus signaling to employees that these extraordinary efforts were required in order to keep their jobs.

46. Indeed, Mr. Borodaenko's workload vastly increased following the beginning of Twitter's mass layoffs. As a manager, the number of employees assigned to report to him increased from about 10 to 16.

47. On November 16, 2022, Musk sent the following email to remaining Twitter employees:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore. This will mean working long hours at high intensity. Only exceptional performance will constitute a passing grade.
>
> Twitter will also be much more engineering-driven. Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway. At its heart, Twitter is a software and servers company, so I think this makes sense.
>
> If you are sure that you want to be part of the new Twitter, please click yes on the link below:
>
> [LINK]
>
> Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.
>
> Whatever decision you make, thank you for your efforts to make Twitter successful.
>
> Elon

48. This further ultimatum from Musk that working at Twitter would require "working long hours at high intensity", in which "[o]nly exceptional performance" would be acceptable, was highly discriminatory against disabled employees.

49. This ultimatum did not allow for employees who require reasonable accommodation for their disabilities but who are nevertheless capable of adequately performing their jobs.

9
SECOND AMENDED CLASS ACTION COMPLAINT

50. Further, this ultimatum, as well as Musk's behavior since he took control of Twitter, clearly deterred disabled employees from feeling they could continue to work at the company.

51. Ms. Thier has been diagnosed with depression, which severely limits at least one major life activity.

52. Following Musk's ultimatum, Ms. Thier felt she could no longer work at Twitter, given her disability. She needed a stable work environment with clear and reasonable expectations. As such, she did not click yes on the ultimatum link that Musk sent employees on November 16, 2022.

53. The next day, Ms. Thier was laid off.

54. In addition to their impact on disabled employees, the layoffs at Twitter have also disproportionately affected female employees.

55. Women were significantly statistically more likely to be chosen for layoff on November 4, 2022, than men.

56. Musk's November 16th ultimatum was also intended to, and did, result in further layoffs. The ultimatum resulted in more women, including Ms. Thier, leaving the company than men. Indeed, approximately 36% of remaining women left the company as a result of this ultimatum, while approximately 28% of men did.

57. The fact that more women than men were laid off and forced out of the company through constructive discharge since Musk's acquisition is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women. Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership. As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

58. Examples of Musk's discriminatory and demeaning comments about women include his posting of tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts.  See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com); Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

59. Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping Thier jobs), tweeted: "Being a Mom is just as important as any career."  Twitter (August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640.  Within weeks of announcing the layoffs, Musk tweeted "Testosterone rocks ngl".  Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817

60. More recently, Musk had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter."  See Twitter (April 9, 2023), https://twitter.com/elonmusk/status/1645266104351178752?cxt=HHwWgIC-7cGzlNUtAAAA

## V.   EXHAUSTION OF ADMINSTRATIVE REMEDIES

61.   Plaintiff Borodaenko has filed an administrative charge of disability discrimination under the ADA with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department. He has received a Right to Sue letter to pursue these claims in court.

62.   Plaintiff Thier has filed an administrative charge of disability discrimination under the ADA and sex discrimination under Title VII with the Equal Employment Opportunity Commission.  She has received a Right to Sue letter to pursue these claims in court.

## COUNT I

### Americans With Disabilities Act,
### 42 U.S.C. §§ 12101, *et seq.*

Plaintiffs and other employees with disabilities, or who have been perceived to be disabled, who have worked for Twitter, and could perform the essential functions of their job with or without reasonable accommodation, have been entitled to the protections of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Plaintiffs are disabled, as defined by the ADA, 42 U.S.C. § 12102, and could perform the essential functions of their jobs with or without reasonable accommodation.  However, after Musk's acquisition of the company, Twitter required its employees to report physically to its offices. Twitter terminated Plaintiff Borodaenko after he requested that he be permitted to continue to work remotely on account of his disability. Twitter laid off, or constructively discharged, Plaintiff Thier because she reasonably believed she could no longer work for the company given her disability and Musk's unreasonable demands on the workforce. Twitter, through the rigid enforcement of its return to office policy, as well as its unreasonable demands on employees since Elon Musk's purchase of the company, has discriminated against Plaintiffs and other disabled Twitter employees in violation of the ADA.

## COUNT II

### Title VII,
### 42 U.S.C. § 2000e, *et seq.*

Plaintiff Thier and other female employees have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct in conducting mass layoffs (which were carried out through termination and constructive discharge) in a manner that resulted in a disproportionate impact on women constitutes unlawful discrimination against Plaintiff Thier and other similarly situated female Twitter employees on the basis of sex in violation of Title VII.

## COUNT III

### California Fair Employment and Housing Act,
### Gov. Code § 12940

Plaintiff Borodaenko and other employees with disabilities, or who have been perceived to be disabled, who have worked for Twitter in California, and could perform the essential functions of their job with or without reasonable accommodation, have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940. Plaintiff Borodaenko is disabled, as defined by the FEHA, Gov. Code § 12926.1, and could perform the essential functions of his job with the reasonable accommodation of working remotely. Twitter required its employees, including Plaintiff Borodaenko, to report physically to its offices, and terminated Plaintiff Borodaenko after he requested that he be permitted to continue to work remotely on account of his disability. Twitter, through the rigid enforcement of its return to office policy, as well as its unreasonable demands on employees since Elon Musk's purchase of the company, has discriminated against Plaintiff Borodaenko and other disabled Twitter employees who have worked out of California in violation of the FEHA.

**JURY DEMAND**

Plaintiffs request a trial by jury on the claims asserted here.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a. Declare and find that Twitter is liable to Plaintiff Borodaenko, Plaintiff Thier, and other similarly situated disabled employees under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12940;

b. Declare and find that Twitter is liable to Plaintiff Thier and other similarly situated female employees under Title VII, 42 U.S.C. § 2000e, *et seq.*,

c. Certify this case as a class action;

d. Reinstate disabled employees who wish to return to their jobs with reasonable accommodations, and reinstate female employees who wish to return to their jobs;

e. Award compensatory and any other appropriate damages, in an amount according to proof;

f. Award pre- and post-judgment interest;

g. Award reasonable attorneys' fees, costs, and expenses; and

h. Award any other relief to which Plaintiffs and other similarly situated Twitter employees may be entitled.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | DMITRY BORODAENKO AND HANA THIER, on behalf of themselves and all others similarly situated, |
|   | By their attorneys, |
|   | /s/ Shannon Liss-Riordan<br>Shannon Liss-Riordan, SBN 310719<br>Thomas Fowler (*pro hac vice* forthcoming)<br>LICHTEN & LISS-RIORDAN, P.C.<br>729 Boylston Street, Suite 2000<br>Boston, MA 02116<br>(617) 994-5800 |
| Dated: May 26, 2023 | Email:  sliss@llrlaw.com; tfowler@llrlaw.com |

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on Defendants' counsel via the CM/ECF system on May 26, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan