SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TWITTER, INC., AND X CORP.,

Defendants.

Case No. 3:22-cv-07226-AMO

**PLAINTIFFS' MOTION TO CONSOLIDATE CASES**

BEFORE THE HON. ARACELI MARTÍNEZ-OLGUÍN

Date: July 20, 2023
Time: 2:00 PM
Courtroom: 10

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 20, 2023, at 2:00 PM, in Courtroom 10, 450 Golden Gate Ave., San Francisco, California, before the Honorable Araceli Martínez-Olguín, Plaintiffs will, and hereby do, move for an order granting this Motion to Consolidate Cases pursuant to Federal Rule of Civil Procedure 42(a).

There are now pending in this federal district three class action discrimination cases against Twitter, Inc. and X Corp. (collectively, "Twitter") that all involve common questions of law or fact ripe for consolidation under Federal Rule of Civil Procedure 42(a). In addition to the above-captioned, first-filed case, these include *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.). The undersigned counsel represent all plaintiffs in these actions, and the same counsel represent the defendants in all three actions. Because judicial convenience, consistency, and fairness would be greatly aided by consolidating these three cases — within which common questions of law and fact against the same defendants for substantially the same discriminatory actions permeate — Plaintiffs respectfully move this Court to order the consolidation of these actions pursuant to Federal Rule of Civil Procedure 42(a).[1]

---

[1]   In the alternative, Plaintiffs respectfully request this Court reconsider their earlier Administrative Motion to Relate these cases, based upon new circumstances since that motion was filed.

**TABLE OF CONTENTS**

I.     INTRODUCTION AND BACKGROUND .......................................................... 1

II.    CONSOLIDATION IS APPROPRIATE ........................................................... 6

III.   CONCLUSION..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Atonio v. Wards Cove Packing Co.*,
    810 F.2d 1477 (9th Cir. 1987) ................................................................. 4

*Bolbol v. City of Daly City*,
    754 F. Supp. 2d 1095 (N.D. Cal. 2010) ................................................ 8

*Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*,
    2018 WL 3388548 (N.D. Cal. Apr. 27, 2018) ..................................... 9

*Dunson v. Cordis Corporation*,
    854 F.3d 551 (9th Cir. 2017) ............................................................... 11

*Dusky v. Bellasaire Investments*,
    2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) ..................................... 6

*Hall v. Hall*,
    138 S. Ct. 1118 (2018) ........................................................................ 9

*Huene v. United States*,
    743 F.2d 703 (9th Cir. 1984) ............................................................... 7

*In re Adams Apple, Inc.*,
    829 F.2d 1484 (9th Cir. 1987) ............................................................. 6

*In re Cent. Aluminum Co. Securities Litig.*,
    2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ........................... 8, 9, 10

*In re Equity Funding of Amer. Sec. Litig.*,
    416 F. Supp. 161 (C.D. Cal. 1976) ..................................................... 8

*In re Facebook Privacy Litigation*,
    2010 WL 5387616 (N.D. Cal. Dec. 21, 2010) ............................. 7, 10

*Inv'rs Research Co. v. U.S. Dist. Ct. for Cent. Dist. of California*,
    877 F.2d 777 (9th Cir. 1989) ............................................................... 7

*Johnson v. Manhattan Ry. Co.*,
    289 U.S. 479 (1933) ............................................................................ 9

*Kampe v. Volta Inc.*,
    2022 WL 19975281 (N.D. Cal. Nov. 25, 2022) ................................. 9

*Medina v. Mealing*,
    2006 WL 8443382 (N.D. Cal. Feb. 2, 2006) ................................... 8, 9

*Mendoza v. Amalgamated Transit Union Int'l*,
      30 F.4th 879 (9th Cir. 2022) ................................................................................. 2

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
      2014 WL 2604991 (N.D. Cal. June 10, 2014) .................................................... 8

*Mulligan v. Impax Laboratories, Inc.*,
      2013 WL 3354420 (N.D. Cal. July 2, 2013) ...................................................... 9

*Paxonet Commun., Inc. v. TranSwitch Corp.*,
      303 F. Supp. 2d 1027 (N.D. Cal. 2003) ............................................................. 9

*Power Integrations, Inc. v. Chan-Woong Park*,
      2019 WL 119969 (N.D. Cal. Jan. 7, 2019) ............................................... 6, 9, 10

*Segar v. Smith*,
      738 F.2d 1249 (D.C. Cir. 1984) .......................................................................... 4

*Solannex, Inc. v. MiaSole, Inc.*,
      2012 WL 1894268 (N.D. Cal. May 23, 2012) .................................................... 7

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
      720 F. Supp. 805 (N.D. Cal. 1989) ..................................................................... 7

*Strifling et al v. Twitter, Inc. et al*,
      Case No. 22-cv-07739-JST (N.D. Cal.) ..................................................... passim

*Tollen v. Geron Corporation*,
      2020 WL 2494570 (N.D. Cal. May 14, 2020) .................................................... 6

*United Mine Workers of America v. Gibbs*,
      383 U.S. 715 (1966) ............................................................................................ 6

*Zeman v. Twitter Inc. et al.*,
      Case No. 23-cv-01786-SI (N.D. Cal.) ......................................................... passim

*Zhu v. UCBH Holdings, Inc.*,
      682 F. Supp. 2d 1049 (N.D. Cal. 2010) .............................................................. 7

**Statutes**

Age Discrimination in Employment Act of 1967 ("ADEA"),
      29 U.S.C. § 621 ................................................................................................... 2

Americans With Disabilities Act ("ADA"),
      42 U.S.C. §§ 12101, *et seq.* ................................................................................ 1

California Fair Employment and Housing Act ("FEHA"),
      Gov. Code § 12940 ......................................................................................... 1, 2

California Family Rights Act,
    Gov. Code §12945.2 ................................................................................................ 2

Family and Medical Leave Act ("FMLA"),
    29 U.S.C. §2601, *et seq.*............................................................................................ 2

New York State Human Rights Law ("NYSHRL"),
    NY Exec § 296............................................................................................................ 2

Title VII,
    42 U.S.C. § 2000e *et seq.*......................................................................................... 1

**Rules**

Fed. R. Civ. P. 42 ........................................................................................... 6, 7, 9, 10

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs in this case as well as two other cases — *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.) — have filed class actions against Twitter for engaging in unlawful discrimination in the chaotic aftermath of Elon Musk's takeover of the company that resulted in their termination, constructive discharge, or being laid off. All of these suits have been filed as class actions challenging employment separations that occurred during the same time period, all plaintiffs are represented by the same undersigned counsel, and all suits name Twitter, Inc. and X Corp. as the sole defendants, who are also represented by the same counsel in each case.

Not only do all three cases concern the same company, time period, and decisional processes resulting in Plaintiffs' unlawfully discriminatory terminations, constructive discharges, or being laid off; they now also have substantial overlap in the legal claims they assert.

In this case, *Borodaenko*, the named plaintiffs allege that Twitter has engaged in unlawful discrimination on the basis of disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940. The *Borodaenko* plaintiffs also assert that Twitter has engaged in unlawful discrimination on the basis of sex against female employees in violation of Title VII, 42 U.S.C. § 2000e *et seq.*.

Likewise, the named plaintiffs in the *Strifling* case allege unlawful discrimination against female employees in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*. Thus, the *Strifling* and the *Borodaenko* cases both assert claims that Twitter unlawfully engaged in sex discrimination against female employees in violation of Title VII on behalf of putative classes consisting of Twitter's female employees who were terminated, constructively discharged, or laid off following Musk's takeover of the company. They also commonly allege violations of California's FEHA. The *Strifling* plaintiffs further allege that Twitter engaged in unlawful age discrimination during this same period through its termination,

constructive discharge, and laying off of employees age fifty (50) or older in violation of under

the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, and (for

employees who worked out of California) the California Fair Employment and Housing Act

("FEHA"), Gov. Code § 12900, *et seq.*

By the same token, the named plaintiff in the *Zeman* case also alleges discrimination on

the basis of age, on behalf of employees age fifty (50) or older for their unlawful terminations,

constructive discharges, or layoffs during the same period of time and within the same context as

the other claims. The *Zeman* plaintiffs, like their counterparts in *Strifling*, bring their claims

pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, in

addition to claims (for employees who worked out of New York) under the New York State

Human Rights Law ("NYSHRL"), NY Exec § 296, challenging the company's termination of

older employees since Elon Musk's acquisition of the company.

When this Court denied Plaintiffs' earlier Administrative Motion to Relate Cases, these

cases stood in a different posture. At that time, they each alleged a different form of

discrimination (disability, sex, or age). Now, however, the discrimination allegations are

overlapping among the cases, as plaintiffs have been added who belong to more than one

protected class and have brought claims based on more than one type of discrimination. Thus,

this case has been amended to add a sex discrimination claim and to eliminate claims under the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.* and the California Family

Rights Act, Gov. Code §12945.2. The *Strifling* case has been amended to include age

discrimination claims.[2] Thus, as it currently stands, the *Borodaenko* case asserts both disability

---

[2]     These amendments were necessary to address court orders and to present additional facts
in support of Plaintiffs' claims. Were a plaintiff such as Ms. Thier to add her sex discrimination
claim in the *Strifling* case, or Ms. Frederick-Osborn to add her age discrimination claim in the
*Zeman* case, Twitter certainly would have objected on the basis that doing so constitutes "claim-
splitting." *See generally Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th
Cir. 2022) (summarizing claim-splitting doctrine).
        Moreover, the addition of Ms. Thier to this case was necessary to address the Court's
concern that Mr. Borodaenko did not have standing to press the issue stated in this complaint that
Elon Musk's ultimatum issued on November 16, 2022 (in which employees were required to

and sex discrimination, the *Strifling* case asserts both sex and age discrimination, and the *Zeman* case asserts age discrimination.

It is, of course, unsurprising that some individuals would fall into more than one protected class and therefore have distinct but interrelated discrimination claims. Indeed, as these cases have progressed on their individual tracks, their similarities have been brought into sharper focus by these subsequent amendments — all aimed at capturing the full panoply of injuries suffered by their respective Plaintiffs attributable to Twitter's discriminatory conduct — and resultantly, Plaintiffs now move to consolidate these cases (or, in the alternative, once again to relate them).

As Plaintiffs have alleged, Elon Musk purchased Twitter in late October 2022, and he immediately began shearing Twitter's workforce through mass layoffs, terminations, and constructive discharges of significantly more than half of the company's employees. These actions disparately affected disabled, female, and older employees—all of which are groups Musk has openly disparaged by way of widely-publicized bigoted, demeaning, and hostile comments.

Many of the employees who have lost their jobs since Musk's purchase of Twitter are disabled. Prior to Musk's takeover, Twitter's employees were permitted to work remotely. Yet shortly after Musk completed his purchase of the company, he declared that remote work would no longer be allowed and that all remaining employees would be required to work in-person out of a company office, save for rare "exceptional" employees that Musk himself would have to personally approve. Musk further declared in an email that, in order to remain in Twitter's employ, employees would have to "work[] long hours at high intensity" and that "[o]nly

---

commit to being "hardcore" and working "long hours at high intensity") was discriminatory against disabled employees, since Mr. Borodaenko was terminated prior to the issuance of that ultimatum. And the addition of Ms. Frederick-Osborn to the *Strifling* case was necessary to address that Court's concern that the named plaintiffs (both of whom were informed of their layoff on November 4, 2022) did not have standing to press the issue that the November 16, 2022, ultimatum was discriminatory against female employees. Both Ms. Thier and Ms. Frederick-Osborn did not click "yes" in response to the ultimatum and so were laid off the next day.

exceptional performance will constitute a passing grade" as the company strived to become "extremely hardcore." Any employees who did not agree to this mandate by 5PM the following day via a hyperlinked online form were laid off the next day.

Many disabled employees were able to perform their jobs adequately with the reasonable accommodation of working remotely instead of from a physical Twitter office. Plaintiffs allege that Musk's ultimatum requiring in-person work (during a global pandemic, no less) and making vague statements about the new intensity demanded of employees made it impossible or not viable for many disabled employees to commit to continuing in their roles under these conditions. At the same time, a clear inference can be drawn that the managers tasked with making employment decisions would be influenced by the messaging from Musk that disadvantaged disabled employees. Mr. Borodaenko's case presents a paradigmatic example: When he raised concerns that his disability precluded him from safely returning to in-person work, he was immediately terminated. Thus, Plaintiffs allege, Twitter's practices following Musk's takeover constituted unlawful discrimination against employees with disabilities.

In substantially similar ways, Plaintiffs assert the mass terminations, constructive discharges, and layoffs of employees at Twitter following Musk's takeover have also impacted female employees to a greater extent than male employees. Not only did the managers under Musk's close supervision lay off a statistically significantly greater proportion of female employees than male employees on November 4, 2022 (as set forth in the *Strifling* complaint, ¶ 29–32), as a result of Musk's November 16, 2022, ultimatum, 36% of Twitter's remaining female employees left the company compared to just 28% of male employees, itself a statistically significant disparity (*Strifling* Compl. ¶ 46). The Ninth Circuit has held that "[a]n illicit motive may be inferred in a class-wide discrimination claim from a sufficient showing of disparity between the class members and comparably qualified members of the majority group." *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1480 (9th Cir. 1987) (citing *Segar v. Smith*, 738 F.2d 1249, 1265-66 (D.C. Cir. 1984)).

Twitter's discriminatory motive is further elucidated by a plethora of misogynistic statements made by Musk that include his proclamation "Testosterone rocks," his joke about naming a school using the acronym "TITS," and his decision to paint the "W" on Twitter's headquarters so that it read "Titter." *Strifling* Compl. ¶ 50–53. These statements, too, help explain why female employees no longer felt welcome at the company and why the managers working under Musk's direction (and themselves hoping to survive the tumult) laid off a higher proportion of female employees than male employees.

Since Musk's takeover, Twitter has implemented additional policies with the effect of causing more women than men to leave the company through terminations, constructive discharges, and layoffs. These include demands to work unreasonable hours (including encouraging employees to work 12-hour-days for 7 days a week, sleeping in the office, and working out of physical offices) that are likely to have a disparate impact on women, who are statistically more often caregivers for children and other family members and therefore less able to comply with such demands.

Such policies are also more likely to have a disparate impact on disabled and older employees. Indeed, as set forth in the *Zeman* and *Strifling* complaints, many of these same practices resulted in the termination, constructive discharge, or laying off of employees age fifty (50) or older. As described in the *Zeman* complaint, older employees were more likely to be dismissed during the initial wave of mass layoffs than their younger counterparts. *Zeman* Compl. ¶ 29–32. Twitter's subsequent practices created a culture hostile to older workers that encouraged their departures. *Strifling* Compl. ¶ 54. These allegations are unsurprising: the undertone of Musk's aforementioned ultimatum, messaging, and new policies was that the company was prioritizing younger employees and that older employees were no longer welcome. This message was not just clear to employees forced to decide whether or not to click "yes" to Musk's ultimatum; it was also heard by managers — working in close concert with Musk — who were charged with making layoff decisions. And, when read in conjunction with Musk's widely-publicized ageist statements about how "try[ing] to have people live for a really long

time….would cause asphyxiation of society," how "it is just impossible to stay in touch with the people if you are many generations older than them," and how if older people "don't die, we will be stuck with old ideas and society wouldn't advance," the open animus Musk has expressed for older employees — like the animus he has expressed towards women and persons with disabilities — sent a message to employees and managers alike that older employees were no longer welcome at Twitter.

## II.    CONSOLIDATION IS APPROPRIATE

Federal Rule of Civil Procedure 42 provides:

> **(a) Consolidation.** If actions before the court involve a common question of law or fact, the court may:
> **(1)** join for hearing or trial any or all matters at issue in the actions;
> **(2)** consolidate the actions; or
> **(3)** issue any other orders to avoid unnecessary cost or delay.
> **(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42. The Supreme Court has explained, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (citing, *inter alia*, Fed. R. Civ. P. 42). "The complaints do not need to be identical for the purposes of consolidation." *Tollen v. Geron Corporation*, 2020 WL 2494570, at *1 (N.D. Cal. May 14, 2020). For an action to be consolidated pursuant to Rule 42(a), it need only "involve *a* common question of law *or* fact," Fed. R. Civ. P. 42(a) (emphasis added). "The Court need find only one issue of law or fact in common to permit consolidation." *Power Integrations, Inc. v. Chan-Woong Park*, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019) (first citing Rule 42, then citing *Dusky v. Bellasaire Investments*, 2007 WL 4403985, at *2 (C.D. Cal. Dec. 4, 2007)). Consolidation can be ordered on the motion of a party or *sua sponte*. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987).

As the Ninth Circuit has explained, "The district court has broad discretion under this rule to consolidate cases pending in the same district," even where the cases are assigned to different judges within the same federal judicial district. *Inv'rs Research Co. v. U.S. Dist. Ct. for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989). When cases are pending before different judges, a motion to consolidate pursuant to Rule 42 is properly presented to "the assigned judge in the lower-numbered case." *Solannex, Inc. v. MiaSole, Inc.*, 2012 WL 1894268, at *1, n.12 (N.D. Cal. May 23, 2012).[3]

"The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984), *on reh'g,* 753 F.2d 1081 (9th Cir. 1984). "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806-807 (N.D. Cal. 1989)). And, at least in the securities context (though readily applicable to broader class actions), "Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money by everyone involved." *In re*

---

[3]    *See also In re Facebook Privacy Litigation*, 2010 WL 5387616, at *2 (N.D. Cal. Dec. 21, 2010). There, the court provided an outline of the proper course of action when ordering cases consolidated:

> The Court consolidates these Actions—CV 10-02389 and CV 10-05301—into one action. The Clerk of Court shall consolidate these actions such that the earliest filed action, CV 10-02389, is the lead case. All future filings shall be in CV 10–02389 and bear the caption: '*In re Facebook Privacy Litigation.*' Since the later action is now consumed in first filed action, the Clerk shall administratively close CV 10-05301. All future related cases shall be automatically consolidated and administratively closed.

*Id.*

*Cent. Aluminum Co. Securities Litig.*, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009) (citing *In re Equity Funding of Amer. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)).

Here, consolidation is manifestly appropriate as common questions of fact and law pervade these three cases, and their consolidation would not cause — but indeed, would minimize — inconvenience, delay, expense, confusion, or prejudice.[4]

First, like scores of other cases regularly consolidated in this court, the cases at bar "involve common questions of law and fact, as well as overlapping parties, claims and putative classes." *Medina v. Mealing*, 2006 WL 8443382, at *2 (N.D. Cal. Feb. 2, 2006). Indeed, all three cases concern class action claims by commonly represented plaintiffs for the same exact course of action (terminating, constructively discharging, and/or laying off Plaintiffs) against the same exact defendants for the same exact tumultuous time period.[5] And significantly, each of these

---

[4]     Twitter has already acknowledged in parallel proceedings the benefits of consolidation. In arbitration proceedings before JAMS (for those employees who are bound by arbitration clauses that include class action waivers) concerning the same claims as the plaintiffs in these three cases (in addition to other claims), Twitter has urged JAMS to consolidate discovery across these separate proceedings, arguing that:

> Given the identical and/or overlapping legal claims and factual allegations in these thousands of pending matters, a coordinated, universal discovery plan is imperative to litigate these matters efficiently, effectively, and fairly. Thoughtful coordination on the front-end across all pending matters will result in speedier resolutions, while also preventing prejudice, undue burden and waste of resources and expense for the parties and JAMS.

Letter from Sari M. Alamuddin, Counsel for Defendants, to Sheri F. Eisner, Senior Vice President and General Counsel, JAMS (May 31, 2023) (attached as Exhibit 1 to Liss-Riordan Declaration).

[5]     *See, e.g.*, *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1118-19 (N.D. Cal. 2010) ("Here, each action asserts substantially the same claims against the same defendants and raises substantially the same questions of law and fact. Thus, all of the prerequisites for consolidation under rule 42(a) are present, and the court orders that the two actions be consolidated."); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014) ("The Court GRANTS the motion because all three cases arise from the same conduct by Defendants, and bring the same causes of action against the same Defendants…. The actions present identical factual and legal issues because they each arise out of the same alleged misstatements").

three cases—which "are in the same procedural stage"[6]—concern putative classes that overlap putative classes in the other cases, further supporting consolidation.[7] In fact, these cases are more similar in many aspects than a myriad of cases this Court has ordered consolidated in the past.[8]

Yet even setting aside that all three cases contain at least some overlapping claims on behalf of overlapping putative classes alleging Twitter's same course of conduct violated the same statutes, the fact that a few of the claims in these cases assert unique statutory violations does not preclude consolidation for several important reasons. For starters, that all of the claims arise from the same factual patterns more than satisfies the requirement that the cases share "a common question of law *or fact*." Fed. R. Civ. P. 42(a) (emphasis added). The Supreme Court has made clear that Rule 42 is written to reflect the traditional, pre-Rule notion that "consolidation is permitted as a matter of convenience and economy in administration," *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933), and should be understood "as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them," *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018). Thus, Rule 42 was written to allow for consolidation of cases with common factual patterns even when the legal claims asserted vary slightly. This is borne out in this court's caselaw. In *In re Century Aluminum Co.*, 2009 WL 2905962 at *2, the court confronted a motion to consolidate that was

---

[6]     *Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*, 2018 WL 3388548, at *1 (N.D. Cal. Apr. 27, 2018).

[7]     *See*, *e.g.*, *Mulligan v. Impax Laboratories, Inc.*, 2013 WL 3354420, at *2-3 (N.D. Cal. July 2, 2013) ("[B]oth putative classes involve all persons who purchased or otherwise acquired Impax's common stock during the relevant class period. These cases thus present questions of law and fact that overlap almost completely."); *Kampe v. Volta Inc.*, 2022 WL 19975281, at *2 (N.D. Cal. Nov. 25, 2022) ("The Related Actions are both putative class actions brought on behalf of [the same class of persons]….The complaints also largely rely on the same statements and omissions….The Court therefore concludes that judicial convenience and a just, efficient resolution of the parties' claims would be best served by consolidating the Related Actions.").

[8]     *See*, *e.g.*, *Medina*, 2006 WL 8443382, at *2 (different time periods covered by each case); *Mulligan*, 2013 WL 3354420, at *3 (same); *Power Integrations*, 2019 WL 119969, at *2-3 (same); *Paxonet Commun., Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003) (suits challenging related, but different, patents).

opposed on the grounds that the cases presented different legal claims. There, the court

explained:

> The Court is not persuaded by [these] arguments, and finds that consolidation
> of all four cases is in the interest of efficiency. All four cases share common
> questions of fact, and each makes claims centering on Century's restatement of
> cash flows in March 2009. While there are some legal differences between the
> Securities Act and Exchange Act claims—such as whether defendants acted
> with scienter—the similarities are far greater because the claims in all cases
> revolve around whether Century materially misrepresented its financial
> condition. Accordingly, the Court GRANTS the motions to consolidate and
> consolidates all four cases.

*Id.* Similarly, in *Power Integrations*, 2019 WL 119969 at *2, the court explained:

> While the instant action (Case No. 16-cv-02366) focuses on breach of contract
> and conversion; and Park II (Case No. 16-cv-02367) focuses on tortious
> interference with contractual relations and prospective economic relations,
> among other claims, both cases are based on conduct that arose out of a prior
> employer-employee relationship between the parties…. The Court need find
> only one issue of law or fact in common to permit consolidation. *See* Fed. R.
> Civ. P. 42(a). Here, there are several.

Thus, this Court has been keen to order consolidation, even where there are some divergent legal

claims among the cases, when the factual patterns are similar. In so doing, the Court has

recognized that where "each case involves the same alleged activity by [a defendant], discovery

issues will be substantially duplicative," and thus "these similarities and the lack of any apparent

inconvenience, delay or expense that would result from consolidating the cases" renders

consolidation appropriate. *In re Facebook Privacy Litigation*, 2010 WL 5387616, at *1.

The same holds true here: Because all three cases concern substantially the same factual

patterns as well as similar (if not identical) claims of unlawful discrimination, consolidation

would strongly aid in promoting judicial economy through saving considerable time, effort, and

expense. Conversely, were consolidation to be denied, nearly all of the same evidence and

arguments would need to be introduced three separate times in three separate proceedings. This

would not only be a tremendous waste of time and expense, inconvenience witnesses, and delay

resolution of these claims; it would also present a significant risk that parallel, inconsistent

rulings would prejudice the fairness of the parties. As the Ninth Circuit has urged,

"Consolidating the cases for pretrial proceedings could, on its own, avoid the risk of inconsistent adjudications by eliminating the prospect of different judges rendering conflicting rulings on motions for summary judgment or motions in limine concerning the admissibility of key evidence." *Dunson v. Cordis Corporation*, 854 F.3d 551, 556 (9th Cir. 2017). It is difficult to imagine a set of cases where this concern is more palpable than the one at bar given the stark similarity of the parties' claims.

Because consolidation would significantly advance judicial economy; save considerable time and expense; and reduce inconvenience, delay, confusion, and the potential for prejudice, Plaintiffs' Motion to Consolidate Cases (or in the alternative, relate these cases) should be granted.

## III.    CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court consolidate the *Borodaenko*, *Strifling*, and *Zeman* cases pursuant to Fed. R. Civ. P. 42, or in the alternative relate them pursuant to Local Rule 3-12.

Dated: June 6, 2023

Respectfully submitted,

DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ *Shannon Liss-Riordan*_____
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document

3

was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on June

4

6, 2023.

5

/s/ Shannon Liss-Riordan

6

Shannon Liss-Riordan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28