1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
4  kassia.stephenson@morganlewis.com
   One Market, Spear Street Tower
5  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1000
6  Fax:    +1.415.442.1001

7  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
8  ashlee.cherry@morganlewis.com
   1400 Page Mill Road
9  Palo Alto, CA  94304
   Tel:    +1.650.843.4000
10 Fax:    +1.650.843.4001

11 Attorneys for Defendants
   TWITTER, INC. and X CORP.
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17

18 DMITRY BORODAENKO and HANA          Case No. 3:22-cv-07226-AMO
   THIER, on behalf of themselves and all others
   similarly situated,                 **DEFENDANT TWITTER, INC.'S**
19                                      **NOTICE OF MOTION AND MOTION**
                    Plaintiffs,         **TO DISMISS AND/OR STRIKE**
20                                      **PLAINTIFFS' SECOND AMENDED**
             vs.                        **COMPLAINT**
21
   TWITTER, INC. and X CORP.,           **MEMORANDUM OF POINTS AND**
22                                      **AUTHORITIES IN SUPPORT**
                    Defendants.         **THEREOF**
23
                                        Date:      July 27, 2023
24                                      Time:      2:00 p.m.
                                        Judge:     Hon. Araceli Martinez-Olguin
25

26

27

28

MORGAN, LEWIS &                                        TWITTER'S NOTICE OF MOTION AND
  BOCKIUS LLP                                          MOTION TO DISMISS AND/OR STRIKE
 ATTORNEYS AT LAW                                          Case No. 3:22-CV-07226-AMO
  SAN FRANCISCO

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 27, 2023, at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 10 on the 19th Floor of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Twitter, Inc. ("Twitter"), will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 12(b)(6) for an order dismissing and/or striking the Second Amended Complaint for failure to state a claim upon which relief can be granted and/or including redundant, immaterial, impertinent, or scandalous matter, based on the following grounds:

1.       Plaintiffs' first and third claims for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. and the California Fair Employment and Housing Act, Gov. Code § 12940 fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment disability discrimination claim.

2.       Plaintiffs' first and third claims for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. and the California Fair Employment and Housing Act, Gov. Code § 12940 fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate impact disability discrimination claim.

3.       Plaintiff Thier's second claim for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., should be stricken because Thier was added as a named plaintiff without the consent of the Court or counsel for Twitter in violation of Rule 15(a) and such amendment improperly exceeds the scope of the Court's prior May 5, 2023 Order dismissing the First Amended Complaint and granting Plaintiff Borodaenko leave to amend his deficient disability discrimination claim – i.e., an order that did not authorize the addition of a *new* named plaintiff seeking to bring a *new* sex discrimination claims on behalf of a putative class that was absent from the First Amended Complaint.

4.       In the alternative, if the Court does not strike Thier as a named plaintiff, then the Court should stay Thier's sex discrimination claim in light of the previously filed and currently pending gender discrimination putative class action entitled *Strifling, et al. v. Twitter, Inc.*, Case No. 22-cv-07739-JST (N.D. Cal.) ("*Strifling*") pursuant to the "first to file" rule. *Strifling* was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

filed on December 7, 2022 – nearly six (6) months before the SAC was filed, which first introduced any alleged claim for sex discrimination into this case.

5.     In the alternative, if the Court does not strike Thier as a named plaintiff or stay the sex discrimination claim, then Plaintiff Thier's second claim for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., fails to state a claim because she does not allege facts sufficient to support a plausible disparate treatment sex discrimination claim.

6.     In the alternative, if the Court does not strike Thier as a named plaintiff or stay the sex discrimination claim, then Thier's second claim for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., fails to state a claim because she does not allege facts sufficient to support a plausible disparate impact gender discrimination claim.

7.     Plaintiffs' putative class claims fail to state any claim on a class action basis and should be stricken because Plaintiffs does not set forth allegations that plausibly support that they are similarly situated to the putative classes that they purport to represent and can establish the requisite elements of F.R.C.P. 23.

8.     Plaintiffs' putative class claims fail to state any claim on a class action basis and should be stricken because Plaintiffs fail to allege an ascertainable class.

9.     Plaintiffs' putative class claims fail to state a claim on a class action basis and should be stricken because Plaintiffs fail to allege facts demonstrating that their alleged discrimination claims are common or typical of the putative class.

The Motion to Strike and Motion to Dismiss are based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Eric Meckley and its attached Exhibit, the pleadings on file herein and such arguments and admissible evidence as may be presented at the time of hearing.

/ / /

/ / /

/ / /

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1   Dated: June 16, 2023

2

3                                              MORGAN, LEWIS & BOCKIUS LLP

4   By   */s/ Eric Meckley*
    Eric Meckley
5   Brian D. Berry
    Ashlee N. Cherry
6   Kassia Stephenson

7   Attorneys for Defendant
    TWITTER, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ......................................................... 3

    A.    Summary of Plaintiffs' Claims ................................................................ 3

        1.    Plaintiff Dmitry Borodaenko.......................................................... 3

        2.    Plaintiff Hana Thier's Claims. ....................................................... 4

    B.    Relevant Procedural History ..................................................................... 4

        1.    Borodaenko files a First Amended Complaint; The Court Grants Twitter's Motion to Dismiss. ................................................. 4

        2.    Plaintiffs Move to Relate This Action with Strifling and Zeman. .............. 5

        3.    Plaintiffs Here and in Strifling File Amended Complaints Adding New Plaintiffs and New Claims.......................................... 6

III.  LEGAL STANDARD ........................................................................................... 7

    A.    Legal Standard for Motion to Dismiss Under Rule 12(b)(6). ................... 7

    B.    Legal Standard for Motion to Strike Under Rule 12(f)............................ 7

IV.   ARGUMENT ........................................................................................................ 8

    A.    Plaintiffs Fail to State a Claim for Discrimination Under the ADA or FEHA. .................................................................................................. 8

        1.    The SAC Fails to Plead Sufficient Facts to Support a Plausible Disparate Treatment Claim and Does Not Correct the Defects Identified in the Court's May 5, 2023 Order. ......... 8

            a.    Plaintiffs Fail to Allege That Twitter Engaged in a Pattern or Practice of Discrimination. ...................... 10

        2.    Plaintiffs Fail to Plead Facts Sufficient to Support a Plausible Disparate Impact Claim............................................................... 10

    B.    Thier Must Be Stricken From The SAC Because The Unauthorized Addition of a New Named Plaintiff Violates Rule 15(a) and Exceeds the Scope of the Court's Prior Order. ............................................ 12

    C.    If the Court Does Not Strike Thier, the Court Should Stay the Sex Discrimination Claim Based on the First to File Rule Given the Strifling Case. ...................................................................................... 14

    D.    Plaintiff Thier Fails to State a Claim for Discrimination on the Basis of Sex. .............................................................................................. 16

        1.    Thier Fails to State a Plausible Claim for Disparate Treatment Discrimination................................................................ 16

        2.    The SAC Is Insufficient to Support a Plausible Disparate Impact Claim........................................................................ 18

    E.    Because Neither Plaintiff Was Laid Off in the RIF, They Lack Standing to State a Claim Related to the Allegedly Discriminatory RIF............ 20

    F.    Plaintiffs' Putative Class Action Claims Should Be Stricken............... 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case no. 3:22-cv-07226-AMO

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

    1.    Plaintiffs Fail to Plead Facts That Plausibly Suggest That They Are Similarly Situated to Every Disabled or Female Employee at

4

           Twitter. ..................................................................................................... 21

5

    2.    Plaintiffs' Putative Class Action Claims Should be Stricken Because No Ascertainable Class Has Been Pled. ..................................... 23

6

    3.    Plaintiffs' Class Action Claims Should be Stricken Because Plaintiffs' Allegations are Not Common or Typical of the Putative

7

           Class. ....................................................................................................... 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case no. 3:22-cv-07226-AMO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aikins v. St. Helena Hosp.*,
No. C 93-3933 FMS, 1994 WL 794759 (N.D. Cal. Apr. 4, 1994) ......................................... 13

5

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991)......................................................................................... 15, 16

6

7

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*,
770 F.2d 1401 (9th Cir. 1985)......................................................................................... 9, 19

8

9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................. 7, 8, 23

10

*Baker v. City of San Diego*,
463 F. Supp. 3d 1091 (S.D. Cal. 2020) ............................................................................... 12

11

12

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)................................................................................................. 7

13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................. 7, 21, 23

14

15

*Brooks v. City of San Mateo*,
229 F.3d 917 (9th Cir. 2000)............................................................................................... 21

16

*Bush v. Vaco Tech. Servs., LLC*,
No. 17-CV-05605-BLF, 2018 WL 2047807 (N.D. Cal. May 2, 2018) ........................... 23, 24

17

18

*Bush v. Vaco Tech. Servs., LLC*,
No. 17-CV-05605-BLF, 2019 WL 3290654 (N.D. Cal. July 22, 2019) ............................... 24

19

20

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
611 F.2d 738 (9th Cir. 1979)............................................................................................... 15

21

*Daniel F. v. Blue Shield of California*,
305 F.R.D. 115 (N.D. Cal.2014) ......................................................................................... 25

22

23

*Dist. Council 37 Health & Sec. Plan v. McKesson*,
No. Case No. C06-00718 SBA, 2006 U.S. Dist. LEXIS 30584 (N.D. Cal. May
11, 2006) ......................................................................................................................... 16

24

25

*EEOC v. Bloomberg L.P.*,
778 F. Supp. 2d 458 (S.D.N.Y. 2011) ........................................................................... 19, 21

26

27

*Enoh v. Hewlett Packard Enter. Co.*,
2018 WL 3377547 (N.D. Cal. July 11, 2018)................................................................. 12, 20

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *overruled on other grounds*, 510 U.S. 517
   (1994) ..................................................................................................................... 8

5

6

*Freyd v. University of Oregon*,
   990 F.3d 1211 (9th Cir. 2021)............................................................................... 11

7

8

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*,
   694 F.2d 531 (9th Cir. 1982)........................................................................... 18, 19

9

*Gray v. Golden Gate Nat. Recreational Area*,
   279 F.R.D. 501 (N.D. Cal. 2011) .................................................................... 24, 26

10

11

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ................................................................................................ 8

12

13

*Hovsepian v. Apple, Inc.*,
   2009 WL 5069144 (N.D. Ca. Dec. 17, 2009) ....................................................... 23

14

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003)................................................................................. 7

15

16

*Int'l Bhd. of Teamsters v. U.S.*,
   431 U.S. 324 (1977)......................................................................................... 11, 19

17

18

*Jameson Beach Prop. Owners Ass'n v. United States*,
   No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253 (E.D. Cal. Sept. 29, 2014)..... 13

19

*Jones v. City of Los Angeles*,
   No. 220CV11502VAPJCX, 2021 WL 6496750 (C.D. Cal. Oct. 5, 2021) ............. 13

20

21

*Jones v. Lewis*,
   2020 WL 6149693 (N.D. Cal. Oct. 20, 2020)....................................................... 19

22

*Jue v. Costco Wholesale Corp.*,
   No. C 10–00033–WHA, 2010 WL 889284 (N.D. Cal. Mar. 11, 2010)................. 23

23

24

*Jumaane v. City of Los Angeles*,
   241 Cal. App. 4th 1390 (2015)............................................................................... 11

25

26

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
   787 F.3d 1237 (9th Cir. 2015)............................................................................... 15

27

*LeDuc v. Kentucky Central Life Ins. Co.*,
   814 F. Supp. 820 (N.D. Cal. 1992) ......................................................................... 8

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Libby v. Bank of Am. N.A.*,
No. 215CV04930SVWFFM, 2016 WL 8849020 (C.D. Cal. Mar. 7, 2016)........................ 13

4

5

*Liu v. Uber Technologies Inc.*,
551 F.Supp.3d 988 (N.D. Cal. 2021) ....................................................................... 11

6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................................................. 22

7

8

*Mahler v. Jud. Council of Cal.*,
67 Cal. App. 5th 82 (2021)............................................................................... 11, 12

9

10

*McMillan v. Cnty. of Shasta*,
No. 220CV00564JAMJDP, 2021 WL 4993042 (E.D. Cal. Oct. 27, 2021),
reconsideration denied, No. 220CV00564JAMJDP, 2022 WL 615360 (E.D.
Cal. Mar. 2, 2022) ................................................................................................ 13

11

12

*Merrick v. Farmers Ins. Grp.*,
892 F.2d 1434 (9th Cir. 1990)................................................................................ 10

13

14

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
436 F. Supp. 2d 1095 (C.D. Cal. 2006)...................................................................... 8

15

16

*Nesbit v. Pepsico, Inc.*,
994 F.2d 703 (9th Cir. 1993).................................................................................. 10

17

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982).................................................................................... 15

18

19

*Peak v. Green Tree Fin. Serv. Corp.*,
2000 WL 973685 (N.D. Cal. July 7, 2000) .............................................................. 16

20

21

*Penn. State Police v. Suders*,
542 U.S. 129 (2004)............................................................................................. 21

22

*Personnel Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979), *aff'd*, 678 F.3d 1075 (9th Cir. 2012) ........................................ 8

23

24

*Poland v. Chertoff*,
494 F.3d 1174 (9th Cir. 2007)................................................................................ 21

25

26

*Pottenger v. Potlach Corp.*,
329 F.3d 740 (9th Cir. 2003).................................................................................. 22

27

28

*Raiser v. City of Los Angeles*,
No. CV 13-2925 RGK RZ, 2014 WL 794786 (C.D. Cal. Feb. 26, 2014) ...................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Sieney-Vinstein v. A.H. Robins, Co.*,
    697 F.2d 880 (9th Cir. 1983) ................................................................................................. 8

4

*Sokol v. New United Mfg., Inc.*,
    No. C 97-4211-SI, 1999 WL 1136683 (N.D. Cal. Sept. 20, 1999) ................................. 26, 27

5

6

*Spencer v. Beavex, Inc.*,
    No. 05–CV–1501WQH, 2006 WL 6500597 (S.D. Cal. Dec. 15, 2006) ................................ 25

7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................................... 22

8

9

*Stearns v. Select Comfort Retail Corp.*,
    763 F.Supp.2d 1128 (N.D. Cal. 2010) ................................................................................ 25

10

*Stockwell v. City & Cty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .............................................................................................. 8

11

12

*Stout v. Potter*,
    276 F.3d 1118 (9th Cir. 2002) ........................................................................................ 20, 21

13

14

*Strifling, et al. v. Twitter, Inc.*,
    Case No. 22-cv-07739-JST (N.D. Cal. May 8,2023) ................................................... *passim*

15

16

*Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*,
    576 U.S. 519 (2015) .......................................................................................................... 12

17

18

*Trazo v. Nestle USA, Inc.*,
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ....................................................................... 23

19

20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................................... 26

21

22

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .............................................................................................. 8

23

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................................... 22

24

25

*Watson v. Forth Worth Bank & Tr.*,
    487 U.S. 977 (1988) ............................................................................................................ 8

26

*Weinstein v. Metlife Inc.*,
    No. C 06-04444 SI, 2006 WL 3201045 (N.D. Cal. Nov. 6, 2006) ........................................ 16

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Wood v. City of San Diego*,
    2010 WL 2382335 (S.D. Cal. June 10, 2010) .......................................................................... 8

5

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) ......................................................................................... 9, 19

6

7

*Zeman v. Twitter, Inc., et al.*,
    Case No. 23-cv-01786-SI .................................................................................................. 6, 7

8

9

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    2018 WL 6981842 (C.D. Cal. June 1, 2018) ...................................................................... 15

**Court Rules**

10

11

Federal Rule of Civil Procedure 15(a)(1) ................................................................................... 12

12

Federal Rule of Civil Procedure 15(a)(2) ................................................................................... 12

13

Federal Rules of Civil Procedure 23(a) and 23(b) ..................................................................... 23

14

Rule 12(b)(6) ......................................................................................................................... 7, 19

15

Rule 12(f) .............................................................................................................................. 8, 23

16

Rule 15(a) .................................................................................................................. 12, 13, 14, 15

17

Rule 23(a)(2) ............................................................................................................................... 26

18

Rule 23(a)(3) ............................................................................................................................... 26

19

Rules 23(c)(1)(A) and 23(d)(1)(D) ............................................................................................ 23

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

1

## I.    INTRODUCTION

Plaintiffs Dmitry Borodaenko and Hana Thier are former Twitter employees. Borodaenko was terminated on November 15, 2022, for misconduct. Thier voluntarily resigned when she chose not to click "Yes" in response to an email requesting that employees confirm their commitment to work for Twitter 2.0. Despite admitting that they were not laid off by Twitter, Plaintiffs seek to represent, on a class basis, an unascertainable and indeterminate number of Twitter employees who, Plaintiffs contend, were "constructively" terminated because they "felt" forced to resign, *or* were "disabled", *or* were (unlike either Plaintiff) laid off by Twitter *or* were subject to Twitter's return-to-office directive. Not surprisingly, the Second Amended Complaint suffers from a slew of fatal defects that merit dismissal.

Plaintiffs' claims for disability discrimination in violation of the ADA and FEHA were previously dismissed by the Court because Plaintiffs failed to allege facts to plausibly state a claim for relief under a theory of either disparate treatment or disparate impact disability discrimination. These same defects remain in the Second Amended Complaint ("SAC"). As evidenced by the redlined copy of the SAC attached as Exhibit 1 to the Declaration of Eric Meckley, Plaintiffs made very few substantive/material changes to their disability claims, let alone add sufficient plausible factual allegations necessary to survive dismissal.[1] For the same reasons identified in this Court's May 5, 2023 Order dismissing the First Amended Complaint, the disability discrimination claims once again fail to meet the *Twombly/Iqbal* requirements and should be dismissed.

Plaintiffs' counsel only added Thier as a plaintiff along with her alleged sex discrimination claim on May 26, 2023, with the filing of the SAC. Plaintiffs' counsel did so without the consent of the Court or counsel for Twitter, in violation of Rule 15(a) and contrary to the permissible scope of amendment allowed by the Court's May 5, 2023 Order granting leave to amend. The Court's Order was limited to providing *Borodaenko* leave to amend his deficient *disability discrimination* claims and cannot reasonably be construed as authorizing the addition of a *new* named plaintiff with a *new* putative class sex discrimination claim that was absent from the First Amended

---

[1] Pursuant to the "Standing Order for Civil Cases Before District Judge Araceli Martinez-Olguin," and because Plaintiffs failed to comply with this Order, Twitter is submitting a redlined version of the SAC showing the changes from the First Amended Complaint.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1    Complaint.  The Court should strike Plaintiff Thier and her sex discrimination claim.

2        If the Court does not strike Thier, then the Court should stay her sex discrimination claim

3    given the previously filed and currently pending sex discrimination putative class action entitled

4    *Strifling, et al. v. Twitter, Inc.*, Case No. 22-cv-07739-JST (N.D. Cal.) ("*Strifling*").  *Strifling* was

5    filed on December 7, 2022, nearly six months before the SAC was filed and thus well before

6    Plaintiff attempted to introduce a claim for alleged sex discrimination into this case. Judge Tigar

7    already has invested significant judicial resources in analyzing the putative class sex discrimination

8    claim in *Strifling* and continues to manage that action. The sex discrimination putative class claim

9    in the SAC is entirely identical to the claim in *Strifling*.  Also, as the chronology of events makes

10   undeniably clear, Plaintiffs' counsel is brazenly "judge shopping" (*i.e.*, Judge Gilliam reassigned

11   this case to Your Honor; Plaintiff Borodaenko only then attempted to have *Strifling* related to this

12   case, which the Court denied; Plaintiff then filed the SAC improperly adding the sex discrimination

13   claim; and Plaintiff then filed a Motion to Consolidate *Strifling* and this case before Your Honor).

14   Judicial economy and preservation of judicial integrity justify, at a minimum, the Court staying the

15   sex discrimination claim in this case based on the "first-to-file" rule, as the sex discrimination claim

16   in *Strifling* was filed 6 months earlier and has consumed the resources and attention of Judge Tigar.

17       To the extent the Court allows Thier's sex discrimination claim to remain active, it suffers

18   from the same defects as the disability discrimination claim, as Thier fails to allege facts that

19   plausibly state a claim for relief under a theory of either disparate treatment or disparate impact

20   discrimination.  As a result, in the alternative to the above-requested relief, the Court should dismiss

21   Thier's sex discrimination claim under Rule 12(b)(6).

22       Plaintiffs' putative class claims should be stricken.  The SAC does not contain any facts

23   sufficient to plausibly suggest that Plaintiffs are similarly situated to other purportedly "disabled"

24   or female employees.  Their allegations make clear that their claims are unique and specific to their

25   individual experiences.  The putative class claims also fail because the SAC does not allege any

26   ascertainable class definition.  Plaintiffs seek to represent employees who are disabled, *or* female,

27   and "whose jobs have been affected by the company's layoffs, terminations, and heightened

28   demands on the workforce."  Determining who these employees are, for example, whether an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1 employee is "disabled" or whether they were "affected" by unspecified "heightened demands" on

2 workers, would require hundreds if not thousands of individualized assessments to determine

3 membership in such amorphous and unascertainable classes.  These claims require fact-specific,

4 highly individualized inquiries (*e.g.*, whether an employee is "disabled", whether they "felt" forced

5 to resign, etc.) that render them unsuitable for class litigation.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Summary of Plaintiffs' Claims

#### 1.     Plaintiff Dmitry Borodaenko

9 Borodaenko is a former Engineering Manager who worked at Twitter from June 2021 until

10 November 2022.  SAC, ¶ 13.  Borodaenko alleges that he is disabled because he is in remission

11 from cancer.  *Id.*, ¶¶ 36 and 38.  Borodaenko alleges that he is vulnerable to Covid-19 and cannot

12 work from an office and worked remotely throughout the duration of his employment. *Id.*, ¶ 35, 36

13 and 38.  Twitter fired him for misconduct on November 15, 2022.  *Id.*, ¶ 41.

14 Borodaenko alleges that following Musk's acquisition of Twitter in October 2022, the

15 company's culture became more demanding.  *Id.*, ¶¶ 28, 43.  Borodaenko alleges that, post-

16 acquisition, his workload "vastly" increased (though he fails to allege any specific facts regarding

17 how his workload increased) and his direct reports increased from approximately 10 to 16.  *Id.*, ¶

18 46.  He makes the conclusory allegation that Twitter's more demanding work environment "was

19 highly discriminatory against disabled employees."  *Id.*, ¶ 48.  He alleges that on November 9,

20 2022, Musk notified employees that, with limited exceptions, they were expected to return to

21 Twitter's offices immediately. *Id.*, ¶¶ 29, 31.  He alleges Musk's statement contradicted statements

22 made by Twitter's prior management, who told employees they would be permitted to work

23 remotely for some period following the acquisition.  *Id.*, ¶ 27.  Borodaenko alleges that following

24 Musk's announcement, he informed his manager that he was "definitely not working from [the]

25 office until the pandemic is over."  *Id.*, ¶ 38.  Borodaenko alleges that shortly thereafter, he was

26 fired on November 15, 2022.  *Id.*, ¶¶ 40-41.  Borodaenko makes the conclusory allegation that

27 "Twitter's new requirement that employees report to physical offices, as well as rampant

28 terminations and layoffs, have disparately affected disabled employees."  *Id.*, ¶ 34.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

2.    <u>Plaintiff Hana Thier's Claims.</u>

Thier is a former Senior Software Engineer that worked at Twitter from May 2021 until November 2022. *Id.*, ¶ 14. Thier alleges that following Musk's acquisition of Twitter, the culture shifted, as "Musk [] made clear that working for Twitter would demand extraordinary effort and long work hours." *Id.*, ¶ 43. Thier alleges that Musk sent an "ultimatum" to all remaining Twitter employees on November 16, 2022 (one day after Borodaenko was fired) asking them to commit to "working long hours at high intensity." *Id.*, ¶ 47. Any employee that declined to do so would receive three months of severance. *Id.* Thier alleges that she suffers from depression and requires "a stable work environment with clear and reasonable expectations." *Id.*, ¶¶ 51-52. She alleges that she "felt she could no longer work at Twitter, given her disability" and "she did not click yes on the ultimatum link that Musk sent employees on November 16, 2022." *Id.*, ¶ 52. Thier makes the conclusory allegation that Musk's "ultimatum" "was highly discriminatory against disabled employees," "did not allow for employees who require reasonable accommodation for their disabilities," and "deterred disabled employees from feeling they could continue to work at the company." *Id.*, ¶¶ 48-50. Thier alleges that Twitter's layoffs and, separately, the November 16th "ultimatum" disproportionately affected female employees. *Id.*, ¶¶ 54, 56. Thier alleges that "[w]omen were significantly statistically more likely to be chosen for layoff on November 4, 2022 than men" and that "approximately 36% of remaining women left the company as a result of [Twitter's] ultimatum, while approximately 28% of men did." *Id.*, ¶¶ 55-56.

**B.**    **Relevant Procedural History**

   1.    <u>Borodaenko files a First Amended Complaint; The Court Grants Twitter's Motion to Dismiss.</u>

On November 16, 2022, *one day after being fired*, Borodaenko filed a complaint alleging putative class claims for discrimination in violation of the ADA, and FEHA, and the Declaratory Judgment Act. ECF No. 1. On December 7, 2022, Borodaenko filed a First Amended Complaint ("FAC") adding Abhijit Mehta as a named plaintiff and alleging additional putative class claims for violation of the FMLA and CFRA. ECF No. 8. On December 21, 2022, Twitter filed a motion

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

to dismiss and/or strike portions of the FAC.[2]  ECF No. 15.  On May 5, 2023, the Court granted Twitter's motion.  ECF No. 35.  As to Borodaenko's disparate treatment claim, the Court stated that it "agree[d] with Defendant that Plaintiff has not adequately alleged that Twitter terminated Plaintiff—or any other member of the putative class—because of a disability" because "the FAC states that Twitter's policies … applied to all employees."  *Id.*, p. 4:12-24.  As to Borodaenko's termination, the Court stated that, even accepting all allegations as true, "they suggest that Plaintiff and other employees were terminated because they refused to return to the office, not because of a disability."  *Id.*, p. 5:20-22.  The Court held that Borodaenko failed to explain "how these allegations give rise to a reasonable inference that [Twitter] had a discriminatory motive or intent in issuing its policies or in terminating employees."  *Id.*, p. 5:22-6:1.  The Court ruled that Borodaenko's disparate impact claims were equally defective, as "Plaintiff has failed to plausibly allege that a disparity actually exists here."  *Id.*, p. 6:12.  The Court expressly stated that it could not draw an inference of disparity from Plaintiff's own circumstances.  *Id.*, p. 6:17-19.  The Court held that "[i]t is not enough for Plaintiff to assert that 'it is reasonable to infer' that Twitter's new policies" disparately impacted disabled employees because "Plaintiff must provide factual support for this conclusion."  *Id.*, p. 6:19-24.  The Court granted *Borodaenko* leave to file a SAC to correct these defects in his disability discrimination claims.  *Id.*, p. 8:22.

2.  <u>Plaintiffs Move to Relate This Action with Strifling and Zeman.</u>

On May 10, 2023, this case was reassigned from Honorable Haywood Gilliam, Jr. to Honorable Araceli Martinez-Olguin.  ECF No. 36.  Less than one week later, on May 16, 2023, the Plaintiffs' counsel moved to relate *Strifling, et al. v. Twitter, Inc.*, Case No. 22-cv-07739-JST (N.D. Cal.) ("*Strifling*") and *Zeman v. Twitter, Inc., et al.*, Case No. 23-cv-01786-SI ("*Zeman*") with the present action.[3]  ECF No. 38.  Prior to filing that motion, and in the many months those cases had

---

[2] Twitter also filed a motion to compel Abhijit Mehta to arbitrate his claims on an individual basis, pursuant to the terms of his Dispute Resolution Agreement with Twitter.  ECF No. 14.
[3] *Strifling* alleges a sex discrimination putative class action on behalf of Twitter's female employees.  RFJN, Ex. 6.  Twitter successfully moved to dismiss the *Strifling* complaint with leave to amend.  RFJN, Ex. 7.  On May 26, 2023, the *Strifling* plaintiffs filed an amended complaint.  Twitter has filed a motion to strike the amended complaint in *Strifling*.  *Zeman* alleges an age-discrimination putative collective and class action on behalf of certain former employees of Twitter who were age 50 or older at the time of their termination.  RFJN, Ex. 4.  The *Zeman*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

been pending, neither the *Strifling* plaintiffs nor the *Zeman* plaintiff ever represented to the Court that the cases were related to each other or to this action. *See* Request for Judicial Notice ("RFJN"), Exs. 2, 3, and 4 (Civil Case Cover Sheets in *Strifling* and *Zeman*). Twitter objected to Plaintiffs' untimely motion to relate *Strifling*, *Zeman*, and *Borodaenko* primarily on two grounds: (1) the filing constituted impermissible judge-shopping; and (2) *Strifling* and *Zeman* do not satisfy the standard for "related cases" with this action. ECF No. 39. *Strifling* and *Zeman* do not concern substantially the same parties as this action: Borodaenko is a 44-year old man and not a putative class member in *Strifling* or *Zeman*. *Id.*, p. 2:15-27. Neither the *Strifling* plaintiffs nor the *Zeman* plaintiff allege they are disabled; thus they are not putative class members in this action. *Id.* *Strifling* and *Zeman* do not concern substantially the same transactions or events as this action: *Strifling* and *Zeman* both challenge Twitter's November 4, 2022 RIF/lay off, while the FAC in this action challenged Twitter's "Post-RIF Policies" (*i.e.*, return to the office and demanding work culture). On May 23, 2023, this Court ruled that neither *Strifling* nor *Zeman* were related to this action. ECF No. 41.

3.   Plaintiffs Here and in *Strifling* File Amended Complaints Adding New Plaintiffs and New Claims.

On May 26, 2023, three days after this Court ruled the cases were not related, Borodaenko filed the SAC, adding Thier as a new named plaintiff, and adding the new sex discrimination claim already alleged and pending in *Strifling*. ECF No. 42. Borodaenko's counsel never previously requested, or represented that they intended, to add a sex discrimination claim to this action.[4]

O May 26, 2023, the *Strifling* plaintiffs also filed an amended complaint adding a new plaintiff and a new claim for age discrimination. Soon thereafter, on June 6, 2023, Plaintiffs filed a motion to consolidate *Strifling* and *Zeman* with this action (*see* ECF No. 46) in an obvious attempt to circumvent this Court's denial of their motion to relate and once again engage in judge-shopping.[5]

---

complaint was filed on April 13, 2023, and Twitter filed a motion to dismiss the *Zeman* complaint that is currently pending.

[4] *See, e.g.,* ECF No. 21, p. 1, fn. 1 (while Borodaenko *did* request leave to substitute in a new plaintiff who could prosecute Mehta's FMLA and CFRA claims, *no request* was made for leave to add a sex discrimination claim).

[5] Defendants intend to oppose Plaintiffs' motion to consolidate.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1    **III.   LEGAL STANDARD**

2         **A.      Legal Standard for Motion to Dismiss Under Rule 12(b)(6).**

3         A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

4    the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Dismissal under

5    Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of

6    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

7    F.2d 696, 699 (9th Cir. 1988).  "To survive a motion to dismiss, a complaint must contain sufficient

8    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

9    *Iqbal*, 556 U.S. 662, 678 (2009) (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

10   (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

11   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

12   (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action,

13   supported by mere conclusory statements, do not suffice."  *Id.*  The Court need not accept as true

14   "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox*

15   *Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quotations and citation omitted).

16        **B.      Legal Standard for Motion to Strike Under Rule 12(f)**

17        Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent,

18   or scandalous matter."  Fed. R. Civ. P. 12 (f).  Under Rule 12(f), a defendant may move to strike

19   language seeking relief that is not recoverable as a matter of law.  *Estate of Migliaccio v. Midland*

20   *Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006).  The function of a motion to strike

21   is to avoid the expenditure of time and money that might arise from litigating spurious issues by

22   dispensing with those issues prior to trial.  *Sieney-Vinstein v. A.H. Robins, Co.*, 697 F.2d 880, 885

23   (9th Cir. 1983); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled*

24   *on other grounds*, 510 U.S. 517 (1994).  A motion to strike may be granted where "it is clear that

25   the matter to be stricken could have no possible bearing on the subject matter of the litigation."

26   *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

27   / / /

28   / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1  **IV.   ARGUMENT**

2  **A.   <u>Plaintiffs Fail to State a Claim for Discrimination Under the ADA or FEHA.</u>**

3       1.   <u>The SAC Fails to Plead Sufficient Facts to Support a Plausible Disparate
           Treatment Claim and Does Not Correct the Defects Identified in the Court's
4          May 5, 2023 Order.</u>

5       To state a disparate treatment claim, a plaintiff must allege that "the defendant had a

6  discriminatory intent or motive" in taking some employment-related action against them.  *Watson*

7  *v. Forth Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988).  Indeed, "the crux of a disparate treatment

8  case is the subjective *motivation* for an adverse employment decision." *Stockwell v. City & Cty. of*

9  *San Francisco*, 749 F.3d 1107, 1115, n.4 (9th Cir. 2014) (emphasis in original); *see also Hazen*

10 *Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (Liability in a disparate-treatment case "depends

11 on whether the protected trait … actually motivated the employer's decision"); *see also Wood v.*

12 *City of San Diego*, 2010 WL 2382335, at *6 (S.D. Cal. June 10, 2010) (a plaintiff "must establish

13 that the defendant implemented the policy 'because of, not merely in spite of,' its adverse effects

14 on the protected group") (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279

15 (1979), aff'd, 678 F.3d 1075 (9th Cir. 2012)).  Thus, "[i]t is insufficient for a plaintiff alleging

16 discrimination under the disparate treatment theory to show the employer was merely aware of the

17 adverse consequences the policy would have on a protected group."  *Wood v. City of San Diego,*

18 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v.*

19 *Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)).

20      The Court previously dismissed the FAC because Borodaenko failed to allege facts showing

21 that Twitter acted with the requisite discriminatory intent.  *See* ECF No. 35, p. 4:21-22 ("The Court

22 agrees with Defendant that Plaintiff has not adequately alleged that Twitter terminated Plaintiff—

23 or any other member of the putative class—because of a disability").  This same defect remains in

24 the SAC, which is almost identical to the FAC.  In the SAC, Plaintiffs acknowledge—as they

25 must—that Twitter's Post-RIF Policies did not impact only Twitter's allegedly "disabled"

26 employees, but *all* employees.  *See* SAC, ¶ 29 ("On the evening of November 9, 2022, Musk

27 announced that all employees were expected to begin reporting to Twitter offices immediately");

28 *Id.*, ¶ 33 ("Musk also immediately began a mass layoff that has affected well more than half of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

Twitter's workforce"); *Id.*, ¶ 47 ("On November 16, 2022, Musk sent the following email to remaining Twitter employees" stating that "working long hours at high intensity" was the new expectation). Yet Plaintiffs conclude that "Twitter's new requirement that employees report to physical offices, as well as rampant terminations and layoffs, have disparately affected disabled employees, including Plaintiffs." SAC, ¶ 34. Plaintiffs fail to allege any facts in support of this assertion. Rather, the SAC contains a single allegation mischaracterizing several public statements that Musk made that are purportedly "openly hostile towards disabled employees and insinuated that they were lazy." *Id.*, ¶ 32. However, Judge Tigar in *Strifling* ruled that public statements by Musk are not anecdotal evidence of discriminatory intent. *See* RFJN, Ex. 7, p. 10:7-8 ("Plaintiffs' inclusion of 'several of Musk's public statements' … do[es] not cure this deficiency").[6] Here, Musk's statements are not directly tied to the RIF or the Post-RIF Policies, as all of the statements cited by Plaintiffs post-date the RIF and Post-RIF Policy decisions, in some cases by months.[7] *Id.*, p. 10:23-25 ("Here, Musk's statements that Plaintiffs offer to demonstrate animus toward women

---

[6] Plaintiffs "cherry pick" and mischaracterize certain of Musk's tweets without any context. For example, Plaintiffs allege that Musk "tweeted that a disabled former Twitter employee used his disability as an excuse not to work." SAC, ¶ 32. In March 2023 -- four months *after* the RIF and Post-RIF Policies were implemented -- Musk tweeted that a former employee "did no actual work, claimed as his excuse that he had a disability that prevented him from typing, yet was simultaneously tweeting up a storm." RFJN, Ex. 9. After learning that the former employee suffered from muscular dystrophy, Musk publicly apologized to the employee "for [his] misunderstanding of [the employee's] situation." *Id.* Plaintiffs conveniently omit Musk's apology from the SAC. Similarly, Musk's comment in May 2023 -- six months after the RIF and Post-RIF Policies were implemented -- that working from home was "morally wrong" was not in the context of those who work from home due to a disability. Rather, Musk criticized the notion that only certain employees and not others get to work from home. *See* RFJN, Ex. 10 ("I kind of think that the whole notion of work from home is a bit like the you know, the fake Marie Antoinette quote, let them eat cake…. You're gonna make the people who make your food that gets delivered that they can't work from home, that, you know, the people like they can't fix your house. They can't work from home. But you can. Does that seem morally right. That's messed up… It's messed up to assume that yes they have to go to work but you don't… I think it's morally wrong").

[7] Plaintiffs cite a Musk November 15, 2022 tweet that stated, "[a] tragic case of adult onset Tourette's" in response to an employee stating that she was terminated for "shitposting" and telling Musk to "kiss [her] ass." RFJN, Ex. 11. Not only is this tweet not directly tied to the RIF or the Post-RIF Policies, but it is insufficient to establish the requisite discriminatory intent, as "'stray' remarks are insufficient to establish discrimination." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438-39 (9th Cir. 1990); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that a comment "uttered in an ambivalent manner" and "not tied directly to" the plaintiff's termination was "at best weak circumstantial evidence of discriminatory animus"); RFJN, Ex. 7, p. 14-15 ("Isolated remarks, unrelated to the discriminatory employment decision, are generally insufficient to establish discriminatory intent") (citations omitted).

… were not tied directly to the RIF, as Musk made them prior to his acquisition of Twitter"). As in *Strifling*, "Plaintiffs do not allege that Musk made the layoff decisions, but rather that a group of managers did so under his supervision." *Id.*, p. 10:25-26; *see also id.*, p. 9:15-17 ("Plaintiffs' remaining allegations, namely their statistics and Musk's statements, fail to support that Twitter knew that granting discretion to the managers would result in that discretion being used in a discriminatory manner"). Plaintiffs' disparate treatment claim still suffers from the same defects that resulted in the dismissal of the FAC and the Court should again dismiss that claim in the SAC.

a.    <u>Plaintiffs Fail to Allege That Twitter Engaged in a Pattern or Practice of Discrimination.</u>

Plaintiffs' disparate treatment claim must also fail because Plaintiffs fail to allege facts demonstrating that Twitter engaged in a "pattern or practice" of discrimination. A plaintiff claiming that an employer engaged in a "pattern or practice" of discrimination must show "more than mere occurrence of isolated, accidental or sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977). Instead, a plaintiff must show that discrimination "was the company's standard operating procedure" meaning "the regular rather than the unusual practice." *Id.* Here, Plaintiffs fail to make such a showing in the SAC. Setting aside that neither Borodaenko nor Thier have standing to challenge the RIF (as neither was terminated as part of a RIF), the RIF and the Post-RIF Policies that are the subject of the SAC "are two discrete acts insufficient to support the allegation that discriminatory conduct was 'a routine and regular part' of Twitter's workplace." *See* RFJN, Ex. 7, p. 9:6-13 (citations omitted) (analyzing the same RIF and Post-RIF Policies). Accordingly, Plaintiffs' disparate treatment claim fails on this additional basis.

2.    <u>Plaintiffs Fail to Plead Facts Sufficient to Support a Plausible Disparate Impact Claim.</u>

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977). To allege a *prima facie* disparate impact claim, "a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Technologies*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

*Inc.*, 551 F.Supp.3d 988, 990 (N.D. Cal. 2021) (citing *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); see also *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021) (citing *Jumaane v. City of Los Angeles*, 241 Cal. App. 4th 1390, 1404-05 (2015)) (under FEHA, "a plaintiff must allege . . . usually through statistical disparities, that facially neutral employment practices adopted without a deliberately discriminatory motive nevertheless have significant adverse effects on protected groups that they are in operation . . . functionally equivalent to intentional discrimination"). A disparate impact claim carries a "robust causality requirement," which ensures an observed disparity "does not, without more, establish a prima facie case of disparate impact." *Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015).  To avoid dismissal, a complaint "must allege facts or statistical evidence demonstrating a causal connection between the challenged policy and a significant disparate impact on the allegedly protected group."  *Mahler*, 67 Cal. App. 5th at 114.

In its May 5, 2023 Order, the Court held that "Plaintiff [] failed to plausibly allege that a disparity actually exists here" because the FAC failed to allege "that such individuals have actually resigned or that they have done so at higher rates than their non-disabled colleagues."  *See* ECF No. 35, p. 6:12, 6:15-16.  The Court further held that Borodaenko's termination, alone, was insufficient to demonstrate that a significant disparity existed, as "the Court cannot draw an inference of disparity from a single data point." *Id.*, p. 6:17-19.

The SAC does not cure the defects identified in the Court's Order.  The SAC is devoid of any substantive facts or statistical data to satisfy the critical causation element.  Instead, and as in the FAC, Plaintiffs simply conclude that a disparity exists based on their singular alleged experiences.  *See* SAC ¶¶ 37-38, 40-41, 52-53.  But the Court already has found such speculative inferences to be insufficient. *See* ECF No. 35, p. 6:17-19; *see also Baker v. City of San Diego*, 463 F. Supp. 3d 1091, 1103 (S.D. Cal. 2020) (dismissing disparate impact claim for failure "to establish a robust causal connection between the statistical disparity and the City's policy"); *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (dismissing disparate impact claim because the complaint did not "allege facts to show that the challenged policy played a role in the decision to terminate or fail to promote or hire them"). The same defects that resulted

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1  in dismissal of the FAC remain in the SAC and require its dismissal as well.

2  **B.**   **Thier Must Be Stricken From The SAC Because The Unauthorized Addition**
3  **of a New Named Plaintiff Violates Rule 15(a) and Exceeds the Scope of the**
   **Court's Prior Order.**

4  Federal Rule of Civil Procedure, Rule 15(a)(1) permits a party to amend its pleading "once

5  as a matter of course" within 21 days after serving the pleading, or after a pleading or motion

6  responsive to it has been filed, whichever is earlier.  "In all other cases, a party may amend its

7  pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. Proc.

8  15(a)(2).  "[D]istrict courts often strike new claims, parties or factual allegations of an amended

9  complaint that are beyond the permissible scope of a court's prior order granting leave to amend."

10 *Jones v. City of Los Angeles*, No. 220CV11502VAPJCX, 2021 WL 6496750, at *4 (C.D. Cal. Oct.

11 5, 2021); *see also Aikins v. St. Helena Hosp.*, No. C 93-3933 FMS, 1994 WL 794759, at *2 (N.D.

12 Cal. Apr. 4, 1994) (dismissing plaintiff added through amendment where the amendment "directly

13 contravened Rule 15(a)" since the plaintiffs did not request leave to name a new plaintiff and the

14 Court's order could not "reasonably be construed as having granted plaintiffs such leave.")

15 "[W]here a prior court order granted limited leave to amend, District Courts in this circuit generally

16 strike new claims or parties contained in an amended complaint when the plaintiff did not seek

17 leave to amend."  *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-CV-01025-MCE-

18 AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014); *see McMillan v. Cnty. of Shasta*, No.

19 220CV00564JAMJDP, 2021 WL 4993042, at *4 (E.D. Cal. Oct. 27, 2021), reconsideration denied,

20 No. 220CV00564JAMJDP, 2022 WL 615360 (E.D. Cal. Mar. 2, 2022) ("[T]he Court's prior order

21 did not grant Plaintiff leave to add new claims. […] Nor did Plaintiff seek leave to do so. Plaintiff

22 is therefore barred from adding these new claims."); *Raiser v. City of Los Angeles*, No. CV 13-2925

23 RGK RZ, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) ("When a district court grants leave to

24 amend for a specified purpose, it does not thereafter abuse its discretion by dismissing any portions

25 of the amended complaint that were not permitted. […] The rule applies even if the court did not

26 expressly bar amendments other than the one(s) it did allow."); *see also Libby v. Bank of Am. N.A.*,

27 No. 215CV04930SVWFFM, 2016 WL 8849020, at *2 (C.D. Cal. Mar. 7, 2016) ("The Court did

28 not give Plaintiff leave to assert new claims in her amended complaint and the Court dismisses this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1   claim for failure to comply with the Court's prior order.").  Courts look to the specific language of

2   the prior order granting leave to amend to determine whether leave to amend was granted with or

3   without limitation.  *See Jameson Beach Prop. Owners Ass'n*, 2014 WL 4925253, at *3.

4   Here, the Court's prior Order was not without limitation; rather, the Court's directive was

5   clear:  *Borodaenko* was permitted leave to file an amended complaint to *address the deficiencies*

6   that the Court identified regarding *his disability discrimination claims*. *See* ECF No. 35.  A review

7   of this Order and the Parties' briefing on Twitter's Motion to Dismiss make clear that leave to

8   amend was limited.  At its outset, the Order granted Twitter's motion to compel arbitration and

9   stayed the action as to Mehta's claims.  The Court then expressly noted that the remainder of its

10  analysis focused on Twitter's motion to dismiss Borodaenko's disability claims.  ECF No. 35, p.

11  2:8-9 ("The Court therefore limits its analysis below to the motion to dismiss Plaintiff

12  Borodaenko's claims."). The Court noted that "[a]ny references to 'Plaintiff' refer to Mr.

13  Borodaenko unless otherwise specified." *Id.* at p. 2:9-10. The Court went on to analyze

14  Borodaenko's disability discrimination claims, finding that Plaintiff had not adequately alleged

15  either a disparate treatment or a disparate impact claim under the ADA and FEHA.  *Id.* at p. 4:8-

16  6:25.  The Court also granted the motion to dismiss the FMLA and CFRA claims to the extent

17  Borodaenko asserted them himself, noting that Mehta's FMLA and CFRA claims would remain

18  stayed pending arbitration.  *Id.* at p. 7:8-11.  In the conclusion, the Court stated the following: "The

19  Court [] GRANTS the motion to dismiss as to Plaintiff Borodaenko's claims.  […]  ***Plaintiff*** may

20  file an amended complaint within 21 days of the date of this order." (emphasis added).  *Id.* at p.

21  8:21-22.  The Court's use of the singular "Plaintiff" is a clear reference to Borodaenko.  *See id.* at

22  p. 2:9-10 ("Any references to 'Plaintiff' refer to Mr. Borodaenko unless otherwise specified.")

23  The Court's Order was limited to granting *Borodaenko* (not Mehta nor any other potential

24  new plaintiff) leave to amend to allow *Borodaenko* an opportunity to cure the defects identified

25  with his disability discrimination claims. Nowhere in the Order does the Court authorize the

26  addition of a wholly unrelated sex discrimination claim by a new plaintiff, and nothing in the Order

27  suggests free rein to do so.  Borodaenko never requested, and was never granted, leave to add Thier

28  as a named plaintiff, and doing so violated Rule 15(a).  *See* Fed. R. Civ. Pro. 15(a) ("[A] party may

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1   amend its pleading only with the opposing party's written consent or the court's leave").  While

2   Borodaenko stated in his Opposition to Twitter's Motion to Compel Arbitration and Motion to

3   Dismiss that he wished to substitute in a plaintiff to prosecute Mehta's FMLA and CFRA class

4   claims (since Mehta was compelled to arbitration), he never mentioned wanting to and never

5   requested leave to add a sex discrimination claim.[8]  For all the foregoing reasons, the Court should

6   strike Plaintiff Thier and the sex discrimination claim from the SAC.

### C.    If the Court Does Not Strike Thier, the Court Should Stay the Sex Discrimination Claim Based on the First to File Rule Given the *Strifling* Case.

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district" by, among other things, staying the duplicative action. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991) (staying later-filed case).  It is "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments," *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), and is especially suited for class actions.  *See, e.g., Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2018 WL 6981842, at *5 (C.D. Cal. June 1, 2018) (applying the first-to-file rule in a class action because such cases are "'frequently complex affairs which tax judicial resources,' and thus constitute 'the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith'").  The first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *see also Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d

---

[8] Borodaenko's counsel is clearly aware that the proper procedure for adding a new plaintiff and/or new claims is to formally request leave to amend, contingent upon either an agreement from opposing counsel or the Court's permission.  *See* Fed. R. Civ. Pro. 15(a).  As this Court is aware, Plaintiffs' counsel also represents the plaintiffs in the *Cornet* matter.  In *Cornet*, when Plaintiffs' counsel wished to file a second amended complaint that would add new named parties and claims, Plaintiffs' counsel filed a Motion for Leave to File a Second Amended Complaint with the court. *See* RFJN, Ex. 8.  Indeed, in their motion, Plaintiffs' counsel emphasized that "[i]mportantly ... Twitter will not be prejudiced by these amendments because the case is at an extremely early stage, and *the main factual allegations underlying the claims in this case will not change materially as a result of this amendment*." *Id.* (emphasis added).  Plaintiffs cannot circumvent the procedural requirements of Rule 15(a), particularly considering that the *new* plaintiff and the *new* claims that they are seeking to add dramatically alter the nature of Plaintiffs' operative complaint in this action.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1237, 1239-1240 (9th Cir. 2015) (when applying the first-to-file rule, the court's analysis "should be driven to maximize economy, consistency, and comity").  Courts applying the first-to-file rule look to three factors: (1) the chronology of the actions (i.e., which action was filed first); (2) the similarity of the parties; and (3) the similarity of the issues.  *Alltrade*, 946 F.2d at 625-26.

Here, all three factors are met.  First, *Strifling*, which was filed on December 7, 2022, was the first class action lawsuit to allege a claim for sex discrimination.  Although *Borodaenko* was filed on November 16, 2022, a mere 16 days before *Strifling*, neither the original complaint nor the FAC in *Borodaenko* pled a claim for sex discrimination. *See* ECF Nos. 1 and 8.  *Borodaenko* first pled a sex discrimination claim (to which Borodaenko himself is not even a party) on May 26, 2023, almost 6 months after *Strifling*.  In *Strifling,* Judge Tigar already has issued a lengthy and detailed order analyzing the sex discrimination putative class action claim.  It would waste judicial resources for this Court to spend time adjudicating a claim that has been pending for months and is actively being analyzed and managed by Judge Tigar.

Second, the new claim in *Borodaenko* involves the same parties as the *Strifling* complaint, as both lawsuits assert claims against Twitter on behalf of putative classes of "all similarly situated female Twitter employees across the United States whose jobs have been affected by the company's layoffs, terminations, and constructive discharges since Elon Musk acquired the company."  *See* ECF No. 42, ¶ 16; *see also* RFJN, Ex. 6 (*Strifling* Amended Complaint), ¶ 12 (materially identical class definition).  For purposes of the first-to-file rule, "the classes, and not the class representatives, are compared."  *Weinstein v. Metlife Inc.*, No. C 06-04444 SI, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006); *see also Dist. Council 37 Health & Sec. Plan v. McKesson*, No. Case No. C06-00718 SBA, 2006 U.S. Dist. LEXIS 30584, *2-3 (N.D. Cal. May 11, 2006) (finding the parties substantially similar because although the named plaintiffs in the two cases were different, they were members of classes which were defined similarly in the two actions); *Peak v. Green Tree Fin. Serv. Corp.*, 2000 WL 973685 at *2 (N.D. Cal. July 7, 2000)  (applying first-to-file rule where "[t]he proposed class in both cases is identically defined").

Third, Thier's sex discrimination claim is *identical* to the sex discrimination claim in

*Strifling*.  The SAC and the *Strifling* amended complaint contain most of the same allegations.[9]

Thus, the similarity of issues factor also counsels in favor of deferring to *Strifling*.  *Strifling* was

the first-filed class action that alleged a sex discrimination claim against Twitter.  As a result, if

this Court does not strike the addition of Thier and her improperly added sex discrimination claim,

it should stay such claim pursuant to the first-to-file rule.  To hold otherwise would be an

endorsement of Plaintiffs' gamesmanship and judge shopping.

### D.  Plaintiff Thier Fails to State a Claim for Discrimination on the Basis of Sex.

#### 1.  Thier Fails to State a Plausible Claim for Disparate Treatment Discrimination.

First, as described *supra*, the RIF and Post-RIF Policies are "two discrete acts insufficient

to support the allegation that discriminatory conduct was 'a routine and regular part' of Twitter's

workplace."  *See* RFJN, Ex. 7, p. 9:6-13 (citations omitted) (analyzing the same RIF and Post-RIF

Policies in *Strifling*).  Thier's sex discrimination disparate treatment claim fails on this basis.

Second, the SAC alleges that Twitter laid off thousands of men in the RIF and that hundreds

of men separated from Twitter as a result of the Post-RIF Policies.  SAC, ¶ 33 (alleging that

Twitter's RIF "affected well more than half of Twitter's workforce); *id.*, ¶ 56 (alleging 28% of male

employees subsequently separated from Twitter).  Because these alleged employment actions

affected a substantial number of male employees, Thier needs robust anecdotal allegations to

support a plausible inference of intentional discrimination.  *See Gay v. Waiters' & Dairy

Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 552 (9th Cir. 1982) ("[r]egardless of how

---

[9] *See, e.g.,* SAC, ¶ 11 ("The mass termination of employees at Twitter has also impacted female employees to a greater extent than male employees – and to a highly statistically significant degree. Elon Musk has made a number of publicly discriminatory remarks about females, so it is not surprising that the managers working under his direction laid off a higher proportion of female employees than male employees.  Musk also quickly implemented new unreasonable work demands and policies at Twitter.  Which were intended to and did have a disparate impact on women, forcing a greater proportion of women than men to leave the company") and RFJN, Ex. 6, ¶ 6 (materially the same); SAC, ¶ 57 ("The fact that more women than men were laid off and forced out of the company through constructive discharge since Musk's acquisition is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women.  Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership. As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter") and RFJN, Ex. 6, ¶ 50; SAC, ¶¶ 58-60 and RFJN, Ex. 6, ¶¶ 51-53.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

devastating or reliable the statistics may look, the issue remains in [disparate treatment] cases whether a particular isolated historical event was discriminatory . . . The question whether the facts proved are sufficient to permit a legal inference of discriminatory intent cannot properly be reduced into a mere battle of statistics.")  However, the SAC contains virtually no anecdotal allegations and does not allege any gender-based animus directed towards Thier or any other Twitter employee. Nor does the SAC identify the managers who made the RIF decisions, state the genders of those managers, or allege that any of those unidentified managers harbored any gender animus toward Thier or any other women.  *See* SAC, ¶ 11.  The SAC offers nothing but a few stray public statements from Musk that are not tied to the RIF, the Post-RIF Policies, or any other decision or policy at Twitter.  SAC, ¶¶ 58-60.  Judge Tiger already analyzed some of these same statements in his May 8, 2023 Order and found them insufficient to state a claim:

> Plaintiffs' remaining allegations, namely their statistics and Musk's statements, fail to support that Twitter knew that granting discretion to the managers would result in that discretion being used in a discriminatory manner.
> …
> Plaintiffs' inclusion of 'several of Musk's public statements belittling women and questioning their role in the workplace'… do not cure this deficiency…  Here, Musk's statements that Plaintiffs offer to demonstrate animus toward women… were not tied directly to the RIF, as Musk made them prior to his acquisition of Twitter. [] Further, Plaintiffs do not allege that Musk made the layoff decisions, but rather that a group of managers did so under his supervision.

RFJN, Ex. 7, p. 9:15-17 and p. 10:7-26.

Without substantial anecdotal allegations that plausibly suggest gender animus informed Twitter's decisions, Plaintiffs' pattern or practice claim fails because there is nothing to "bring the cold numbers convincingly to life."  *See Teamsters*, 431 U.S. at 336; *Gay*, 694 F.2d at 552-53.  It is well settled that a company's purported knowledge or expectation that a policy would have a disparate impact on female employees does not support an inference of intentional discrimination. *See Gay*, 694 F.2d at 552; *Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("discriminatory intent implies selection of a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group") (internal quotes omitted); *Wood v. City of San Diego,* 678 F.3d 1075, 1081-82 (9th Cir. 2012) (affirming dismissal because "[w]here, as here, a plaintiff is challenging a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

facially neutral policy, there must be a specific allegation of discriminatory intent. We agree with the district court that [plaintiff]'s disparate treatment claim must be dismissed under Rule 12(b)(6)."); *Jones v. Lewis*, 2020 WL 6149693, at *3 (N.D. Cal. Oct. 20, 2020) (dismissing disparate treatment claim based on a facially neutral policy because the complaint lacked "a specific allegation of discriminatory intent"); *see also EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 485 (S.D.N.Y. 2011) ("At bottom, the EEOC's theory of this case is about so-called 'work-life balance.' Absent evidence of a pattern of discriminatory conduct—i.e., a pattern that women or mothers were discriminated against because of their pregnancy as compared with others who worked similar schedules—the EEOC's pattern or practice claim does not demonstrate a policy of discrimination at Bloomberg.")  Plaintiffs get no mileage from their conclusory assertion that Musk's November 16th ultimatum was intended to … result in further layoffs [and] … more women, including Ms. Thier, leaving the company than men." SAC, ¶ 56.  For this same reason, the SAC fails to state a claim for intentional sex discrimination.

### 2.    The SAC Is Insufficient to Support a Plausible Disparate Impact Claim.

The SAC fails to adequately plead a disparate impact claim predicated on the alleged Post-RIF Policies.  According to the SAC, Twitter implemented two Post-RIF Policies: (i) employees were expected to work "long hours at high intensity," and (ii) employees were required to work from a Twitter office rather than at home.  SAC, ¶¶ 29, 47.  After allegedly implementing these policies, Musk "sent a message to the remaining Twitter employees giving them until the following day to inform the company (by clicking 'yes' on a link) whether they agreed to work under the new conditions." *Id.*, ¶ 47.  The SAC alleges that this "ultimatum" resulted in "approximately 36% of the remaining women" and "approximately 28% of the men" leaving the company.  *Id.*, ¶ 56.

As an initial matter, the alleged policy that required long and hard work is too vague and generic to constitute a discernible employment practice for disparate impact purposes.  *See Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002) ("[a] plaintiff establishes a prima facie case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion"); *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (allegation that the defendant "'allowed an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1   overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment

2   decisions,' is too vague to support Plaintiffs' disparate impact claims").  Also, the two percentages

3   in the SAC (*i.e.*, 36% of female employees and 28% of male employees allegedly left the company

4   in response to the "ultimatum") are simply bottom-line figures that are not tied to either of the Post-

5   RIF Policies. For example, the SAC does not identify the percentages of male and female

6   employees who left the company because they did not want to work long hours at high intensity,

7   the percentages who left because they wanted to work remotely rather than at a Twitter office, the

8   percentages who left for both reasons, the percentages who left due to reasons completely unrelated

9   to the Post-RIF Policies, or the percentages who were "terminated" after the RIF for reasons

10  unrelated to those policies.  SAC, ¶ 56.  The SAC thus fails to allege that either of the Post-RIF

11  Policies caused a disparate impact on female employees.  *See Wards Cove,* 490 U.S. at 657 (A

12  plaintiff cannot demonstrate disparate impact "simply by showing that at the bottom line there is

13  racial imbalance in the work force."); *Stout*, 276 F.3d at 1121-22 ("Whether disparate impact was

14  shown must address the results of the interview screening decisions, not simply the bottom line

15  promotion decisions.")

16      The disparate impact claim also fails for the fundamental reason that the separations that

17  arose from the Post-RIF Policies were *voluntary*.  SAC, ¶ 47 (alleging that Musk asked employees

18  whether they "agreed" to continue to work at Twitter under the new conditions).  Those percentages

19  necessarily reflect countless individualized decisions by employees about whether they wanted to

20  continue to work for Twitter under the alleged Post-RIF Policies.  *See E.E.O.C. v. Bloomberg L.P.*,

21  778 F. Supp. 2d 458, 486 (S.D.N.Y. 2011) ("[w]hether an individual in any family wishes to make

22  that commitment is an intensely personal decision that must account for the tradeoffs involved, and

23  it is not the role of the courts to dictate a healthy balance for all").  Because the employees chose

24  whether to stay or leave Twitter, any purported causal chain between the SAC's bottom-line

25  percentages and the Post-RIF Policies is broken. Recognizing this problem with their disparate

26  impact theory, Plaintiffs adopt two rhetorical strategies. First, they characterize each employee's

27  decision to leave the company as a "layoff."  *See, e.g.,* SAC, ¶¶ 53, 56.  But that is a gratuitous

28  characterization because nothing in the complaint plausibly suggests that either of the Post-RIF

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1    Policies constituted a layoff.  *See Twombly*, 550 U.S. at 555 ("labels" insufficient).

2         Second, Plaintiffs assert the Post-RIF Policies amounted to a "constructive discharge" of

3    the hundreds of employees who decided to leave Twitter.  *See, e.g.*, SAC, ¶ 57.  But a constructive

4    discharge requires conditions that are "sufficiently extraordinary and egregious to overcome the

5    normal motivation of a competent, diligent, and reasonable employee to remain on the job and earn

6    a livelihood . . ." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000); *see also Poland*

7    *v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (explaining that the constructive discharge doctrine

8    sets a "high bar" that is met only when "working conditions become so intolerable that a reasonable

9    person in the employee's positions would have felt compelled to resign") (quoting *Penn. State*

10   *Police v. Suders*, 542 U.S. 129, 141 (2004)).  The SAC is woefully insufficient to support an

11   inference of a mass "constructive discharge".  It alleges only that Twitter's expectation was that

12   employees would be "extremely hardcore" and "work[] long hours at high intensity" in the office

13   and not from home, *see* SAC, ¶¶ 47-48,[10] which does not come close to supporting an inference of

14   "intolerable" or "extraordinary and egregious" working conditions.  Lest there be any doubt, the

15   SAC itself admits that thousands of Twitter employees decided to continue their employment under

16   the Post-RIF Policies, which undermines any plausible suggestion that the Post-RIF Policies

17   constituted a constructive discharge of each and every employee who decided to separate from the

18   company after Twitter implemented the alleged policies.

19        **E.    Because Neither Plaintiff Was Laid Off in the RIF, They Lack Standing to State
                  a Claim Related to the Allegedly Discriminatory RIF.**

20

21        Article III requires Plaintiffs to "clearly … allege facts demonstrating each element" of

22   standing at the pleading stage.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotations

     omitted).  A plaintiff has standing only if they suffered an injury in fact, which is an invasion of a
23
     legally protected interest that is "concrete and particularized." *Id.* (citing *Lujan v. Defenders of*
24
     *Wildlife*, 504 U.S. 555, 560 (1992).)  An injury is "particularized" only if it affects a plaintiff "in a
25
     personal and individual way." *Id.* at 339.  Consequently, a plaintiff may assert a claim that arises
26
     only from her own injuries—a plaintiff cannot state a claim arising from purported injuries
27

28   _____
     [10] Although "some" employees allegedly were told they needed to "literally work 24/7", the SAC
     does not allege that this new policy applied to the entire workforce.  SAC, ¶ 44.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                                    TWITTER'S NOTICE OF MOTION AND
                                      MOTION TO DISMISS AND/OR STRIKE
                                      Case No. 3:22-cv-07226-AMO

1   "suffered by other, unidentified members" of a purported class. *See Warth v. Seldin*, 422 U.S. 490,

2   502 (1975) (dismissing putative class action for lack of standing by the named plaintiffs).  In

3   disparate impact cases, a plaintiff must show they were "subject to the particular employment

4   practice" that caused the demographic disparity. *Pottenger v. Potlach Corp.*, 329 F.3d 740, 750

5   (9th Cir. 2003) (affirming summary judgment on disparate impact claim because the plaintiff was

6   not subject to the RIF he challenged).  Here, Plaintiffs attempt to challenge the RIF as

7   discriminatory, but neither Plaintiff was laid off as part of the RIF. *See id.*, ¶¶ 41, 52-53.  Because

8   Plaintiffs did not suffer injury from the RIF, they lack standing to assert a discrimination claim

9   arising from alleged injuries of other employees who *were* subject to the RIF.

10      **F.      Plaintiffs' Putative Class Action Claims Should Be Stricken.**

11      Putative class action allegations may be stricken by the Court. *Hovsepian v. Apple, Inc.*,

12   2009 WL 5069144, at *2 (N.D. Ca. Dec. 17, 2009) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as

13   well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery

14   if the complaint demonstrates that a class action cannot be maintained").  "For [a plaintiff's] class

15   action allegations to survive [a motion to strike], the complaint must make a *prima facie* showing

16   that Fed. R. Civ. P. 23(a) and 23(b) can be satisfied." *Trazo v. Nestle USA, Inc.,* 2013 WL 4083218,

17   at *11 (N.D. Cal. Aug. 9, 2013).

18          1.    Plaintiffs Fail to Plead Facts That Plausibly Suggest That They Are Similarly
                  Situated to Every Disabled or Female Employee at Twitter.
19

20      "Class allegations must [be] supported by sufficient factual allegations demonstrating that

21   the class device is appropriate and discovery on class certification is warranted." *Jue v. Costco*

22   *Wholesale Corp.*, No. C 10–00033–WHA, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010).  To

23   adequately assert class allegations in line with the rigorous *Twombly/Iqbal* standard, a plaintiff must

24   allege facts that would plausibly suggest that members of the putative class are subjected to the

25   same specific policies or had sufficiently similar work experiences; conclusory allegations that a

26   defendant has a policy and practice of violating the law are insufficient. *Bush v. Vaco Tech. Servs.,*

27   *LLC*, No. 17-CV-05605-BLF, 2018 WL 2047807, at *7 (N.D. Cal. May 2, 2018) (dismissing class

28   claims and holding that "[u]nder *Twombly* and *Iqbal*, [the plaintiff] must do more than conclude

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1   that Defendants have a policy and practice to violate California labor laws").

2       Plaintiffs cannot do so here.  As to Borodaenko, he alleges that he is immunocompromised

3   and needed to work remotely during the pandemic.  SAC, ¶¶ 35-37.  Following the announcement

4   that employees were expected to return to the office, Borodaenko alleges that he emailed his

5   manager he was "definitely not working from [the] office until the pandemic is over" and was

6   subsequently fired on November 15, 2022.  SAC, ¶¶ 38 and 40-41.  These allegations, which are

7   uniquely specific to Borodaenko's individual circumstances, are the *only facts* that Borodaenko

8   alleges in support of his contention that Twitter's return-to-office directive is discriminatory toward

9   *all* disabled employees (regardless of their particular disability, work restrictions, or desired

10   accommodation(s)).  He alleges *zero facts* regarding other "disabled" employees' need for remote

11   work as a reasonable accommodation or Twitter's refusal to grant the same.  Borodaenko's

12   assertion that Twitter's return-to-office policy negatively impacted disabled employees is nothing

13   more than a purely speculative and implausible guess and is insufficient for purposes of alleging

14   claims on a classwide basis.  *See Zamora*, 2021 WL 809403, at *3 ("Whether Plaintiff[] adequately

15   allege[s] claims on [his] own behalf is beside the point.")

16       Thier fares no better.  Thier alleges that she requires a "stable work environment with clear

17   and reasonable expectations" and, accordingly, she "felt she could no longer work at Twitter, given

18   her disability."  SAC, ¶ 52.  These facts are unique to her, and she alleges no substantive non-

19   conclusory facts about how other "disabled" Twitter employees have been specifically impacted

20   by Twitter's current work environment.  Thier also alleges no facts about how her sex played into

21   her feeling "she could no longer work at Twitter," much less any facts about how other female

22   employees were allegedly impacted by Twitter's work environment. Her speculative conclusions

23   that Twitter's work environment does "not allow for employees who require reasonable

24   accommodation for their disabilities," that it is "clearly deterr[ing] disabled employees from feeling

25   they can continue to work at the company," and that it is "less welcom[ing]" to women are therefore

26   factually unsupported and fail to meet the *Twombly*/*Iqbal* standard.  *See, e.g., Bush v. Vaco Tech.*

27   *Servs., LLC*, No. 17-CV-05605-BLF, 2019 WL 3290654, at *5 (N.D. Cal. July 22, 2019) ("Without

28   a single non-conclusory, factual allegation about these potential class members, Plaintiff has not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

1    plausibly alleged that any of these employees experienced the same alleged violations as Plaintiff");

2    *Bush*, 2018 WL 2047807, at *6 (dismissing class claims because the complaint was "completely

3    devoid of any allegations tying [the plaintiff's] experience to the thousands of individuals" in the

4    putative class).

5             2.       Plaintiffs' Putative Class Action Claims Should be Stricken Because No
                      Ascertainable Class Has Been Pled.
6

7             "A class definition should be precise, objective, and presently ascertainable."  *Gray v.

8    Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (citations omitted).   A

9    proposed class may fail where class membership depends on a determination of the merits of the

10   plaintiff's claim.  *See, e.g., Brazil v. Dell Inc.*, 585 F.Supp.2d 1158, 1167 (N.D. Cal. 2008) (class

11   definition not ascertainable where determination of membership required "the court to reach a legal

12   determination that Dell had falsely advertised"); *see also Daniel F. v. Blue Shield of California*,

13   305 F.R.D. 115, 125 (N.D. Cal.2014) (a proposed class definition was "unworkable" where

14   determining class membership would "essentially require resolving the merits of each individual's

15   claim").  Class definitions may also fail if the "determination of who was a member of the class

16   would be excessively complex, requiring a highly fact-specific and individualized inquiry."

17   *Spencer v. Beavex, Inc.*, No. 05–CV–1501WQH, 2006 WL 6500597, at *9 (S.D. Cal. Dec. 15,

18   2006) (citations omitted).  Proposed class definitions may also fail where the purported class

19   includes members who have suffered no injury and therefore lack standing to sue.  *Stearns v. Select

20   Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1152 (N.D. Cal. 2010).

21            Here, Plaintiffs seek to represent all disabled or female employees "whose jobs have been

22   affected by the company's layoffs, terminations, and constructive discharges" since Twitter's

23   acquisition.  SAC, ¶¶ 15-16.  In order to ascertain membership in a putative class of supposedly

24   "disabled" employees the Court would be required to review and assess each individual proposed

25   class member's unique circumstances and, *prior to* determining class membership, adjudicate:

26   (1 whether the employee was "disabled"; (2) whether the employee required a reasonable

27   accommodation; and (3) whether that accommodation was somehow "affected" by Twitter's

28   layoffs, terminations, and/or heightened demands on the workforce – all highly individualized,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

inherently fact-specific inquiries.

Plaintiffs' use of the phrase "affected by" is also hopelessly vague and improperly encompasses employees who "have no injury and no standing to sue." As phrased, Plaintiffs' putative class definition would include employees that were terminated or discharged for cause by Twitter. As to the ADA/FEHA class definition, Plaintiffs' putative class definition also includes all Twitter "disabled" employees, regardless of whether these employees required an accommodation, and regardless of whether that accommodation included working from home or was somehow otherwise "affected by" Twitter's work environment.[11]

### 3. Plaintiffs' Class Action Claims Should be Stricken Because Plaintiffs' Allegations are Not Common or Typical of the Putative Class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (citations omitted). "This does not mean merely that they have all suffered a violation of the same provision of law," but instead that their claims "depend upon a common contention ... of such a nature that is capable of classwide resolution…—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (citations omitted). Rule 23(a)(3) further requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality and commonality requirements are similar and tend to merge." *Id*. at 349, n. 5. "[R]epresentative claims are typical if they are reasonably coextensive with those of absent class members..." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 509 (N.D. Cal. 2011).

Courts are cautious to certify disability discrimination claims as class actions due to the individualized determinations required by such claims. *See, e.g., Sokol v. New United Mfg., Inc.*,

---

[11] Although Plaintiffs' class definition does not specifically reference employees that are perceived as disabled, Plaintiffs use such verbiage elsewhere in the SAC. *See* SAC, Count I and III. Expanding Plaintiffs' putative class definition to include those employees that are "perceived as disabled" only exacerbates the impossibility of ascertaining the putative class – and begs the questions: perceived in what manner and by whom?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-cv-07226-AMO

No. C 97-4211-SI, 1999 WL 1136683 (N.D. Cal. Sept. 20, 1999).  In *Sokol*, the plaintiffs challenged several employment practices, including the defendant's "de facto policy" of refusing to consider certain reasonable accommodations.  *Id.* at \*6.  The court held that challenges to this policy were inappropriate for class treatment because the policy "cannot be evaluated apart from the individual circumstances of [] employees."  *Id.*  After noting that there were circumstances where the failure to provide modifications would not constitute a violation of the ADA, the court determined that "[t]he legitimacy of NUMMI's practices … will therefore vary depending on the circumstances of the individual employee."  *Id.*  Given the highly individualized inquiry necessary to evaluate the named plaintiffs' challenges to this policy, the court held that the named plaintiffs' claims were not typical of the claims of the proposed class. *Id.* The *Sokol* plaintiffs also challenged *who* the defendant employed "to determine and provide appropriate reasonable accommodations for employees with disabilities."  *Id.* at \*6.  The court held that it would "be unable to determine the legitimacy of the 'procedures' employed by [the defendant] under the ADA without scrutinizing the interactive accommodations process with respect to *individual* class members."  *Id.* (emphasis in original). "[T]he interactive process will vary widely between employees with different disabilities and job functions," thus "certain accommodation 'procedures' improperly employed in the context of one employee might be entirely appropriate in the context of another."  *Id.*

Plaintiffs' disability claims suffer from the same defects at issue in *Sokol*.  Evaluating whether Twitter's Post-RIF Policies were discriminatory to all disabled employees would require the Court to analyze each employee's individual circumstances and whether they required a reasonable accommodation for their disability, whether Twitter's Post-RIF Policies ran afoul of those reasonable accommodations, and whether Twitter made any exceptions to its Post-RIF Policies for the specific individual employee.  The sex discrimination putative class claim poses the same problem.  These fact-specific, individualized inquiries demonstrate that Plaintiffs' claims are inappropriate for class-wide resolution and should be stricken.

DATED:  June 16, 2023

MORGAN, LEWIS & BOCKIUS, LLP

___*/s/ Eric Meckley*_____
Attorneys for Defendants