SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., AND X CORP.,<br><br>Defendants. | Case No. 4:22-cv-07226-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE CASES**<br><br>BEFORE THE HON. ARACELI MARTÍNEZ-OLGUÍN<br><br>Date: July 20, 2023<br>Time: 2:00 PM<br>Courtroom: 10 |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT .................................................................................................... 1

    A.     These Cases Concern a Common Issue of Law or Fact ............................. 2

    B.     Defendants Would Suffer No Prejudice as a Result of Consolidation ....................... 7

    C.     Consolidation Would Promote Efficiency and Judicial Economy ............................ 12

III.    CONCLUSION ............................................................................................... 15

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Adler v. Seaman*,

   266 F. 828 (8th Cir. 1920) ......................................................................................... 11

*Am. Builders & Contractors Supply Co., Inc. v. Macaluso Enterprises, Ltd.*,

   2022 WL 1093518 (W.D.N.Y. Apr. 12, 2022)........................................................ 12

*Bolbol v. City of Daly City*,

   754 F.Supp.2d 1095 (N.D.Cal., 2010)....................................................................... 3

*Bowman v. Legato Sys., Inc.*,

   195 F.R.D. 655 (N.D. Cal. 2000) .............................................................................. 9

*China Agritech, Inc. v. Resh*,

   138 S. Ct. 1800 (2018)............................................................................................. 12

*Christy v. MKS Instruments, Inc.*,

   2019 WL 13253371 (C.D. Cal. Mar. 19, 2019).................................................... 4, 5

*Collins v. City & Cnty. Of San Francisco*,

   2014 WL 542217 (N.D. Cal. Oct. 24, 2014) ............................................................ 7

*Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*,

   2018 WL 3388548 (N.D.Cal., 2018) ........................................................................ 3

*Dusky v. Bellasaire Invs.*,

   2007 WL 4403985 (C.D. Cal. Dec. 4, 2007)......................................................... 14

*Factory Sales and Engr., Inc. v. Nippon Paper Industries USA Co., Ltd.*,

   2015 WL 12159153 (W.D. Wash. June 18, 2015) ................................................... 3

*First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*,

   210 F.3d 983 (9th Cir. 2000) .................................................................................... 9

*Hall v. Hall*,

   138 S. Ct. 1118 (2018)............................................................................................ 11

*Heil v. Belle Starr Saloon & Casino, Inc.*,

   2013 WL 943754 (D.S.D., 2013) .......................................................................... 8

*In re Cent. Aluminum Co. Securities Litig.*,

   2009 WL 2905962 (N.D. Cal. Sept. 8, 2009)........................................................ 8

*In re Facebook Priv. Litig.*,

   2010 WL 5387616 (N.D. Cal. Dec. 21, 2010)................................................ 8, 10

*Kampe v. Volta Inc.*,

   2022 WL 19975281 (N.D. Cal. Nov. 25, 2022) .................................................... 3

*Lam v. U. of Hawai'i*,

   40 F.3d 1551 (9th Cir. 1994) ................................................................................. 9

*Medina v. Mealing*,

   2006 WL 8443382 (N.D. Cal. Feb. 2, 2006) ........................................................ 3

*Mendoza v. Amalgamated Transit Union Int'l*,

   30 F.4th 879 (9th Cir. 2022) ................................................................................ 11

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,

   2014 WL 2604991 (N.D.Cal., 2014) ..................................................................... 3

*Muldrew v. County of Fresno*,

   2009 WL 10730250 (E.D. Cal. June 29, 2009) ................................................ 4, 5

*Mullen v. Wells Fargo & Co.*,

   2021 WL 965344 (N.D. Cal. Mar. 15, 2021) ........................................................ 3

*Mulligan v. Impax Laboratories, Inc.*,

   2013 WL 3354420 (N.D.Cal., 2013) ..................................................................... 3

*Paxonet Commun., Inc. v. TranSwitch Corp.*,

   303 F. Supp. 2d 1027 (N.D. Cal. 2003) ....................................................................... 3

*Power Integrations, Inc. v. Chan-Woong Park*,

   2019 WL 119969 (N.D. Cal. Jan. 7, 2019) .............................................................. 3, 8

*Rollolazo v. BMW of N. Am., LLC*,

   2016 WL 9173465 (C.D. Cal. Sept. 15, 2016) ........................................................... 13

*S.W. Marine, Inc. v. Triple A Mach. Shop, Inc.*,

   720 F. Supp. 805 (N.D. Cal. 1989) ............................................................................. 7

*Smart v. Sony Corp.*,

   08-CV-2276 W (LSP), 2009 WL 10671545 (S.D. Cal. July 30, 2009) ..................... 12

*Strifling et al v. Twitter, Inc. et al*,

   Case No. 22-cv-07739-JST (N.D. Cal.) .............................................................. passim

*Terwillegar v. Grays Harbor County*,

   2019 WL 2118776 (W.D. Wa., May 14, 2019) ....................................................... 8, 13

*Tollen v. Geron Corporation*,

   2020 WL 2494570 (N.D.Cal., 2020) ........................................................................... 3

*Tumbling v. Merced Irr. Dist.*,

   2010 WL 1340546 (E.D. Cal. Apr. 1, 2010) .............................................................. 4

*Walker v. H. Councill Trenholm State Tech. College*,

   2007 WL 1140423 (M.D. Ala. Apr. 17, 2007) ........................................................... 8

*Zeman v. Twitter Inc. et al.*,

   Case No. 23-cv-01786-SI (N.D. Cal.) ................................................................ passim

**Rules**

Fed. R. Civ. P. 42 ............................................................................................................ 2, 8, 9, 15

Local Rule 3-12 ...................................................................................................................... 15

# I.  INTRODUCTION

In three cases currently pending in this district — the above-captioned case as well as *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.) — Plaintiffs have filed class actions against Twitter for engaging in unlawful discrimination in the chaotic aftermath of Elon Musk's takeover of the company that resulted in their terminations, constructive discharges, or being laid off. All plaintiffs are represented by the same undersigned counsel, all suits name Twitter, Inc. and X Corp. as the sole defendants (who are also represented by the same counsel in each case), and all cases concern the same time period and actions by Defendants.

In addition to concerning the same company, time period, and decisional processes resulting in Plaintiffs' separations from Twitter, these cases now also all have substantial overlap in the legal claims they assert. As it currently stands, the *Borodaenko* case asserts both disability and sex discrimination, the *Strifling* case asserts both sex and age discrimination, and the *Zeman* case asserts age discrimination — all flowing directly from the same decisions by Twitter's executive.

Recognizing the substantial legal and factual similarities and overlaps among these cases, Plaintiffs have moved for consolidation of these cases. Without prejudicing Defendants in any cognizable ways, consolidation would greatly advance judicial economy and efficiency by avoiding unnecessary duplications of proceedings and discovery, as well as the potential for inconsistent rulings.

# II.  ARGUMENT

Defendants' nearly exclusive focus on the chronology of these cases distracts from the *legal* issues governing consolidation. And to the extent Defendants make occasional, sweeping references to the applicable legal standards governing consolidation under Federal Rule of Civil Procedure 42, their arguments are misplaced.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE CASES
CASE NO. 4:22-CV-07226-AMO

1

2

**A. These Cases Concern a Common Issue of Law or Fact**

At the outset, Defendants seem to fundamentally misinterpret Rule 42's phrase, "If

3

actions before the court involve a common question of law or fact…" Fed. R. Civ. P. 42.

4

Throughout their opposition to the pending motion to consolidate, Defendants attempt to pass off

5

surreptitiously *their* versions of (contested) facts as those Plaintiffs have alleged.[1] However, the

6

question initially before this Court is whether these three cases "*involve* a common issue of law

7

or fact," *id.* (emphasis added), which does not require wading into disputed facts or theories but

8

9

[1]    For example, Defendants write, "The impact of a return-to-office policy on certain
employees and the reason(s) why employees may have 'felt forced to resign' plainly do *not*

10

involve Twitter's decision to affirmatively law off a separate group of employees in the RIF."
Dkt. 49, Def. Opp. To Mot. to Consolidate Cases, 10–11. However, Plaintiffs in all three cases

11

represent putative classes of Twitter employees "who have been discharged from their jobs

12

during the chaotic months since multi-billionaire Elon Musk purchased the company," which
include employees concededly laid off, as well as those who may be characterized as

13

constructively terminated. SAC ¶ 1; *accord Zeman* Compl. ¶ 1 (identical language); *Strifling*
Compl. ¶ 1 (identical language). This is because all three cases allege that Twitter's

14

discriminatory practices include *both* the initial layoffs *and* the inextricably intertwined

15

subsequent actions taken by Musk to force additional employees out of the company.  *See* SAC ¶
45, 56 ("These [return-to-in-person-work] demands occurred while the company was in the

16

process of mass layoffs, thus signaling to employees that these extraordinary efforts were

17

required in order to keep their jobs….Musk's November 16th ultimatum was also intended to,
and did, result in further layoffs.").

18

Likewise, Defendants represent that "Twitter terminated Borodaenko due to misconduct

19

shortly after he refused to return to the office…and Thier and Frederick-Osborne voluntarily
separated from Twitter when they declined to commit to working long hours at high intensity."

20

Dkt. 49, Def. Opp. To Mot. to Consolidate Cases, 11. Yet as the operative complaint makes clear,

21

"Mr. Borodaenko had not received any notice of behavior he was alleged to have engaged in that
violated company policy, nor did he engage in any behavior that would appear to him to have

22

violated company policy (other than informing his manager that he could not comply with
Musk's demand that employees begin working out of company offices, and therefore needed a

23

reasonable accommodation for his disability)." SAC ¶ 42. And the complaints further make clear

24

that neither Thier nor Frederick-Osborn "voluntarily separated from Twitter"; instead, they have
alleged that their refusal to agree to Musk's discriminatory ultimatum resulted in their

25

involuntary discharges. SAC ¶ 47–57, Counts I–II; *Strifling* FAC ¶ 40–49, Counts I–IV.

These misrepresentations — which attempt to create illusory factual distance between

26

these three complaints — pervade Defendants' Opposition to this motion to consolidate and are a

27

veiled attempt at confusing the issues by preordaining the correctness of their highly disputed
theory of the cases.  In reality, these discrepancies only further highlight the interrelatedness of

28

these factual and legal questions and serve to show how inefficient it would be to litigate these
same issues in three separate court cases.

rather entails merely consulting the operative complaints and determining whether there is any one common factual or common legal question. *See, e.g. Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at *2 (N.D. Cal. Mar. 15, 2021) (comparing the allegations in each complaint to determine whether a common factual or legal question is presented); *Factory Sales and Engr., Inc. v. Nippon Paper Industries USA Co., Ltd.*, 2015 WL 12159153, at *2 (W.D. Wash. June 18, 2015) ("Taking the facts as alleged and without commenting on the merits or likely outcome at trial, the Court can foresee significant overlap in the three main issues at trial [and thus grants consolidation]."). And, of course, "The complaints do not need to be identical for purposes of consolidation." *Tollen v. Geron Corporation*, 2020 WL 2494570, at *1 (N.D.Cal., 2020). "The Court need find only one issue of law or fact in common to permit consolidation." *Power Integrations, Inc. v. Chan-Woong Park*, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019) (first citing *id.*, then citing *Dusky v. Bellasaire Investments*, 2007 WL 4403985, at *2 (C.D. Cal. Dec. 4, 2007)).

Here, all three cases are manifestly entwined and "involve common questions of law and fact, as well as overlapping parties, claims and putative classes." *Medina v. Mealing*, 2006 WL 8443382, at *2 (N.D. Cal. Feb. 2, 2006). All three cases concern overlapping putative classes and causes of action, the same defendants, the same attorneys on each side, the same adverse employment actions orchestrated by the same company executives as part of the same common scheme, and the same relevant time period, in the same early procedural posture. *See Bolbol v. City of Daly City*, 754 F.Supp.2d 1095, 1118–19 (N.D.Cal., 2010); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *3 (N.D.Cal., 2014); *Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*, 2018 WL 3388548, at *1 (N.D.Cal., 2018); *Mulligan v. Impax Laboratories, Inc.*, 2013 WL 3354420, at *2–3 (N.D.Cal., 2013); *Kampe v. Volta Inc.*, 2022 WL 19975281, at *2 (N.D. Cal. Nov. 25, 2022); *Medina*, 2006 WL 8443382, at *2; *Power Integrations,* 2019 WL 119969, at *2–3 (N.D. Cal. Jan. 7, 2019); *Paxonet Commun., Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003).

In attempting to distinguish indistinguishable factual patterns among all three of the present cases, Defendants cite to just three out-of-district cases for the proposition that "[c]onsolidation is inappropriate here because individual issues predominate in each of the three cases."[2] Yet these three cases are entirely inapposite; all three concern individual plaintiffs who have suffered discrete, fact-intensive adverse employment actions, none of which allege a common nucleus of decision-making or coordinated corporate efforts.

In *Tumbling*,[3] the court declined to reverse a magistrate judge's denial of consolidation where each plaintiff alleged highly individualized claims and adverse actions. There, one plaintiff, an African-American male, asserted seven causes of action related to sex- and race-based discrimination following two demotions after he reported incidents of his supervisor possibly engaging in sexual relationships with other employees and a member of the company's board of directors stealing water. *Tumbling*, 2010 WL 1340546 at *1. The other plaintiff, a Hispanic male who had filed his suit nine months later, alleged discrimination for being suspended after failing to report an intoxicated coworker to his supervisor and for being twice passed over for promotion for reasons he believed to be related to his race and sex. *Id.* at 2. The district court wrote:

> Because the individual facts of each case vary so widely, as set forth above, the magistrate judge did not err to conclude that consolidation would create juror confusion or prejudice to defendants. To establish individual claims at trial, each plaintiff will require different witnesses and different testimony. Common facts do not predominate Plaintiffs' allegations or claims. In addition, Plaintiffs assert different types of discrimination based on different adverse actions. This Court agrees

---

[2]    *See* Dkt. 49, Def. Opp. To Mot. to Consolidate Cases, 10–12 (first citing *Tumbling v. Merced Irr. Dist.*, 2010 WL 1340546 (E.D. Cal. Apr. 1, 2010), then citing *Christy v. MKS Instruments, Inc.*, 2019 WL 13253371 (C.D. Cal. Mar. 19, 2019), then citing *Muldrew v. County of Fresno*, 2009 WL 10730250 (E.D. Cal. June 29, 2009)).

[3]    Defendants mistakenly represent that the *Tumbling* court "den[ied] consolidation of two race discrimination claims…" Dkt. 49 at 11. In actuality, the *Tumbling* court was analyzing a motion to reconsider a magistrate judge's denial of a motion to consolidate, which the Court noted was reviewed for clear error and was a motion "generally disfavored" that required movants to "set forth facts or law of a strongly convincing nature to induce a court to reverse its prior decision." *Tumbling*, 2010 WL 1340546 at *3 (citations omitted).

> that based on these facts and Plaintiffs' claims, the potential for juror confusion and bias against the defendants outweighs any judicial economy that consolidation would promote.
>
> Additional considerations support the Magistrate Judge's ruling. Factors such as differing trial dates or stages of discovery usually weigh against consolidation. 9 Wright & Miller, Federal Practice and Procedure § 2383 (2006). Separate trial dates, differing stages of discovery, and Plaintiffs' delay in raising this motion all support the March 30 Order to deny Plaintiffs' motion to consolidate. This is particularly applicable where, as here, Plaintiffs raised this motion six months after the second action was filed, and after non-expert discovery closed in the first action. For these additional reasons, consolidation of the actions for trial would be inappropriate.

*Id.* at *5. This is a far cry from the cases at bar.

Similarly, in *Christy*, 2019 WL 13253371, the two plaintiffs alleged adverse employment actions based upon discrete sets of unrelated facts. One plaintiff alleged, *inter alia*, age discrimination after being forced to train a younger replacement before being terminated. *Id.* at 1–3. The other plaintiff was terminated after repeatedly complaining to supervisors about quality control issues and asserted, *inter alia*, a claim for whistleblower retaliation. *Id.* It is only against this backdrop that the *Christy* court reasoned:

> Although Christy and King raise similar causes of action, this alone does not create a common question of law or fact, as a jury must still apply the particular facts of each case. Since the two employment disputes involve different facts specific to each plaintiff, there is no common question of law or fact that justifies consolidation. And even if there was a common question of law or fact, the benefits of consolidation are outweighed by possible prejudice to the plaintiffs. Christy and King, who share the same counsel, will be forced to simultaneously try two cases involving different claims, positions, supervisors, and circumstances. There is a substantial risk of jury confusion, as the jury would be required to parse out what evidence applies to each plaintiff.

*Id.* at *3.

And finally, in *Muldrew*, 2009 WL 10730250, plaintiffs alleged different derogatory comments, physical acts of aggression that were overlooked by superiors, retaliation, placement

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE CASES
CASE NO. 4:22-CV-07226-AMO

on administrative leave, and failures to promote — none of which were common between the two actions. *Id.* at *1–2. The magistrate judge wrote:

> While there may be a common issues as to the general environment at the Public Defender's office and some overlapping factual incidents, Plaintiffs' allegations are so general and lacking in detail that it is impossible to determine the extent of the common evidence supporting the individual claims. The facts and witnesses surrounding each individual Plaintiff's claims vary widely. For example, Plaintiffs, who are employed in different capacities, complain of different employment actions allegedly carried out by different defendants. Moreover, each claim will likely be defended with differing evidence of legitimate justifications.
>
> *3 The Court therefore finds that the is little evidence common to the Plaintiffs' claims and the danger of confusion appears to outweigh any savings in time or effort. However, because, at this early stage of discovery, it is unclear how much evidence may be admissible in both actions, the Court DENIES the MOTION WITHOUT PREJUDICE.

*Id.* at *2–3.

These cases could not be a further cry from the claims advanced by Plaintiffs in the cases at issue here. While Defendants cite these cases for broad propositions like that Plaintiffs' lack of the same supervisor[4] or their belonging to different protected classes or their asserting slightly different causes of action each defeats a finding of common factual or legal issues, these cases from other districts do not support such contentions, which fly in the face of this district's caselaw as previously cited by Plaintiffs.[5]

Defendants raise one additional point which they claim should dispose of this motion to consolidate: "Any purported 'commonalities' between *Borodaenko*, *Strifling*, and *Zeman* are, at

---

[4]    Plaintiff's terminations here did not always come from a supervisor, *e.g.*, SAC ¶ 41 ("Mr. Borodaenko received an email from Twitter Human Resources that stated: 'Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy.'"), and regardless, were all alleged to be part of a common scheme directed by Twitter's CEO, Elon Musk.

[5]    Lack of consolidation would lead to confusion, since arguments Twitter might make regarding, say, Thier's sex discrimination claim or Frederick-Osborn's age discrimination claim may be in the process of being litigated in the *Strifling* or *Zeman* cases.

best, superficial/not material (and were manufactured solely for the purposes of moving for consolidation)." Dkt. 49 at 10. Plaintiffs are, to be frank, utterly confused as to how they could have "manufactured" their own unwanted separations from Twitter in the hopes of one day being able to file a motion to consolidate their cases.  This argument should be disregarded.[6]

## B. Defendants Would Suffer No Prejudice as a Result of Consolidation

Once a court is satisfied that any common issue of law or fact exists, "[t]o determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *S.W. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989). Defendants have asserted — in broad strokes — first that granting this motion to consolidate would prejudice Twitter because "consolidating these three actions would pose a significant risk of confusing a jury." Dkt. 49 at 12. Defendants base this argument entirely on their claim that "a jury would need to compartmentalize the very different evidence presented and different standards of liability." *Id.* at 13. But, as discussed, because the adverse employment actions flow from the same decisions by the same corporate decisionmakers during the same time periods, "[t]he facts, circumstances, witnesses, and time periods supporting each Plaintiff's claims" do not vary and would be common to all cases, and as such would not confuse a jury. *Id.* (quoting *Collins v. City & Cnty. Of San Francisco*, 2014 WL 542217, at *3 (N.D. Cal. Oct. 24, 2014)).

Furthermore, Defendants' contention that requiring a jury to assess the several causes of action at issue in these cases "poses a significant risk of confusion — and prejudice to Twitter," Dkt. 49 at 13, is misplaced. Curiously, Defendants make no mention of the fact that all three

---

[6]     To the extent Defendants argue commonalities are "superficial/not material," Plaintiffs have extensively demonstrated the contrary to be true. To the extent Defendants are denying the claims alleged in Plaintiffs' complaints, this is a matter for the finder of fact to determine. To the extent Defendants are arguing Plaintiffs have "manufactured" commonality by asserting similar claims in different cases, this is why Federal Rule of Civil Procedure 42 provides for consolidation in the first place. And to the extent Defendants are alleging Plaintiffs have engaged in "judge-shopping" or "gamesmanship," this is an inflammatory assertion that does not bear on the legal issues before the Court. *See infra* pp. 9–12.

cases have overlapping causes of action in their discussion on this point. *See* Dkt. 49 at 12–13. But of course, even if this motion to consolidate is not granted, juries in the respective cases still "would need to compartmentalize…different standards of liability under the ADA, Title VII and the ADEA and not allow findings as to one claim to impact their assessment with respect to other claims," so it is difficult to imagine on this point how consolidation "poses a significant risk of confusion — and prejudice to Twitter." *Id.* at 13. This difficulty is exacerbated by the fact that this Court has routinely granted consolidation even when different causes of action are alleged in each respective case — a single 2007 case from the Middle District of Alabama[7] notwithstanding. *See, e.g.*, *In re Cent. Aluminum Co. Securities Litig.*, 2009 WL 2905962 at *2 (N.D. Cal. Sept. 8, 2009); *Power Integrations`*, 2019 WL 119969, at *2–3 (N.D. Cal. Jan. 7, 2019); *In re Facebook Priv. Litig.*, 2010 WL 5387616, at *1 (N.D. Cal. Dec. 21, 2010); *accord Terwillegar v. Grays Harbor County*, 2019 WL 2118776 (W.D. Wa., May 14, 2019) ("[A]lthough plaintiff correctly points out that two of his cases involve unique [ADA] claims… Rule 42 requires simply 'a common question of law or fact' and not that common legal and factual questions predominate.") (quoting Fed. R. Civ. P. 42). As one court has explained:

> While the court is appreciative of defendants' concern that a jury will not be able to compartmentalize the claims of one of the plaintiffs as opposed to the other, with proper jury instructions, the court and counsel can assure that no jury confusion will arise….[J]urors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions … and strive to understand, make sense of, and follow the instructions given them. The same four defendants will be arguing the same, or similar, evidence and defenses to each plaintiff's claims….With proper jury instructions addressing plaintiffs' separate claims, the court is confident any unfair prejudice will be avoided.

*Heil v. Belle Starr Saloon & Casino, Inc.*, 2013 WL 943754, at *2–4 (D.S.D., 2013) (third alteration in original) (internal quotation marks and citations omitted). Additionally, consolidating these cases now does not forever bind this Court: Rule 42 provides that the Court

---

[7]   *See* Dkt. 49 at 12–13 (citing *Walker v. H. Council Trenholm State Tech. College*, 2007 WL 1140423 at *4 (M.D. Ala. Apr. 17, 2007)).

may subsequently "issue any other orders to avoid unnecessary cost or delay" and "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42; *see also Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) ("It is the Court's intent that this order consolidate the cases for all purposes, including trial. However, the Court does not intend to preclude the possibility that it may be necessary to create sub-classes or to effect a full or partial deconsolidation of the cases at some time in the future."). These options significantly mitigate, if not eliminate, the possibility that jury confusion would prejudice the Defendants in any way.

Defendants further argue that "consolidating these actions would unfairly prejudice Twitter by rewarding Plaintiffs' gamesmanship and attempted manipulation of the Court's judicial assignments following negative rulings on Plaintiffs' claims by the currently assigned judges." Dkt. At 13. This argument is as illogical as it is offensive.

First, consolidation of these cases before a judge of this Court cannot conceivably "prejudice" Defendants, as "prejudice" in the legal sense is defined as "[a] condition that, if shown by a party, will usually defeat the opposing party's action." PREJUDICE, Black's Law Dictionary (11th ed. 2019). Plaintiffs have full faith that *any* judge in this district would preside fairly over this case and cannot be presumed *ab initio* to favor one party or another. *See Lam v. U. of Hawai'i*, 40 F.3d 1551, 1563 (9th Cir. 1994) ("[J]udges are presumed to be impartial in their decisions."); *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 (9th Cir. 2000) ("[J]udges (and their law clerks) are presumed to be impartial and to discharge their ethical duties faithfully so as to avoid the appearance of impropriety. Lawyers are entitled to assume that judges (and law clerks) will perform their duty."). Because there is no prejudice, Defendants' arguments on this point are unrelated to the correctness of consolidation.

Second — and perhaps more importantly — Plaintiffs have engaged in no such "gamesmanship," "attempted manipulation of the Court's judicial assignments," "judge shopping," "gaming of the system," or anything of the sort spuriously alleged by Defendants.

*Dkt.* 49 at 13-14. Defendants base their serious accusation solely on their assertion that this motion to consolidate was made "following negative rulings on Plaintiffs' claims by the currently assigned judges," and so "the chronology of events makes undeniably clear [that] Plaintiffs' counsel has purposefully manipulated the claims in these cases." *Id.* at 13. This is erroneous and ill-founded. There are currently (and were at the time of this motion's filing) three judges assigned to these cases: Your Honor, Judge Tigar, and Judge Ilston. Judge Ilston has yet to issue any substantive rulings; Your Honor has ruled against Plaintiffs' motion to relate these cases; and Judge Tigar granted a motion to dismiss but with leave to amend — hardly abnormal or particularly alarming in the course of complex class litigation. To surmise from this chronology that Plaintiffs are judge-shopping is baseless and inflammatory.[8]

Moreover, Defendants point to Plaintiffs' amendments of their operative complaints to support their misguided accusations. As Plaintiffs have pointed out, these amendments were necessary to address court orders and to present additional facts in support of Plaintiffs' claims. Thier was added to this case to address the Court's concern that Borodaenko did not have standing to press an issue already stated in the class complaint — that Elon Musk's November 16 ultimatum was discriminatory against disabled employees — because Borodaenko was terminated prior to issuance of that ultimatum. Likewise, Frederick-Osborn was added to the *Strifling* case to address that court's concern that the named plaintiffs did not have standing to press the issue that the ultimatum was discriminatory against female employees because the other plaintiffs were laid off prior to November 16. Rather than demonstrating "gamesmanship"

---

[8]     Plaintiffs would be perfectly happy with these cases being consolidated and reassigned to any of these respected jurists, because efficiency and not "judge shopping" is Plaintiffs' goal. *Cf.* Dkt. 40 at 14, n.4. Plaintiffs have only sought consolidation in the first-filed case because it is their understanding that this is the required mechanism and standard protocol when consolidating cases. *See In re Facebook Privacy Litigation*, 2010 WL 5387616, at *2.

Additionally, Defendants only filed motions to dismiss and/or strike the SAC in this case and to strike portions of the first amended *Strifling* complaint *after* Plaintiffs filed their motion to consolidate these cases, *see* Dkt. 47; *Strifling* Dkt. 46, which — under Defendants' logic — "the chronology of events makes undeniably clear" equates to "gamesmanship and attempted manipulation of the Court's judicial assignments," Dkt. 40 at 13.

or "judge shopping," Defendants' recitation of these amendments demonstrates just how interrelated all of these cases truly are: Were Thier to add her sex discrimination claim in the *Strifling* case, or Frederick-Osborn to add her age discrimination claim in the *Zeman* case, Twitter certainly would have objected on the basis that doing so constitutes "claim-splitting." *See generally Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (internal quotations and citations omitted). Further, if the amendments adding Thier and Frederick-Osborn were to be disallowed, they would merely file their cases (each with claims overlapping the cases at issue) individually, which in turn would be related to the present matters and would require consolidation, leading right back to these same consolidation arguments (albeit after delay and inefficiency).[9]

Furthermore, it is not at all uncommon or unsurprising that new named plaintiffs with overlapping claims would be added to this sort of class litigation, given plaintiffs are often members of several different protected classes and overlapping claims are filed at different times. As the United States Supreme Court has explained:

> [A] multiplicity of class-action filings is not necessarily 'needless.' Indeed, multiple filings may aid a district court in determining, early on, whether class treatment is warranted, and if so, which of the contenders would be the best representative… Multiple timely filings might not line up neatly; they could be filed in different districts, at different times…or on behalf of only partially overlapping classes. But

---

[9]    Defendants attempt to shoehorn their arguments that these amendments were improper into their opposition to this motion to dismiss, but they must be left for a later date. "The propriety of any consolidation order must be determined by the situation of the two cases at the time that order was made." *Adler v. Seaman*, 266 F. 828, 835 (8th Cir. 1920); *see also Hall v. Hall*, 138 S. Ct. 1118, 1127–30 (2018) (citing *id.* and confirming that Rule 42 does not alter the "traditional understanding" of consolidation). Thus, this Court should not engage in speculation about how Defendants' motions will be resolved and must take the current operative complaints as is (though Plaintiffs note parenthetically that they have opposed these motions while recognizing that this is a dispute for another day).

> district courts have ample tools at their disposal to manage the suits,
> including the ability to stay, consolidate, or transfer proceedings.
> District courts are increasingly familiar with overseeing such complex
> cases, given the surge in multidistrict litigation. The Federal Rules
> provide a range of mechanisms to aid courts in this endeavor. What the
> Rules do not offer is a reason to permit plaintiffs to exhume failed class
> actions by filing new, untimely class claims.

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 (2018) (internal citations omitted). This recognition that class claims will not always fall so neatly into place as to avoid overlapping claims has lead courts assessing motions to consolidate to routinely reject the sort of gamesmanship claims Defendants assert. *E.g. Smart v. Sony Corp.*, 08-CV-2276 W (LSP), 2009 WL 10671545, at *2 (S.D. Cal. July 30, 2009) ("Defendants argue that the Plaintiffs' 'piecemeal litigation' and current consolidation request is a tactical strategy to avoid a ruling on the pending motion to dismiss. Further, a court ordered consolidation would cause Defendants the inconvenience and expense of having to file a third motion to dismiss, having never received disposition on the first two. While the Court does acknowledge the immediate delay and slight inconvenience that consolidation will cause, the Court is unpersuaded by the Defendants' opposition.") (internal citation omitted); *Am. Builders & Contractors Supply Co., Inc. v. Macaluso Enterprises, Ltd.*, 2022 WL 1093518, at *8 (W.D.N.Y. Apr. 12, 2022) ("The Court agrees with ABC that Defendants have failed to show that the claims in the present complaint are improper attempts at an end run around Fed. R. Civ. P. 15. While a motion to amend in the prior Action may have been procedurally more sensible, Defendants present no evidence of gamesmanship on the part of ABC. Rather, the record seems to indicate a factual discovery following the expiration of the deadline for joining and amending parties in the prior Action, and ABC's subsequent attempts to save its claims from an impending expiration of the relevant statutes of limitation.").

Because Defendants simply are not prejudiced by consolidation, this motion should be granted.

## C. Consolidation Would Promote Efficiency and Judicial Economy

Finally, Defendants make half-hearted arguments related to efficiency and judicial economy, arguing that "Plaintiffs' motion to consolidate does not promote judicial economy because the pleadings are not settled in any of the cases at issue"[10] and because "the *Strifling* and *Zeman* courts have already spent time evaluating and managing those cases." Dkt. 49 at 15. Both of these arguments fly in the face of established caselaw.

First, the fact that all cases are in the early stages of litigation does not undermine consolidation but rather supports it. *See, e.g.*, *Terwilleger*, 2019 WL 2118776, at *2 ("Regarding timeliness, consolidation at this early stage is not 'premature' but is preferable to consolidating at a later stage, as it will serve to avoid duplicative motions practice and discovery."); *Rollolazo v. BMW of N. Am., LLC*, 2016 WL 9173465, at *3 (C.D. Cal. Sept. 15, 2016) ("The Court is unaware of any significant inconvenience, delay or expense to either party that would result from consolidation of the cases, particularly where all three cases are in the early stages of litigation. The Court has yet to set a trial date in any of the actions, and the parties have not started discovery."). One court aptly explained the significant efficiencies of consolidating cases like the ones at bar in these early stages:

> [C]oordinated discovery will allow the parties to make and respond to fewer discovery requests. Further, consolidated actions will permit the parties to coordinate their motions to eliminate unnecessary and duplicitous arguments. Additionally, consolidated actions will help the Court and the parties sort out the larger scheme at issue in this case. Additionally, a consolidated trial will substantially reduce burdens on all involved. For one, these related cases are likely to share key witnesses. By requiring those witnesses to appear only once, rather than four times, consolidation will significantly reduce their burden. Further, the parties' pleadings share numerous common issues of fact that need only be proven once. Eliminating the need to prove these factual contentions four times will certainly reduce the burden on the parties and the Court. Finally, by bringing all of these actions into a single

---

[10]      Every case cited by Defendants for this proposition denied consolidation *after* a motion to dismiss was granted. Dkt. 49 at 15, n.5. But again, this argument presupposes Defendants' hotly contested motion for dismissal will be granted, *see supra* Note 9, and ignores the fact that dismissal of Thier or Frederick-Osborne from the complaints would simply result in their filing separate cases and subsequently moving for consolidation to the detriments of efficiency and judicial economy, *see supra* pp. 10–11.

13

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE CASES
CASE NO. 4:22-CV-07226-AMO

case, the Court's burden in managing all of them will be lessened significantly.

*Dusky v. Bellasaire Invs.*, 2007 WL 4403985, at *6 (C.D. Cal. Dec. 4, 2007). And Defendants put it best in their letter attempting to consolidate the parallel cases for employees who had signed arbitration agreements:

> Given the identical and/or overlapping legal claims and factual allegations in these thousands of pending matters, a coordinated, universal discovery plan is imperative to litigate these matters efficiently, effectively, and fairly. Thoughtful coordination on the front-end across all pending matters will result in speedier resolutions, while also preventing prejudice, undue burden and waste of resources and expense for the parties and JAMS[, the arbitration administrator]. Indeed, a coordinated, universal plan is the only practical way to resolve such an enormous number of similar arbitration matters….
> On April 25, 2022, X Holdings I, Inc. and X Holdings II, Inc. entered into an Agreement and Plan of Merger with Twitter ("Merger Agreement"). The merger ultimately closed on October 27, 2022. After the close, Twitter reorganized the business to improve its financial health and to become more profitable. As part of this ongoing reorganization, Twitter made the difficult decision to downsize its workforce and realign its operations…. Since the deal closed last Fall, numerous former employees have filed significant and widespread litigation surrounding Twitter's decisions. In addition to nine (9) pending civil lawsuits alleging individual, class action and collective action claims (as well as California Private Attorneys General Act representative action claims), in federal and state courts in California and federal court in Delaware, approximately 2,000 former Twitter employees have filed individual arbitration demands with JAMS (and also AAA2). Every demand is rooted in the same core fact – a post-merger separation…. Similarly, with respect to the approximately 2,000 mass arbitrations that these four law firms have filed against Twitter, implementing a universal discovery protocol is reasonable and appropriate—indeed, necessary—to eliminate duplicative discovery, prevent inconsistent prehearing rulings, and conserve the resources of the parties, their counsel, JAMS, and its arbitrators. These arbitrations require a consolidated discovery protocol because of the substantial overlap of facts (which will frequently be identical) and law across all claimants, and the sheer volume of demands that claimants and their lawyers have filed against Twitter…. In the absence of an agreed-upon universal discovery protocol, adjudicating these approximately 2,000 arbitrations will be wholly impractical, there will be countless duplicative and unnecessary disputes, as well as the potential for inconsistent and even conflicting rulings, and the parties will waste enormous amounts of time, resources (including JAMS') and effort across the arbitrations.

Dkt. 41-6 at 1–6. The same is true in these cases: Without consolidation, there will be tremendous duplication in discovery, witness testimony, judicial resources, and the like, and there will be a very real and palpable potential for inconsistent and conflicting rulings. As such, consolidation is appropriate.

Finally, Defendants' argument — citing the fact that Judge Tigar already issued a single ruling — that "[r]e-assigning these cases now would create the very inefficiencies that consolidation is meant to avoid" because "[t]his Court should not shoulder the burden of getting up to speed on *Strifling* and *Zeman*," is inapposite. Dkt. 49 at 16. If these cases are not consolidated, *all three* judges (and any judges in subsequently filed cases) will need to get and remain "up to speed" on these claims, as opposed to one single judge. As such, avoiding duplication of judicial efforts cuts in favor of consolidation.

### III. CONCLUSION

For the forgoing reasons, as well as those contained in Plaintiffs' Motion to Consolidate Cases, Plaintiffs respectfully request that the Court consolidate the *Borodaenko*, *Strifling*, and *Zeman* cases pursuant to Fed. R. Civ. P. 42, or in the alternative relate them pursuant to Local Rule 3-12.

Respectfully submitted,

DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:          June 27, 2023

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on June 27, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE CASES
CASE NO. 4:22-CV-07226-AMO