MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:   +1.650.843.4000
Fax:   +1.650.843.4001

Attorneys for Defendants
TWITTER, INC. and X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:22-cv-07226-AMO<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:   July 27, 2023<br>Time:   2:00 p.m.<br>Judge:   Hon. Araceli Martinez-Olguin |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
Case No. 3:22-cv-07226-AMO

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................... 1

II. ARGUMENT ...................................................................................................................... 2

    A. Plaintiffs Fail to State a Claim for Discrimination Under the ADA or FEHA. ..................................................................................................................... 2

        1. Intentional Disability Discrimination Has Not Been Sufficiently Pled. ......................................................................................................... 2

            a. The SAC Lacks Facts Showing Twitter Had the Requisite Discriminatory Intent. ..................................................................... 2

            b. The SAC Lacks Facts Showing that Twitter Engaged in a Pattern or Practice of Disability Discrimination. ............................ 4

        2. Plaintiffs Fail to State a Disparate Impact Disability Discrimination Claim. ............................................................................................................ 5

            a. The SAC Lacks Facts Showing Any Disparity. ............................... 5

            b. Plaintiffs' Disparate Impact Claim Cannot Be Based on a Combination of the November 4 RIF, the Return-to-Work Directive, and the November 16 Twitter 2.0 Email. ........................ 7

    B. The Court Should Strike or Dismiss Plaintiff Thier From the SAC. ..................... 8

    C. Plaintiff Thier Fails to State a Claim for Sex Discrimination under Title VII. ....................................................................................................................... 10

        1. The SAC Does Not Plausibly Plead Sex-Based Disparate Treatment ...... 10

        2. The SAC Does Not Plausibly Plead Sex-Based Disparate Impact ........... 12

    D. Because Neither Plaintiff Was Laid Off in the RIF, They Lack Standing to State a Claim Related to the Allegedly Discriminatory RIF. ................................ 13

    E. Plaintiffs' Putative Class Action Claims Should Be Stricken. .............................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
Case No. 3:22-cv-07226-AMO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska v. Fed. Subsistence Bd.*,
   544 F.3d 1089 (9th Cir. 2008) ............................................................................................... 7

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ............................................................................................................ 1, 9

*Amparan v. Plaza Home Mortg., Inc.*,
   2009 WL 2776486 (N.D. Cal. Aug. 28, 2009) ....................................................................... 9

*Arnold v. Sessions*,
   No. 4:18-CV-00553-KAW, 2018 WL 6728008 (N.D. Cal. Dec. 21, 2018) ............................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 1, 3, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 1, 3, 7

*Bush v. Vaco Tech. Servs., LLC*,
   No. 17-CV-05605-BLF, 2018 WL 2047807 (N.D. Cal. May 2, 2018) ................................ 15

*DeLeon v. Wells Fargo Bank, N.A.*,
   No. 10-CV-01390-LHK, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010) ................................ 8

*Diaz v. Jiten Hotel Management, Inc.*,
   762 F. Supp. 2d 319 (D. Mass. Jan. 20, 2011) ....................................................................... 4

*Enoh v. Hewlett Packard Enter. Co.*,
   2018 WL 3377547 (N.D. Cal. July 11, 2018) ...................................................................... 12

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................................. 14

*Hernandez v. MidPen Housing Corp.*,
   2014 WL 2040144 (N.D. Cal. May 16, 2014) ....................................................................... 4

*Ho v. Ernst & Young LLP*,
   2007 WL 2070216 (N.D. Cal. July 17, 2007) ....................................................................... 9

*In re Asyst Technologies Inc. Derivative Litigation*,
   2008 WL 4891220 (N.D. Cal. Nov. 12, 2008) ....................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
Case No. 3:22-cv-07226-AMO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Jameson Beach Property Owners Association*,
  No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253 (E.D. Cal. Sept. 29, 2014) .................. 8, 9

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ........................................................................................... 10

*Jue v. Costco Wholesale Corp.*,
  No. C 10–00033–WHA, 2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ................................ 15

*Liu v. Uber Techs. Inc.*,
  2022 WL 4494149 (N.D. Cal. Sept. 28, 2022) ...................................................................... 7

*Liu v. Uber Techs. Inc.*,
  551 F. Supp. 3d 988 (N.D. Cal. 2021) ......................................................................... 5, 6, 7

*Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*,
  964 F.2d 106 (2d Cir. 1992) ................................................................................................. 6

*Martinez v. New York City Transit Authority*,
  672 Fed. Appx. 68 (2d Cir. 2016) ............................................................................ 4, 10, 11

*Palasota v. Haggar Clothing*,
  342 F.3d 569 (5th Cir. 2003) .................................................................................... 4, 10, 11

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006) .......................................................................................... 9

*Personnel Adm'r of Massachusetts v. Feeney*,
  442 U.S. 256 (1979), *aff'd*, 678 F.3d 1075 (9th Cir. 2012) .................................................. 3

*Pottenger v. Potlach Corp.*,
  329 F.3d 740 (9th Cir. 2003) .............................................................................................. 14

*Rockmond Dunbar v. The Walt Disney Co., et al.*,
  No. CV 22-1075-DMG (JCX), 2022 WL 18357775 (C.D. Cal. July 25, 2022) ................ 5, 7

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................................... 14

*Sokol v. New United Mfg., Inc.*,
  No. C 97-4211-SI, 1999 WL 1136683 (N.D. Cal. Sept. 20, 1999) ..................................... 15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Stockwell v. City & Cty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) .................................................................................................. 3, 8

*Stout v. Potter*,
   276 F.3d 1118 (9th Cir. 2002) .................................................................................................. 7, 8

*Travers v. Flight Servs. & Sys., Inc.*,
   737 F.3d 144 (1st Cir. 2013) ......................................................................................................... 4

*United States v. Trident Seafoods Corp.*,
   60 F.3d 556 (9th Cir. 1995) .......................................................................................................... 7

*Urista v. Bank of America, N.A.*,
   No. C11-03097 HRL, 2012 WL 10596 (N.D. Cal. Jan. 3, 2012) ................................................. 9

*Usher v. O'Reilly Automotive, Inc.*,
   2014 WL 12597587 (C.D. Cal. May 27, 2014) ........................................................................... 4

*Wixon v. Wyndham Resort Development Corp.*,
   2010 WL 424603 (N.D. Cal. Jan. 27, 2010) ................................................................................ 9

*Wood v. City of San Diego*,
   2010 WL 2382335 (S.D. Cal. June 10, 2010) ............................................................................. 3

*Zamora v. Penske Truck Leasing Co., L.P.*,
   No. 220CV02503ODWMRWX, 2021 WL 809403 (C.D. Cal. 2021) ....................................... 15

*Zampierollo-Rheinfeldt v. Ingersoll-Rand De P.R., Inc.*,
   999 F.3d 37 (1st Cir. 2021) .......................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................ 11

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 12

Fed. R. Civ. P. 12(f) ......................................................................................................................... 2

Fed. R. Civ. P. 15 ............................................................................................................................ 10

-iv-

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND/OR STRIKE
Case No. 3:22-CV-07226-AMO

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.  INTRODUCTION

In its May 5, 2023 Order (the "May 5 Order") (ECF No. 35) dismissing the disability discrimination claims alleged in the First Amended Complaint, the Court gave a clear explanation of why these claims failed.  Despite a "second bite at the apple" to attempt to remedy these defects, the Second Amended Complaint ("SAC") still fails to plead facts sufficient to state a claim for disability discrimination—under either a disparate treatment or disparate impact theory.  The SAC fails to plausibly allege that Twitter possessed discriminatory intent—an essential prerequisite for a disparate treatment claim.  The SAC also fails to plausibly allege the existence of any actual disparity between disabled and non-disabled employees resulting from any allegedly uniform unlawful practice by Twitter, focusing instead on Plaintiffs' purely individual circumstances and how they "felt."  As a result, the disability discrimination claims in the SAC fall far short of the *Twombly/Iqbal* standard and, once again, should be dismissed by the Court.

As the Court is aware, the May 5 Order did not address claims for sex discrimination because such claims were not in the case.  They are alleged for the first time in the SAC through the addition of a new named plaintiff, Hana Thier.  The addition of Thier exceeded the permissible scope of amendment allowed by the May 5 Order.  Realizing this, Plaintiffs maintain that Thier was added to address the deficiencies in the disability discrimination claims but *had to* assert sex discrimination claims as well because of the prohibition on claims splitting.  Even if true, Plaintiffs fail to address, let alone explain, why these supposed claims-splitting concerns justify Thier's assertion of *class action* sex discrimination claims.  Claim-splitting concerns would be fully dispelled by her simply asserting *individual* claims, and she cites no applicable law justifying the addition of *class* claims based on supposed claims-splitting concerns here, particularly given that identical class action sex discrimination claims had previously been alleged and were already pending in the *Strifling* action (in which Thier is a putative class member and, as result, the statute of limitations on her claims is currently tolled, *see Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).

Plaintiffs' addition of Thier's class action sex-discrimination claims in this Action was a direct response to the Court's order granting Twitter's motion to dismiss in *Strifling* (*see* Case 4:22-

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

-1-

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
Case No. 3:22-cv-07226-AMO

cv-07739-JST, ECF No. 38), as well as three events that occurred in this Action: (1) the May 5 Order dismissing the FAC; (2) Judge Gilliam's May 10, 2023 reassignment of this case to Your Honor; and (3) Your Honor's denial of the motion to relate this case to *Strifling* and *Zeman* on May 23, 2023 (ECF No. 41)—the latter occurring only three days prior to the date that Plaintiffs filed the SAC. The true reason that Thier asserted *class action* sex discrimination claims in the SAC was to manufacture a purported rationale for consolidation with *Strifling*, as evidenced by Plaintiffs' moving for consolidation only 11 days after filing the SAC. *See* ECF Nos. 42, 46. The Court should dismiss or strike Thier from the SAC or, at a minimum, dismiss or strike her putative class action sex discrimination claims as exceeding the permissible scope of amendment. Even if Thier's inclusion in the SAC were permissible, her sex discrimination claims nonetheless suffer from the same defects as Plaintiffs' flawed disability discrimination claim, namely, Thier fails to plausibly allege facts sufficient to state a claim for either disparate treatment or disparate impact discrimination and, as a result, such claims should be dismissed.

Finally, while Twitter recognizes that striking putative class claims under Rule 12(f) generally is disfavored, this case presents the circumstances in which doing so is entirely justified. Here, Plaintiffs seek to represent *all* supposedly "disabled" employees, regardless of their limitations and the many different types of accommodations that might be needed for their many different disabilities. Plaintiffs' class appears premised on the assumption that all "disabled" employees would "feel" and act the same way they do, which on its face is not plausible. Whether a person even qualifies as disabled is an inherently individualized inquiry, and the SAC contains no allegations to plausibly indicate that such a class would be ascertainable, absent thousands of individualized assessments, which would be antithetical to the class action device.

## II.     ARGUMENT

### A.     Plaintiffs Fail to State a Claim for Discrimination Under the ADA or FEHA.

#### 1.     Intentional Disability Discrimination Has Not Been Sufficiently Pled.

##### a.     The SAC Lacks Facts Showing Twitter Had the Requisite Discriminatory Intent.

"[T]he crux of a disparate treatment case is the subjective *motivation* for an adverse

employment decision." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1115 n.4 (9th Cir. 2014) (emphasis in original); *see also Wood v. City of San Diego*, 2010 WL 2382335, at *6 (S.D. Cal. June 10, 2010) (a plaintiff "must establish that the defendant implemented the policy 'because of, not merely in spite of,' its adverse effects on the protected group") (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979), aff'd, 678 F.3d 1075 (9th Cir. 2012)).

The Court's May 5 Order dismissed the disability discrimination claims because the FAC failed to allege facts that "give rise to a reasonable inference that Defendant had a discriminatory motive or intent in issuing its policies or in terminating employees." ECF No. 35 at 5:22-24. Plaintiffs argue that additional allegations in the SAC give rise to such an inference. They cite the allegation that "Musk's declaration that only 'exceptional' employees would be permitted to work from home 'made it clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation.'" Opp. at 12:17-20. Even given the most liberal interpretation, suggesting that "exceptional" means "non-disabled,"—such that use of this word created a plausible, reasonable inference of discriminatory intent—is not only offensive, but purely speculative and conclusory and insufficient under *Twombly*/*Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) ("mere conclusory statements . . . do not suffice"). Such an interpretation also relies on the implausible assumption that *all* disabled employees required remote work as a reasonable accommodation, regardless of their disability.

Plaintiffs also cite a handful of Musk's tweets and statements to argue that he "has been 'openly hostile toward disabled employees and insinuated they are lazy'" and "harbored discriminatory animus toward" disabled employees.[1] Opp. at 12:20-13:5. However, the *Strifling* court already rejected similar attempts to rely on Musk's public statements as sufficient evidence of discriminatory intent. *See* RFJN, Ex. 7 at 10:7-8 ("Plaintiffs' inclusion of 'several of Musk's public statements' … do[es] not cure this deficiency"). Plaintiffs' only response is that Judge Tigar's reasoning in *Strifling* "was flawed." Opp. at 14 n.9. Plaintiffs' reliance on a handful of

---

[1] As explained in Twitter's Motion, Plaintiffs misleadingly present these tweets/statements without their full accompanying context. *See* Motion at 9 n.6. Also, two of these statements were made *four and six months after* the RIF and Post-RIF Policies (*i.e.*, the November 9 return-to-office directive and the November 16 Twitter 2.0 Email) were implemented, eliminating any ability to plausibly draw from them a reasonable inference of discriminatory intent. *Id.*

*non-binding* cases that supposedly reached contrary results is misplaced because the allegations in those cases are objectively quite different from Musk's tweets/statements here. For example, in *Hernandez v. MidPen Housing Corp.*, 2014 WL 2040144, at *3 (N.D. Cal. May 16, 2014), the plaintiff alleged that a supervisor had stated she "did not like the way Russian people spoke," had "indicated that she believed Russian people are opinionated and outspoken and [she] did not like that," and had declined to promote at least two Russian employees because doing so would "send the wrong message to the company." In *Usher v. O'Reilly Automotive, Inc.*, 2014 WL 12597587, at *1 (C.D. Cal. May 27, 2014), the plaintiff alleged that his direct supervisors and managers "repeatedly" made disparaging age-related comments to him, that age harassment was an "everyday occurrence," and that a manager told him that leadership intentionally changed his job schedule "in hopes that [he] would quit voluntarily due to his age."[2] Likewise, neither *Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144 (1st Cir. 2013), nor *Zampierollo-Rheinfeldt v. Ingersoll-Rand De P.R., Inc.*, 999 F.3d 37 (1st Cir. 2021), involve factual allegations analogous to those Plaintiffs rely on to supposedly support a reasonable inference of discriminatory intent.

      b. <u>The SAC Lacks Facts Showing that Twitter Engaged in a Pattern or Practice of Disability Discrimination.</u>

Plaintiffs argue that "since Musk acquired Twitter, discrimination has been its modus operandi." Opp. at 15:3-4. Unsupported rhetoric cannot remedy the SAC's lack of substantive factual allegations. Judge Tigar properly rejected this same argument in *Srifling*, dismissing Plaintiffs' conclusory claim that Musk engaged in a pattern and practice of discrimination since acquiring Twitter. *See* RFJN, Ex. 7 at 9:6-13 (citations omitted) (analyzing the same RIF and Post-RIF Policies and holding that they "are two discrete acts insufficient to support the allegation that discriminatory conduct was 'a routine and regular part' of Twitter's workplace"). Here,

---

[2] Plaintiffs' reliance on the following cases is similarly misplaced. *See also Martinez v. New York City Transit Authority*, 672 Fed. Appx. 68, 71 (2d Cir. 2016) (the Senior Director of plaintiffs unit asked whether she could retire "and make room for the younger generation"); *Palasota v. Haggar Clothing*, 342 F.3d 569, 577-578 (5th Cir. 2003) (executive commented the company needed "race horses, not plow horses," that plaintiff's sales techniques were "old school," and there was a "graying of the sales force"); *Diaz v. Jiten Hotel Management, Inc.*, 762 F. Supp. 2d 319 (D. Mass. Jan. 20, 2011) (plaintiff's direct manager told her that she was "getting old," "asked when she was going to retire," and told her that she was "going to convert this hotel into a nursing home" when she hired someone over the age of 50).

Borodaenko was not subject to the November 4 RIF and he did not receive the November 16 email asking employees to commit to working long hours at high intensity (the "Twitter 2.0 Email"). Rather, he was fired on November 15, 2022. Thier also was not subject to the November 4 RIF. She voluntarily chose to not continue her employment after receiving the Twitter 2.0 Email. Thus, nothing in the SAC plausibly alleges any "pattern and practice" of discriminatory conduct.

### 2. Plaintiffs Fail to State a Disparate Impact Disability Discrimination Claim.

#### a. The SAC Lacks Facts Showing Any Disparity.

"Although a plaintiff need not provide comprehensive statistical evidence at the pleading stage, he still must allege specific facts from which a reasonable inference can be drawn that an employment practice broadly impacts a certain group in an adverse manner—not merely a single person." *Rockmond Dunbar v. The Walt Disney Co., et al.*, No. CV 22-1075-DMG (JCX), 2022 WL 18357775, at *2 (C.D. Cal. July 25, 2022); *see Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021) ("Ultimately, all that [plaintiff] has alleged so far is that he himself was terminated, and the Court cannot draw an inference of disparity from a single data point."); *Arnold v. Sessions*, No. 4:18-CV-00553-KAW, 2018 WL 6728008, at *9 (N.D. Cal. Dec. 21, 2018) ("Plaintiff fails to allege any facts establishing women, or even another woman ... were subject to 'a significantly adverse or disproportionate impact' as a result of the [policy].").

Here, the Court's Order dismissing Borodaenko's disability discrimination claims noted that he had not alleged, for example, that disabled employees resigned "at higher rates than their non-disabled colleagues." *See* ECF No. 35. The SAC does not address that deficiency. The Court further explained that it was simply "not enough for Plaintiff to assert that 'it is reasonable to infer' that Defendant's new policies 'would have a disparate impact on individuals with disabilities who either cannot physically report to an office . . . or perform at such a level, without incurring risks to their health, and/or who require reasonable accommodations to complete their work.' […] Plaintiff must provide factual support for this conclusion." *Id.* The SAC does not address that deficiency, either. In dismissing his disability discrimination claims, the Court observed that "Plaintiff has failed to plausibly allege that a disparity actually exists here." ECF No. 35 at 6:12. The Court declined to "draw an inference of disparity from a single data point," namely Borodaenko's unique

circumstances, and determined that "Plaintiff must provide factual support" for the conclusion that "'it is reasonable to infer' that Defendant's [Post-RIF Policies] 'would have a disparate impact on individuals with disabilities…'" *Id.*, at 6:17-24. The SAC does not correct any of these deficiencies.

Plaintiffs argue that they cured these defects by adding Thier. Opp. at 8:22-9:6. Not so. Adding Thier remedies none of these failings because Thier's individual circumstances are just as unique as Borodaenko's and similarly insufficient to plausibly show a disparity as to all disabled employees. For example, the SAC alleges that "[f]ollowing Musk's ultimatum, *Ms. Thier felt* that *she* could no longer work at Twitter, given *her* disability [depression]. *She* needed a stable work environment with clear and reasonable expectations. As such, *she* did not click yes on the ultimatum link that Musk sent employees on November 16, 2022." SAC ¶ 52 (emphasis added). This allegation makes clear the uniquely individual nature of her claim and, as Judge Gilliam previously found, is the type of "single data point" from which the Court cannot draw "an inference of disparity." Thier's allegations "essentially skip[] over the first element" of Plaintiffs' disparate impact discrimination claim (*i.e.*, the requirement to "plausibly alleg[e] that a disparity actually exists"). *See Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021).[3] As the court in *Liu* recognized, a plaintiff is required to make "a more sophisticated effort at the front end to develop a plausible factual basis" in support of their disparate impact disability discrimination claims. *Id.* at 991. Here, the SAC makes clear that Plaintiffs have "not yet done this legwork," and have not plausibly pleaded any actual disparity. *Id.* The addition of Thier provides no factual support for Plaintiffs' claim that Twitter's actions disparately impacted employees with disabilities.

Plaintiffs also argue that "Musk's declaration that almost all employees would need to work out of physical offices 'made it clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation.'" Opp. at 8:19-

---

[3] A plaintiff cannot recast a claim for intentional discrimination as a disparate impact claim when the "premise for disparate impact liability coalesces with the discharge which [the plaintiff] claims to have constituted disparate treatment." *Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992). Otherwise, a disparate impact theory would simply "provide a means to circumvent the subjective intent requirement in any disparate treatment case." *Id.* Here, the gravamen of Plaintiffs' allegations is that Twitter intentionally targeted disabled employees for termination. Plaintiffs cannot circumvent the pleading requirements of a disparate treatment claim through the expedient of placing the "disparate impact" label on their discrimination allegations.

22. But this allegation constitutes nothing but conclusory argument, which does not pass muster under *Twombly/Iqbal*. It also lacks any of the requisite "specific facts from which a reasonable inference can be drawn" that the return-to-office directive broadly impacted *all* disabled employees in an adverse manner. *Rockmond Dunbar*, WL 18357775, at *2.

Plaintiffs' Opposition relies significantly on an EEOC amicus brief submitted in *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, a disparate impact case brought by Plaintiffs' counsel, which Judge Chhabria dismissed four times. Plaintiffs argue, essentially, that the EEOC's interpretation of federal pleading standards should override the district court's ruling. Opp. At 11:3-6 ("Plaintiffs respectfully maintain that the Court [i.e., Judge Gilliam] took too stringent a view of the pleading requirements for a disparate impact claim in dismissing [the FAC]"). According to the EEOC's amicus brief, a plaintiff need only allege facts suggesting that a practice "could plausibly cause a disparate impact." *Liu v. Uber Techs. Inc.*, 2022 WL 4494149, at *2 (N.D. Cal. Sept. 28, 2022). Not surprisingly, Plaintiffs cite not a single case that reduces *Twombly*'s actual plausibility standard to a "could be plausible" standard. And of course, the EEOC's amicus-brief advocacy about federal pleading standards has no bearing on the present Motion. *See, e.g.*, *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) (agency position entitled to "no deference" where is it not the result of "any legally-binding regulation or in any official agency interpretation of the regulation"); *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position.").

    b. <u>Plaintiffs' Disparate Impact Claim Cannot Be Based on a Combination of the November 4 RIF, the Return-to-Work Directive, and the November 16 Twitter 2.0 Email.</u>

Plaintiffs impermissibly attempt to combine the November 4 RIF, the Post-RIF return-to-office directive, and the November 16 Twitter 2.0 Email into a single "mass layoff". Opp. at 15 n.11; *see also* Opp. at 21:13-21 (urging this Court to "look[] at the big picture" and treat all of the allegedly discriminatory employment actions as "part and parcel of the mass layoff"). Analyzing individual practices, however, is precisely what the law requires in a disparate impact claim. *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002) (citations omitted) ("A plaintiff establishes a prima

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
Case No. 3:22-cv-07226-AMO

facie case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion"); *see also Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (citations omitted) ("'Identifying a specific practice is not a trivial burden' in [] discrimination cases alleging disparate impact").

The allegations in the SAC make clear that the November 4 RIF, the return-to-office directive, and the November 16 Twitter 2.0 Email were separate actions. *See, e.g.,* SAC ¶¶ 29 and 47. Plaintiffs cannot combine these two discrete actions into a single "specific practice" for purposes of their disparate impact claim. *See Stout*, 276 F.3d at 1121; *Stockwell*, 749 F.3d at 1114.

### B. The Court Should Strike or Dismiss Plaintiff Thier From the SAC.

The addition of Thier to the SAC exceeds the scope of amendment allowed by the Court's May 5 Order, which granted Plaintiff Borodaenko leave to file an amended complaint to address the deficiencies that the Court identified regarding his disability discrimination claims. *See* ECF Nos. 35 ("The Court [] GRANTS the motion to dismiss as to Plaintiff Borodaenko's claims. [...] **Plaintiff** may file an amended complaint within 21 days of the date of this order.") (emphasis added); *see also* ECF No. 47 at p. 13:4-6. Nowhere in the Court's Order did the Court authorize the addition of a new named plaintiff and/or new claims for sex discrimination. In such circumstances, a court may dismiss or strike the newly added plaintiff or claims. *See* Motion at 12:8-13:3 (collecting authorities). Plaintiffs' Opposition largely fails to address these cases.

Plaintiffs cite *Jameson Beach Property Owners Association*, No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014). In that case, however, the court recognized that "[w]hen the language of an order clearly states that a plaintiff may only amend to address certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding new claims or parties." *Id.* Moreover, the *Jameson Beach* court relied on a prior decision from the Northern District, which found that "the plaintiff was not allowed to add new claims to the complaint when its previous order [...] granted leave to amend with respect to certain claims to give the plaintiff an opportunity to allege more facts." *Id.* (citing *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *5 (N.D. Cal. Oct. 22, 2010)). Following *DeLeon*, the *Jameson Beach* court examined its prior order and concluded that "[w]ithin the Order

itself, the Court specifically identified the deficiency to be cured" with respect to a specific claim. *Id.* Because the order was "specific about the purpose of the limited leave granted," the court granted defendant's motion to strike. *Id.*

Plaintiffs also rely on *In re Asyst Technologies Inc. Derivative Litigation*, 2008 WL 4891220, at *3. But there, the court allowed the amendment because the newly added plaintiff was already a plaintiff in a consolidated case. That situation does not exist here. Plaintiffs also argue that "courts routinely allow amendments in the context of class litigation to add new named plaintiffs." Opp. at 20:4-6. Unlike in the cases they cite, however, Plaintiffs never sought leave to add a new class representative. *See Amparan v. Plaza Home Mortg., Inc.*, 2009 WL 2776486, at *1 (N.D. Cal. Aug. 28, 2009) (granting plaintiff's motion for leave to file an amended complaint in order to add additional class representatives); *Wixon v. Wyndham Resort Development Corp.*, 2010 WL 424603, at *1 (N.D. Cal. Jan. 27, 2010) (same); *Ho v. Ernst & Young LLP*, 2007 WL 2070216, at *1 (N.D. Cal. July 17, 2007) (same); *Palmer v. Stassinos*, 236 F.R.D. 460, 463 (N.D. Cal. 2006) (same).[4]

Even if Plaintiffs could establish that the addition of Thier was permissible to address deficiencies with Borodaenko's disability discrimination claims, no legitimate basis exists for adding class-action sex-discrimination claims. Plaintiffs argue that the inclusion of Thier's sex discrimination claims was "necessitated by Plaintiffs' valid concerns about claim splitting." When Plaintiffs filed the SAC, class-action sex-discrimination claims were already pending in *Strifling*, and Thier is a member of that putative class. Thier did not need to separately allege a sex-discrimination claim here (much less on a class basis), as her claims are already being prosecuted on her behalf in *Strifling*.[5] The addition of class-action sex-discrimination claims was clearly done in bad faith for strategic purposes, and the Court must view the addition of these claims through

---

[4] Plaintiffs also cite *Urista v. Bank of America, N.A.*, No. C11-03097 HRL, 2012 WL 10596, at *6 (N.D. Cal. Jan. 3, 2012), in which the court concluded that it had previously granted plaintiff leave to amend without limitation. Even so, the court emphasized that "plaintiff would have been prudent to request leave to amend to add new claims and parties." *Id.* at *6. Borodaenko never sought such leave here.

[5] To the extent Thier argues that she *had to* pursue sex-discrimination claims in this action to preserve the statute of limitations, her argument is without merit because the statute of limitations on her claims is tolled under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552-553 (1974).

the lens of Plaintiffs' motion to consolidate with the *Strifling* and *Zeman* actions. The following chronology of events is illustrative: After this Court granted Twitter's motion to dismiss the FAC and Judge Tigar granted Twitter's motion to dismiss in *Strifling*, Judge Gilliam transferred this case to Your Honor. ECF No. 37. Seeing an opportunity for judge-shopping, Plaintiffs promptly filed a motion to relate *Strifling* and *Zeman* to this Action, which is the first-filed case. ECF No. 38. This Court denied that motion. ECF No. 41. Three days later, Plaintiffs violated this Court's May 5 Order by filing an amended complaint that purported to add Thier's class-action sex-discrimination claims. Plaintiffs' counsel then promptly proceeded to file a motion to consolidate, using the sex-discrimination class claims in the SAC as a springboard for consolidation. Such bad faith conduct provides yet another reason to decline Plaintiffs' request to excuse their unauthorized amendments.[6]

### C. Plaintiff Thier Fails to State a Claim for Sex Discrimination under Title VII.

#### 1. The SAC Does Not Plausibly Plead Sex-Based Disparate Treatment

Thier fails to state a sex discrimination claim under a disparate treatment theory because she offers zero evidence of discriminatory animus in the RIF or Post-RIF Policies. In her opposition, Thier argues that her allegations about Musk's stray remarks are sufficient to plausibly plead discriminatory intent. Opp. at 17:15-20. She dispenses with the dismissal order in *Strifling* by summarily concluding that Judge Tigar "failed to give adequate credence to Musk's sexist comment." Opp. at 17:23-24. In asking this Court to disagree with Judge Tigar's analysis in *Strifling*, Thier cites *Martinez* and *Palasota*. Tellingly, she does not describe either case's holding. Opp. at 17:26. That may be because her allegations of discriminatory intent pale in comparison. In *Martinez*, the Second Circuit found much more than a mere stray remark when the plaintiff's skip-level supervisor, who was the plaintiff's "primary reviewer" for purposes of the layoffs, asked the plaintiff to retire in "the midst of the RIF" and told her that "[p]eople who are eligible to retire should retire and make room for the younger generation." *Martinez v. New York City Transit Auth.*, 672 F. App'x 68, 71-72 (2d Cir. 2016). Similarly, in *Palasota*, the plaintiff created a triable issue of fact in demonstrating his employer's campaign to "portray a younger image" by replacing older

---

[6] Although Plaintiffs never filed a motion for leave to amend under Rule 15, had they done so this Court could have denied such motion on the grounds that the amendment was sought in bad faith. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

sales associates with younger associates, management's instructions that human resources create a severance program for associates "with this same amount of tenure who are in their early fifties or older" to aid the "transition" to younger salespersons, statements that plaintiff should take a less profitable sales territory or severance, and derogatory comments about the plaintiff being "old school" and about the broader "ageing, graying sales force." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 572-73, 577-78 (5th Cir. 2003).  These facts are nothing like Thier's allegations about Musk's public comments, which have no alleged connection to the RIF or Post-RIF Policies.  Nor does Thier allege that Musk ever directly considered whether to "constructively discharge" her or other women (or men).  While Thier tries to distinguish *Strifling* because that decision included only Musk's comments **before** acquisition, this does not move the needle.  Opp. at 17:26-18:1. Thier alleges only one purportedly sex-related allegation about Musk's intent after acquisition: that he had the "w" in Twitter painted white.  SAC ¶ 60 (April 2023).  This incident is several months before the November RIF and Post-RIF Policies, and the long-standing rationale expressed in *Strifling* still applies: "[i]solated remarks, unrelated to the discriminatory employment decision, are generally insufficient to establish discriminatory intent." RFJN, Ex. 7 at 10:14-15.

        Thier's reliance on *Martinez* and *Palasota* highlight another fatal flaw in her claims:  she fails to allege that a decisionmaker made a sexist (or ableist) comment about her in the decision-making process because she was never subject to an adverse action or decision by Twitter.  She voluntarily quit after Musk acquired Twitter; that is, ***she*** was the decisionmaker about her employment status.  To circumvent this problem, she alleged her resignation was a "constructive discharge," which she agrees requires demonstrating "intolerable" working conditions that would compel any reasonable person to resign.  Opp. at 16:20-17:6. Unable to allege facts that plausibly meet the high bar for constructive discharge, however, Thier instead asks this Court to discard her Rule 12 pleading burden because the issue of constructive discharge often involves a "question of fact . . . left for a trier of fact to determine." *Id.*; *see also* Mot. at 20:2-18 (summarizing inadequacy of allegations for "constructive discharge").  This is nonsense.  Whether something is a question of fact for trial does not eliminate the requirement that she, like any plaintiff, at the outset, must plead

a *plausible* legal claim to withstand a Rule 12(b)(6) challenge.[7]

### 2. The SAC Does Not Plausibly Plead Sex-Based Disparate Impact

Thier does not plausibly allege sex discrimination under a theory of a disparate impact because she fails to identify and isolate a ***specific*** employment practice or ***causation*** between such a practice and the alleged disparity between men and women.

First, the SAC does not identify a specific policy that is responsible for the purported disparity among men and women who left the company. Mot. at 18:23-19:2. Thier admits that she attempts to group "several different methods" of downsizing as her challenged policy or practice, stating that the "mass layoffs . . . collectively included the November 4 layoffs, the layoffs resulting from November 16th ultimatum, and layoffs resulting from Musk's decision ending remote work." Opp. at 15:10-15. Thier also contends that the SAC allegations are "more exacting" than the RIF process in *Enoh*, cited by Twitter. Opp. at 15:18-19. Tellingly, she does not discuss the *Enoh* allegations nor identify any "exacting" allegations from the SAC. In *Enoh*, the plaintiff alleged that an "overwhelmingly Caucasian group of selectors" used "subjectivity and favoritism" to make employment decisions and relied on a "tap on the shoulder procedure" to give the best jobs to Caucasian employees. *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *4 (N.D. Cal. July 11, 2018). The SAC's allegations about the Post-RIF Policies are even more generic than the failed complaint in *Enoh*: the SAC here alleges only that in response to the Twitter 2.0 Email and the return-to-office directive, women and men chose to click "yes" to remain employed at Twitter at different rates. SAC ¶¶ 29, 47, 56.

Alternatively, Thier defends basing her disparate impact claim on vague employment practices by asserting that when "elements of a [employer's] decisionmaking process are not capable of separation for analysis," the decisionmaking process can be analyzed as one practice. Opp. at 10-15. But that is exactly the opposite of what the SAC alleges. Thier does not allege that the practice she challenges cannot be separated further for analysis; to the contrary, she concedes

---

[7] Thier's claim also fails because she does not dispute Twitter's argument and the *Strifling* holding that, by alleging discrete events, she has failed to allege that discrimination was "a routine and regular part of Twitter's workplace" as required to plead a pattern or practice claim of intentional discrimination. *Compare* Mot. at 16:9-13 (citing *Strifling*) *with* Opp. at 17:11-18:1.

that the SAC alleges Twitter used "several different methods" and identifies at least three: the November 4 "formal" layoffs, the Twitter 2.0 Email, and a decision to "end remote work." Opp. at 15:11-13, 16:6-7. Thier's amalgamation of involuntary layoffs with voluntary decisions to resign is not an indication that Twitter's decisionmaking process cannot be further separated. On the contrary, it highlights one of the insurmountable flaws in her claim: she, and others, ***voluntarily*** decided to quit after the Post-RIF Policies that she gratuitously describes as a "layoff." In other words, it is not that the "[employer's] decisionmaking process" that is "not capable of separation for analysis;" it is that Thier cannot isolate and identify the decisionmaking criteria and process of the hundreds or thousands of individuals who chose not to click "yes" to continued employment with Twitter, whether because of the long hours, the remote work, both, or because of the nearly infinite other reasons a person may choose to leave an employer. *See* Mot. at 19:5-13 (explaining that "bottom-line" figures like Thier's, about the percentage of women and men who clicked "yes," is not tied any alleged Post-RIF Policies).

Second, the fact that the decision to terminate employment was Thier's, and not Twitter's, is also why the SAC fails to plausibly allege a causal relationship between the Post-RIF Policies she challenges and the bottom-line purported disparity between women and men who opted out of employment. *See* Mot. at 10:28 (elements of disparate impact claim), 19:2-25 (explaining that because "employees chose whether to stay or leave Twitter, any purported causal chain between the SAC's bottom-line percentages and the Post-RIF Policies is broken"). She does not, and cannot, allege that the individuals choosing to resign did so because of anticipated long hours or the work-in-office requirement, rather than the myriad other, personal reasons for resigning. Notably, Thier does not respond to this argument and apparently concedes that she has not pled the requisite causal relationship. *See* Opp. at 15:5-18:1.[8]

**D.** **Because Neither Plaintiff Was Laid Off in the RIF, They Lack Standing to State a Claim Related to the Allegedly Discriminatory RIF.**

Plaintiffs cannot state a claim arising from Twitter's RIF because neither Plaintiff was laid

---

[8] Thier's argument that she need not plausibly plead "constructive discharge" because it is a "disputed question of fact" is incorrect. Opp. at 16:20-17:6. The legal standard for a summary judgment motion does not have any impact on Thier's obligation to plead a "plausible" claim under the legal standard at the pleading stage. *See* Section II(C)(1), *supra*.

off as part of the RIF. *See* RFJN, Ex. 7, at 12 n.9 (declining to consider disparate impact claim relating to policies that Twitter implemented after the plaintiffs were laid off); *Pottenger v. Potlach Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (affirming summary judgment on disparate impact claim because the plaintiff was not subject to the RIF he challenged). Plaintiffs argue that the Court should "look[] at the big picture" and consider all of the allegedly discriminatory employment actions "as a whole." Opp., 21:13-21. Plaintiffs cannot solve their standing problem by conflating the RIF and the Post-RIF Policies, and the SAC lacks plausible allegations to suggest that the RIF and the Post-RIF Policies are an undifferentiated whole. Plainly, the RIF could not have injured Plaintiffs because neither Plaintiff was impacted by the RIF, which negates their standing. *See* SAC, ¶ 41 (Borodaenko terminated on November 15, 2022 for violating company policy); SAC, ¶ 52 (Their voluntarily separated from Twitter when she declined to commit to "working long hours at high intensity"); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### E. Plaintiffs' Putative Class Action Claims Should Be Stricken.

Although motions to strike class allegations may be "disfavored," they are appropriate in certain instances. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citations omitted) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery"); *see also General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim"). This case is one of them.

The primary issue with Plaintiffs' putative class claims is the lack of allegations to plausibly suggest that all disabled employees are similar enough to warrant class treatment. Borodaenko alleges that he is immunocompromised and requires remote work as a reasonable accommodation. SAC, ¶ 36. Borodaenko implicitly wants the Court to assume that all disabled employees– *regardless of their disability*–need remote work as a reasonable accommodation, yet no factual allegations in the SAC support such an assumption. Borodaenko relies solely on his own circumstances. Similarly, Thier alleges that she suffers from depression and requires "a stable work environment with clear and reasonable expectations." SAC, ¶¶ 51-52. Thier alleges that, following

the Twitter 2.0 Email, she "felt she could no longer work at Twitter" and thus did not click "yes." *Id.*, ¶ 52. Thier asks this Court to assume that because she "felt" she could not "work long hours at high intensity," that all other disabled employees–*regardless of their disability*–would have "felt" similarly. No factual allegations warrant such an assumption. The putative sex discrimination claim that Thier seeks to prosecute suffers from these same flaws. For this reason, the putative class claims cannot lie. *See Zamora v. Penske Truck Leasing Co., L.P.*, No. 220CV02503ODWMRWX, 2021 WL 809403, at *3 (C.D. Cal. 2021) ("Whether Plaintiff[] adequately allege[s] claims on [his] own behalf is beside the point"); *Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2018 WL 2047807, at *6 (N.D. Cal. May 2, 2018) (dismissing class claims because complaint was "completely devoid of any allegations tying [plaintiff's] experience to the thousands of individuals" in the putative class); *Jue v. Costco Wholesale Corp.*, No. C 10–00033–WHA, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010) ("Class allegations must [be] supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted"). Courts are hesitant to certify disability discrimination claims, in particular, as class actions due to the individualized inquiries required in such claims. *See, e.g., Sokol v. New United Mfg., Inc.*, No. C 97-4211-SI, 1999 WL 1136683, at *6 (N.D. Cal. Sept. 20, 1999) (holding that it was impossible "to determine the legitimacy of the 'procedures' employed by [the defendant] under the ADA without scrutinizing the interactive accommodations process with respect to *individual* class members" and "the interactive process will vary widely between employees with different disabilities and job functions").

Here, evaluating whether Twitter's Post-RIF Policies were discriminatory as to all disabled employees would require the Court to analyze each employee's individual circumstances and whether they required a reasonable accommodation for their disability, whether Twitter's Post-RIF Policies ran afoul of those reasonable accommodations, and whether Twitter made any exceptions to its Post-RIF Policies for the specific individual employee. Such claims should be stricken.

July 7, 2023

MORGAN, LEWIS & BOCKIUS LLP

/s/ Eric Meckley
Eric Meckley
Attorneys for Defendants