UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMITRY BORODAENKO, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>TWITTER, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-07226-AMO<br><br>**ORDER RE MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 47 |

This is a putative class action involving claims of employment discrimination. Before the Court is Defendants Twitter, Inc.'s and X Corp.'s motion to dismiss the Second Amended Complaint and to strike portions thereof. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for June 20, 2024, was VACATED. *See* Civ. L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** the motion to strike in part and **GRANTS** the motion to dismiss, for the following reasons.

I.   **BACKGROUND**

    A.   **Factual Background**[1]

Dimitry Borodaenko is a former Engineering Manager who worked at Defendant Twitter, Inc., from June 2021 until November 2022. Second Am. Compl. ("SAC," ECF 42) ¶ 13. Borodaenko, a cancer survivor, is particularly vulnerable to COVID-19, and he is unable to work

---

[1] Unless otherwise noted, the Court accepts Plaintiff's allegations in the SAC as true and construes the pleadings in the light most favorable to Plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

in an office due to his disability. SAC ¶ 36. Hana Thier is a former Senior Software Engineer that worked at Twitter from May 2021 until November 2022.[2] SAC ¶ 14.

Musk completed his purchase of Twitter in late October 2022 and immediately began a reduction-in-force ("RIF"), laying off more than half of its workforce. SAC ¶¶ 4, 24, 33. On November 9, 2022, Musk announced that he was ending Twitter's remote work policy effective immediately and that all employees who did not return to the office would be terminated, with exceptions made for only "exceptional people." SAC ¶¶ 29-31.

After Musk acquired Twitter, he was openly hostile toward disabled employees and insinuated that they were lazy. SAC ¶ 32. For example, Musk tweeted that a disabled former Twitter employee used his disability as an excuse not to work, and he also joked about an employee having Tourette's syndrome. SAC ¶ 32. Musk also described employees who worked from home as "morally wrong." SAC ¶ 32.

Twitter's sudden reversal of its previously liberal remote work policy, requiring employees to report to physical offices or face termination, disparately affected disabled employees. SAC ¶¶ 30-32, 34, Counts I, III. For example, Borodaenko, who has a cancer-related disability that makes him vulnerable to COVID-19, was promised when he joined Twitter that he would always have the option to work remotely. SAC ¶¶ 35-36. Shortly after Musk announced that he was ending Twitter's remote work policy, Borodaenko informed his manager of his disability and stated that he would continue to work from home. SAC ¶¶ 37-41. Twitter terminated Borodaenko on November 15, 2022, explaining that "[his] recent behavior has violated company policy." SAC ¶¶ 41-42.

After Musk acquired Twitter, he made clear that continuing to work for Twitter would demand extraordinary effort and long work hours. SAC ¶¶ 43-45. Employees were observed working twelve-hour shifts, seven days a week, sleeping in Twitter offices, and working nonstop to complete certain projects. SAC ¶ 44. Borodaenko's workload ballooned, and his number of direct reports increased from approximately ten to 16. SAC ¶ 46. On November 16, 2022, Musk

---

[2] "In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity." SAC ¶ 19. This order hereafter refers to Defendants collectively as "Twitter."

informed his employees that continuing to work for Twitter would require "working long hours at high intensity" and being "extremely hardcore," and that only those employees who demonstrate "exceptional performance" would pass muster. SAC ¶¶ 47-48. Employees were told that if they did not opt in to Musk's "hardcore" conditions by November 17, 2022, at 5:00 p.m., they would be laid off. SAC ¶¶ 47-48.

This ultimatum and Musk's behavior deterred disabled employees from feeling that they could continue to work at the company. SAC ¶ 50. For example, Thier has been diagnosed with depression, and following Musk's ultimatum, she felt that she could no longer work at Twitter given her disability. SAC ¶¶ 51-52. Thier needed a stable work environment with clear and reasonable expectations as an accommodation for her disability. SAC ¶ 52. As such, she did not click yes on the ultimatum link that Musk sent employees on November 16, 2022, and on the next day, Twitter laid her off. SAC ¶¶ 52-53.

### B. Procedural History

Plaintiff Borodaenko filed this class action lawsuit on November 16, 2022, asserting class claims for discrimination in violation of the Americans with Disabilities Act ("ADA"), the California Fair Employment and Housing Act ("FEHA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiffs filed an Amended Class Action Complaint ("FAC," ECF 8) on December 7, 2022, adding Abhijit Mehta as a plaintiff and asserting additional class claims for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and California Family Rights Act ("CFRA"), Gov. Code. § 12945.2.

On May 5, 2023, the Honorable Haywood S. Gilliam, Jr., granted Twitter's motion to dismiss Plaintiff Borodaenko's claims and compelled Plaintiff Mehta's claims to arbitration. ECF 35. In his Order, Judge Gilliam stated that "Plaintiff may file an amended complaint within 21 days of the date of this order." ECF 35 at 8.

Plaintiffs filed their Second Amended Complaint on May 26, 2023, soon after this case was transferred to the undersigned. ECF 42. The Second Amended Complaint ("SAC") added an additional plaintiff, Hana Thier, in order to address a number of issues that led the court to dismiss Borodaenko's disability discrimination claims in the FAC. Additionally, Thier alleged that

Twitter engaged in sex discrimination in violation of Title VII. SAC, Count II. To summarize, the SAC advances the following claims:

- Count 1: Discrimination in violation of the ADA, 42 U.S.C. §§ 12101, et seq. (Borodaenko and Thier);
- Count 2: Discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. (sex discrimination), (Thier); and
- Count 3: Discrimination in violation of FEHA, Cal. Gov't Code § 12940 (Borodaenko).

*See generally* SAC (ECF 42).

## II. DISCUSSION

Twitter moves to dismiss all the three counts listed above. In addition, it moves to strike substantial parts of the SAC, including the new allegations associated with the new Plaintiff, Thier, and class claims. Because it shapes the scope of the motion to dismiss, the Court first considers the motion to strike.

### A. Motion to Strike

Twitter moves to strike two substantial portions of the SAC: the newly presented allegations of Thier, and the allegations regarding class claims.

#### 1. Striking Thier's Allegations

Twitter argues that Thier must be stricken from the SAC because the unauthorized addition of a new plaintiff, with an entirely new theory of discrimination, violates Federal Rule of Civil Procedure 15 and exceeds the scope of the earlier order of dismissal.

After the time for amending as-of-right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. Pro. 15(a)(2). Courts generally limit leave to amend a complaint to circumstances where additional allegations are consistent with, not contradictory to, the allegations in the original complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). As recognized by another court in one of the Twitter cases brought by Plaintiffs' counsel, "[C]ourts in this district consistently strike or dismiss parties and claims that exceed the scope of an order granting leave to amend." *Strifling v. Twitter Inc.*, No. 22-CV-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024) (collecting

4

1  cases and striking a newly-added plaintiff along with her newly-presented claims of
2  discrimination).
3     Here, Judge Gilliam compelled Plaintiff Mehta's claims to arbitration and stated, "The
4  Court also GRANTS the motion to dismiss as to Plaintiff Borodaenko's claims.  [Citation.]
5  Plaintiff may file an amended complaint within 21 days of the date of this order."  ECF 35 at 8.
6  This followed an earlier note that "[a]ny references to 'Plaintiff' refer to Mr. Borodaenko unless
7  otherwise specified."  *Id.* at 2.  Twitter avers that Judge Gilliam's order was limited to granting
8  Borodaenko (not Mehta nor any other potential new plaintiff) leave to amend to allow him an
9  opportunity to cure the defects identified with the originally-pleaded disability discrimination
10 claims.  Borodaenko and Thier counter that the order did not impose any limitations on the
11 amended complaint and that the addition of Thier addresses issues identified by the court
12 regarding the deficiencies in alleging disability discrimination in the FAC.
13    Judge Gilliam's order is sufficiently clear that Borodaenko was the sole remaining
14 Plaintiff, particularly given the preceding six pages' stated focus on the claims of Borodaenko as
15 the remaining Plaintiff.  *See generally* ECF 35.  The court granted a single Plaintiff, Borodaenko,
16 leave to amend to address the deficiencies highlighted earlier in the order.  The addition of another
17 plaintiff and another theory of discrimination does not comport with the court's instruction.
18 Thier's allegations of sex-based discrimination have no basis in the previous two iterations of the
19 complaint, which concerned disability discrimination.  Plaintiffs' introduction of Thier absent
20 consent of Twitter or leave of court therefore falls outside the permission granted and violates
21 Rule 15(a)(2).  *See also Strifling*, 2024 WL 54976, at *1.  The Court therefore strikes Plaintiff
22 Thier and her allegations.

### 2. Striking of Class Claims

24    The function of a motion to strike under Rule 12(f) is to "avoid the expenditure of time and
25 money that must arise from litigating spurious issues by dispensing with those issues prior to
26 trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and
27 internal quotation marks omitted).  A court may "strike class allegations prior to discovery if the
28 complaint demonstrates that a class action cannot be maintained."  *Tietsworth v. Sears*, 720 F.

Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); *see* Fed. R. Civ. P. 23(d)(1)(D) (a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). However, motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to the class allegations. *See Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, No. 17-CV-00618-PJH, 2017 WL 3007040, at *8 (N.D. Cal. July 14, 2017); *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614-15 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification."). The decision whether to strike allegations is a matter within the court's discretion. *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 406 (N.D. Cal. 2009).

Twitter argues that Borodaenko's proposed class claims should be stricken because they require highly individualized assessments to determine class membership. But here, Borodaenko alleges that Twitter's ultimatum had a discriminatory effect on workers with disabilities. *See* SAC ¶¶ 30-53. Whether those allegations are sufficient to state a claim remains a question to be tested, but it is inappropriate to determine their applicability across a putative class at the pleading stage. To the extent Twitter challenges the putative class definition as indefinite, questions about ascertainability of the class are "best decided at the class certification stage with the benefit of more complete briefing and development of the record." *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3, 2021). Twitter's argument is properly resolved at the class certification stage, and the Court accordingly denies the motion to strike the class allegations at the pleading stage.

### B.     Motion to Dismiss

With the elimination of Thier, the remaining claims of disability discrimination must be tested for their pleading sufficiency.

#### 1.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th

6

Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

### 2.     Disability Discrimination Under the ADA and FEHA

"A disability discrimination claim may be based on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (citing *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)). The parties do not dispute that the pleading standard for disability discrimination remains the same under both the ADA and FEHA. *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001).

Although not specified in the SAC, Borodaenko argues that he states a claim for disability discrimination under both disparate treatment and disparate impact theories. *See* Opp. at 7. The Court elects to review the sufficiency of the allegations under a theory of disparate treatment before turning to the sufficiency of the claims under a theory of disparate impact.

### a. Disparate Treatment

Disparate treatment occurs "where an employer 'treat[s] [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Forth Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)). "To establish a prima facie case, plaintiffs must offer evidence that gives rise to an inference of unlawful discrimination," which they may do with "circumstantial evidence by showing: (1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citations, internal quotation marks, and brackets omitted). In support of the final element, a plaintiff must allege that "the defendant had a discriminatory intent or motive" in taking an adverse employment action against them. *Watson*, 487 U.S. at 986. Thus, "[i]t is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)).

Twitter attacks the sufficiency of pleading on the fourth element, arguing that Borodaenko still fails to allege how Twitter's post-RIF policies specifically impacted employees with disabilities rather than Twitter's employees broadly. *See* SAC ¶ 29 ("On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately"). The Court agrees. Borodaenko fails to show how employees with disabilities were treated differently by Twitter's broad return-to-the-office policy and increased workload. Borodaenko's theory improperly relies on the assumption that all employees with disabilities necessarily required remote work as a reasonable accommodation. Borodaenko attempts to show that the elimination of remote work had an impact on other disabled employees, such as Thier, but for the reasons discussed above, her inclusion is disallowed. Borodaenko again

8

fails to show a disparity between employees with disabilities and others similarly situated. *See* ECF 35 at 5.

Plaintiffs aver that Musk's hostile comments towards and concerning persons with disabilities demonstrate animus to support their claim of disparate treatment. For example, they allege that Musk has been "openly hostile toward disabled employees and insinuated they are lazy," and that Musk had "tweeted that a disabled former Twitter employee used his disability as an excuse not to work." SAC ¶ 32. Plaintiffs also allege that Musk joked about employees having Tourette's Syndrome and that he "chastised employees who work from home for being 'morally wrong.'"[3] SAC ¶ 32. While the comments referenced above may contribute to a showing of animus, they fall short of illustrating how the new return-to-the-office and increased workload policies treated employees with disabilities differently than similarly-situated employees. Borodaenko fails to allege that others were treated more favorably, that he was singled out in some way, or that his treatment gives rise to an inference of discrimination. The Court therefore dismisses Borodaenko's disability discrimination claims to the extent they are founded on a theory of disparate treatment.

### b.      Disparate Impact

Both the ADA and FEHA prohibit facially neutral practices that have a significantly discriminatory impact on a protected group and that are not justified by business necessity. *See, e.g.*, *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 112-13 (2021). "To state a claim for disparate impact discrimination under Title VII, a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (citing *Freyd*, 990 F.3d at 1224). "At the

---

[3] There is no need to proceed through the analysis of whether these comments constituted "stray remarks" by an executive that may be interpreted as discriminatory animus. *See, e.g.*, *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that a comment "uttered in an ambivalent manner" and "not tied directly to" the plaintiff's termination was "at best weak circumstantial evidence of discriminatory animus").

pleading stage, the complaint need only allege facts giving rise to plausible inferences that the disparity exists and is caused by the identified practice." *Liu*, 551 F. Supp. 3d at 990 (collecting cases). In *Liu*, the plaintiff alleged that Uber's termination of drivers for low ratings had a disparate impact on racial minorities, but the court found that the allegations fell short of plausibly alleging the existence of a disparity where he offered a relatively sparse description of his own experience. *Id.* at 990-91.

Plaintiffs' First Amended Complaint was dismissed because Plaintiffs had not plausibly alleged that the policies in question resulted in a disparity that impacted Twitter's disabled employees – the Court could not draw an "inference of disparity" from the "single data point" of Plaintiff Borodaenko's termination. ECF 35 at 6 (citing *Liu*, 551 F. Supp. 3d at 991). In response, Plaintiffs' SAC attempted to add a "second data point" with Thier's allegations, but those allegations are unhelpful given their elimination, as explained above. Borodaenko additionally alleges in this iteration of the pleading that Musk's decree for almost all employees to work out of physical offices "made it clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation." SAC ¶ 8. Borodaenko alleges further, "many disabled employees . . . were forced out of their jobs," (SAC ¶ 10), and "Twitter's new requirement that employees report to physical offices, as well as rampant termination and layoffs have disparately affected disabled employees" (SAC ¶ 34).

Borodaenko avers that these new allegations are sufficient on a few bases. First, he contends that these new allegations offer more detail about what happened with the departures of disabled employees from Twitter, detail that fills the gaps highlighted by the court in *Liu*. Opp. at 8. Second, Borodaenko cites to an amicus brief submitted by the EEOC in the Ninth Circuit appeal of *Liu* in which the EEOC argues that "a plaintiff who lacks pre-discovery access to information about the employer's workforce could identify the challenged practice and point to real-world conditions suggesting that the practice will result in a disparity" in order to allege plausibly disparate impact. Opp. at 9-11 (citing *Liu*, EEOC Amicus Brief, 2023 WL 2898556, at *13). Finally, Borodaenko contends that the allegations were sufficient in the first instance, and "Plaintiffs respectfully maintain that the Court took too stringent a view of the pleading

10

1 requirements for a disparate impact claim in dismissing Plaintiffs' First Amended Complaint."
2 Opp. at 11.
3       The Court takes up these arguments in reverse order for ease of analysis.  First, the court
4 was not "too stringent" in its order dismissing the FAC, because Borodaenko, similar to the
5 plaintiff in *Liu*, fails to provide factual support for the policy's disparate impact on a protected
6 class of employees beyond the limited facts of his own departure.  Second, the amicus brief filed
7 by an agency in a separate case on a topic outside its purview (federal court pleading standards) is
8 barely persuasive and need not be relied on here.  *See, e.g.*, *Alaska v. Fed. Subsistence Bd.*, 544
9 F.3d 1089, 1095 (9th Cir. 2008) (agency position entitled to "no deference" where is it not the
10 result of "any legally-binding regulation or in any official agency interpretation of the
11 regulation"); *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) ("No
12 deference is owed when an agency has not formulated an official interpretation of its regulation,
13 but is merely advancing a litigation position.").  Finally, the additional allegations presented in the
14 SAC are nothing more than conclusions devoid of factual support.  The SAC still lacks factual
15 allegations that employees with disabilities were laid off at disproportionate rates or that they were
16 denied reasonable accommodations from the new return-to-the-office and increased workload
17 policies.  The new allegations fail to move the needle to plead a plausible disparate impact claim.
18 The Court therefore dismisses Borodaenko's disability discrimination claims to the extent they are
19 founded on a theory of disparate impact.

20 **III.   CONCLUSION**

21       For the reasons stated above, the Court hereby **GRANTS** Twitter's motion to strike Thier
22 and her allegations from the SAC because Plaintiffs reached beyond the leave to amend granted in
23 the court's initial order of dismissal, and the Court **DENIES** Twitter's motion to strike class
24 claims at the pleading stage because that action is disfavored.  The Court **GRANTS** Twitter's
25 motion to dismiss the remaining disability discrimination claims on both theories – disparate
26 treatment and disparate impact.  Borodaenko may file an amended complaint regarding his
27 //
28 //

11

disability discrimination claims within 28 days from the date of this Order.  No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: August 21, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN
United States District Judge**