SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice*)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
Facsimile:  (617) 994-5801

*Attorneys for Plaintiff Dmitry Borodaenko*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC. AND X CORP.<br><br>Defendants | Case No. 3:22-cv-7226-AMO<br><br>**THIRD AMENDED COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12940 |

1
THIRD AMENDED COMPLAINT

## I. INTRODUCTION

1. Plaintiff Dmitry Borodaenko files this Complaint against Defendants Twitter, Inc. and X Corp. (collectively "Twitter").

2. Plaintiff brings claims of discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, challenging his termination. Plaintiff alleges that his termination constituted disability discrimination against him and was also in retaliation against him because he requested a reasonable accommodation.

3. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

4. Many of the employees (including Plaintiff) who have lost their jobs since Musk's purchase of the company are disabled.

5. Prior to Musk's purchase of the company, Twitter employees were permitted to work remotely. In fact, over the spring and summer of 2022, Twitter reassured employees that, following Musk's purchase of the company, they would be permitted to continue working remotely for at least a year.

6. However, shortly after Musk completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that all remaining employees would need to work out of a company office – with only rare exceptions for "exceptional" employees, that Musk himself would have to approve.

7. Plaintiff is disabled due to a past diagnosis of cancer, leaving him particularly susceptible to COVID and other viruses. Plaintiff was able to perform his job adequately with the reasonable accommodation of working remotely, rather than from a physical Twitter office. Musk's declaration, however, that almost all employees would need to work out of physical offices made it not possible or viable for Plaintiff to continue his job. Musk's declaration made it

clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation. Indeed, after Mr. Musk's declaration, Plaintiff emailed Twitter to ask that he be able to remain a remote worker due to his disability, and Twitter immediately fired him, thus denying him a reasonable accommodation and retaliating against him for requesting an accommodation.

## II.  PARTIES

8.  Plaintiff Dmitry Borodaenko is an adult resident of Scotts Valley, California, where he worked for Twitter from June 2021 until November 2022. Mr. Borodaenko was employed by Twitter as an Engineering Manager. Throughout his employment with Twitter, Mr. Borodaenko's performance met the Company's expectations.

9.  Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

10.  Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

11.  In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts.  Twitter and X Corp. are referred to herein as "Twitter".

## III.  JURISDICTION

12.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

13.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Mr. Borodaenko's state law claims, because those claims derive from a common nucleus of operative facts with his federal claims.

14.  This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

15. Twitter is a social media company that used to employ thousands of people across the United States.

16. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

17. Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition.

18. In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

19. One of the promises was that employees would be able to continue working remotely, for at least a year after Musk's acquisition of the company. This promise was made repeatedly to employees by managers, the CEO, and other staff.

20. However, following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on this promise.

21. On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately.

22. At a meeting with Twitter employees on November 10, 2022, Musk reiterated that employees needed to return to the office full time. He told employees: "if you can show up at an office and you do not show up at the office, resignation accepted -- end of story." He elaborated: "Let me be crystal clear, if people do not return to the office when they are able to return to the office -- they cannot remain at the company." Victor Ordonez and Stephanie Wash, Exclusive audio: Musk talks potential Twitter bankruptcy, return to office meeting, ABC News (November 11, 2022), https://abcnews.go.com/Business/exclusive-audio-elon-musk-tells-twitter-employees-return/story?id=93087987.

4
THIRD AMENDED COMPLAINT

23. Musk further stated that exceptions to this policy would be made only for "exceptional people".

24. In the months after he acquired Twitter and prohibited the company's employees from working remotely, Musk was openly hostile towards disabled employees and insinuated that they were lazy. For example, he tweeted that a disabled former Twitter employee used his disability as an excuse not to work. https://www.cnn.com/2023/03/07/tech/elon-musk-twitter-employee-disability/index.html. He has also joked about employees having Tourette's Syndrome. Id. Moreover, he has chastised employees who work from home for being "morally wrong." See https://www.cbsnews.com/news/elon-musk-work-from-home-morally-wrong/.

25. In addition to requiring remaining employees to work at physical offices, Musk also immediately began a mass layoff that has affected well more than half of Twitter's workforce. See See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html; Kate Conger, Ryan Mac, and Mike Isaac, In Latest Round of Job Cuts, Twitter is said to Layoff at Least 200 Employees, NEW YORK TIMES (February 26, 2023), https://www.nytimes.com/2023/02/26/technology/twitter-layoffs.html; Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

26. Twitter's new requirement that employees report to physical offices, as well as rampant terminations and layoffs, have disparately affected disabled employees, including Plaintiff Dmitry Borodaenko.

27. Mr. Borodaenko worked as an Engineering Manager. Throughout his employment at Twitter, he worked remotely from his home. Indeed, when he was hired in June 2021, he was assured that he would always have the option to work remotely.

28. Mr. Borodaenko has a disability that makes him vulnerable to COVID-19. Thus, working from an office while the pandemic was still ongoing would create an unacceptable risk to his health and life.

29. Mr. Borodaenko informed his manager of his disability and how it prevented him from working out of a company office.

30. Following Musk's announcement that employees would have to work out of company offices, Mr. Borodaenko wrote to his manager: "In case I didn't mention it before, as [a] cancer survivor I'm at extra risk from Covid (it also counts as a disability), so I'm definitely not working from [the] office until the pandemic is over."

31. Mr. Borodaenko was not given any information about how formally to request an "exception" to the return to the office policy that Musk instituted at Twitter, and Twitter never engaged in any discussions about Mr. Borodaenko's request to continue the reasonable accommodation he had always been provided for his disability.

32. Not long after sending this message to his manager, Mr. Borodaenko was terminated.

33. On November 15, 2022, Mr. Borodaenko received an email from Twitter Human Resources that stated: "Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy."

34. Mr. Borodaenko had not received any notice of behavior he was alleged to have engaged in that violated company policy, nor did he engage in any behavior that would appear to him to have violated company policy (other than informing his manager that he could not

comply with Musk's demand that employees begin working out of company offices, and therefore needed a reasonable accommodation for his disability).

## V.    EXHAUSTION OF ADMINSTRATIVE REMEDIES

35.    Plaintiff Borodaenko has filed an administrative charge of disability discrimination under the ADA with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department. He has received a Right to Sue letter to pursue these claims in court.

## COUNT I

### Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

Plaintiff was disabled or perceived to be disabled as defined by the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. Plaintiff could perform the essential functions of his job with or without reasonable accommodation. As such, he was entitled to the protections of the ADA. However, after Musk's acquisition of the company, Twitter required its employees to report physically to its offices. Twitter terminated Plaintiff Borodaenko after he requested the reasonable accommodation that he be permitted to continue to work remotely on account of his disability. Twitter, through its rigid return to office policy, discriminated against Plaintiff on the basis of his disability. Twitter failed to meet its obligation to either provide the requested accommodation or engage in an interactive process to obtain information to evaluate the need and feasibility of the request. In so doing, Twitter interfered with the exercise or enjoyment of Plaintiff's rights under the ADA and retaliated against him for attempting to invoke those rights.

# COUNT II

### California Fair Employment and Housing Act, Gov. Code § 12940

Plaintiff was disabled or perceived to be disabled as defined by the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, *et seq*. Plaintiff could perform the essential functions of his job with or without reasonable accommodation. As such, he was entitled to the protections of the FEHA. However, after Musk's acquisition of the company, Twitter required its employees to report physically to its offices. Twitter terminated Plaintiff Borodaenko after he requested the reasonable accommodation that he be permitted to continue to work remotely on account of his disability. Twitter, through its rigid return to office policy, discriminated against Plaintiff on the basis of his disability. Twitter failed to meet its obligation to either provide the requested accommodation or engage in an interactive process to obtain information to evaluate the need and feasibility of the request. In so doing, Twitter interfered with the exercise or enjoyment of Plaintiff's rights under the FEHA and retaliated against him for attempting to invoke those rights.

# JURY DEMAND

Plaintiff requests a trial by jury on the claims asserted here.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a. Declare and find that Twitter is liable to Plaintiff Borodaenko under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and the Fair Employment and Housing Act, Gov. Code § 12940;

b. Order that Twitter reinstate Plaintiff with a reasonable accommodation;

c. Award compensatory and any other appropriate damages, in an amount according to proof;

d. Award pre- and post-judgment interest;

e. Award reasonable attorneys' fees, costs, and expenses; and

f. Award any other relief to which Plaintiff may be entitled.

Respectfully submitted,

DMITRY BORODAENKO,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated: September 17, 2024

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on Defendants' counsel via the CM/ECF system on September 17, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan