# Exhibit A

1  SHANNON LISS-RIORDAN (SBN 310719)
   (sliss@llrlaw.com)
2  THOMAS FOWLER (*pro hac vice*)
   (tfowler@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
4  729 Boylston Street, Suite 2000
   Boston, MA 02116
5  Telephone:    (617) 994-5800
6  Facsimile:    (617) 994-5801

7  *Attorneys for Plaintiff Dmitry Borodaenko*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| DMITRY BORODAENKO,<br><br>             Plaintiff,<br><br>     v.<br><br>TWITTER, INC. AND X CORP.<br><br>             Defendants | Case No. 3:22-cv-7226-AMO<br><br>**[PROPOSED] FOURTH AMENDED COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12940<br>3. BREACH OF CONTRACT<br>4. PROMISSORY ESTOPPEL<br>5. VIOLATION OF WARN ACT (29 U.S.C. §§ 2101 *ET SEQ.*)<br>6. VIOLATION OF CALIFORNIA WARN ACT (CAL. LAB. CODE §§ 1400 *ET SEQ.*) |

## I. INTRODUCTION

1. Plaintiff Dmitry Borodaenko files this Complaint against Defendants Twitter, Inc. and X Corp. (collectively "Twitter").

2. Plaintiff brings claims of discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, challenging his termination following Elon Musk's purchase of Twitter. Plaintiff alleges that his termination constituted disability discrimination against him and was also in retaliation against him because he requested a reasonable accommodation.

3. Plaintiff also brings claims challenging the company's breach of contract for not providing him with severance pay he was promised in the event he was terminated after Elon Musk acquired Twitter, as well as for promissory estoppel and violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (the "California WARN Act").

## II. PARTIES

4. Plaintiff Dmitry Borodaenko is an adult resident of Scotts Valley, California, where he worked for Twitter from June 2021 until November 2022. Mr. Borodaenko was employed by Twitter as an Engineering Manager. Throughout his employment with Twitter, Mr. Borodaenko's performance met the Company's expectations.

5. Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

6. Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

7. In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

## III. JURISDICTION

8. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Mr. Borodaenko's state law claims, because those claims derive from a common nucleus of operative facts with his federal claims.

10. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

11. Twitter is a social media company that used to employ thousands of people across the United States.

12. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

13. Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition, as well as concerns about potential mass layoffs.

14. In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

15. One of the promises was that continuing employees would retain the same wages and benefits for a year after Musk's acquisition of the company. These benefits included employees being able to continue working remotely, without having to report to physical offices.

16. Another of the promises was that employees who were terminated would receive severance pay at least as favorable as the severance pay that Twitter previously provided to employees.

17. These promises were communicated to employees orally and in writing by Twitter's management, including its former CEO, human resources personnel, and others. The written promise that benefits and severance would stay the same for a year was distributed to employees throughout the company in a Frequently Asked Questions (FAQs) document.

18. Plaintiff, like other employees, reasonably relied on these promises and maintained his employment at Twitter, rather than seeking job opportunities elsewhere.  He did so to his detriment.

19. However, following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on these promises.

20. Plaintiff is disabled due to a past diagnosis of cancer, leaving him particularly susceptible to COVID and other viruses.  Plaintiff was able to perform his job adequately with the reasonable accommodation of working remotely, rather than from a physical Twitter office.

21. However, shortly after Musk completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that all remaining employees would need to work out of a company office – with only rare exceptions for "exceptional" employees, that Musk himself would have to approve.

22. On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately.

23. At a meeting with Twitter employees on November 10, 2022, Musk reiterated that employees needed to return to the office full time.  He told employees: "if you can show up at an office and you do not show up at the office, resignation accepted -- end of story." He elaborated: "Let me be crystal clear, if people do not return to the office when they are able to return to the office -- they cannot remain at the company." Victor Ordonez and Stephanie Wash, Exclusive audio: Musk talks potential Twitter bankruptcy, return to office meeting, ABC News (November

11, 2022), https://abcnews.go.com/Business/exclusive-audio-elon-musk-tells-twitter-employees-return/story?id=93087987.

24. Musk further stated that exceptions to this policy would be made only for "exceptional people".

25. Musk's declaration that most employees would need to work out of physical offices made it not possible or viable for Plaintiff to continue his job. Musk's declaration made it clear that Twitter was not interested in accommodating disabled employees, or even engaging in a discussion about a reasonable accommodation.

26. Plaintiff worked as an Engineering Manager. Throughout his employment at Twitter, he worked remotely from his home. Indeed, when he was hired in June 2021, he was assured that he would always have the option to work remotely.

27. Plaintiff has a disability that makes him vulnerable to COVID-19. Thus, working from an office while the pandemic was still ongoing would have created an unacceptable risk to his health and life.

28. Plaintiff informed his manager of his disability and how it prevented him from working out of a company office. Following Musk's announcement that employees would have to work out of company offices, Plaintiff wrote to his manager: "In case I didn't mention it before, as [a] cancer survivor I'm at extra risk from Covid (it also counts as a disability), so I'm definitely not working from [the] office until the pandemic is over."

29. Plaintiff was not given any information about how formally to request an "exception" to the return to the office policy that Musk instituted at Twitter, and Twitter never engaged in any discussions about Plaintiff's request to continue the reasonable accommodation he had always been provided for his disability.

30. Shortly after sending this message to his manager, Plaintiff was terminated. Twitter thus denied Plaintiff a reasonable accommodation and retaliated against him for requesting an accommodation.

31. On November 15, 2022, Plaintiff received an email from Twitter Human Resources that stated: "Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy."

32. Plaintiff had not received any notice of behavior he was alleged to have engaged in that violated company policy, nor did he engage in any behavior that would appear to him to have violated company policy (other than informing his manager that he could not comply with Musk's demand that employees begin working out of company offices, and therefore needed a reasonable accommodation for his disability).

33. In the months after he acquired Twitter and prohibited the company's employees from working remotely, Musk was openly hostile towards disabled employees and insinuated that they were lazy. For example, he tweeted that a disabled former Twitter employee used his disability as an excuse not to work. https://www.cnn.com/2023/03/07/tech/elon-musk-twitter-employee-disability/index.html. He has also joked about employees having Tourette's Syndrome. Id. Moreover, he has chastised employees who work from home for being "morally wrong." See https://www.cbsnews.com/news/elon-musk-work-from-home-morally-wrong/.

34. In addition to requiring remaining employees to work at physical offices, Musk also immediately began a mass layoff that ultimately led to approximately 80% of the company being laid off. Approximately a week after the acquisition closed, on November 4, 2022, half of the company was notified that they were being laid off. Throughout the rest of November 2022, more than 1,000 more employees were laid off.

35. While many employees who were laid off in November 2022 received 60 days advance written notice of their termination pursuant to the WARN Act, Plaintiff did not receive any advance notice, nor pay in lieu of notice, prior to his termination.

36. Plaintiff alleges that he was selected for layoff in violation of the ADA or FEHA, as described above. While Twitter informed him that he was terminated for violation of company policy, he did not violate any company policy that would warrant his termination. However, regardless of the reason for his selection for layoff, he was entitled to advance notice, or pay in lieu of notice, prior to his termination, pursuant to the federal and California WARN Act.

37. As noted above, Twitter had also promised employees, including Plaintiff, that if they lost their job within a year after the acquisition, they would receive severance pay no less favorable than employees received under Twitter's pre-acquisition severance policy. That policy had provided for at least two months' pay (or more, depending on the employee's length of service and position at the company), bonus plan compensation at target, cash value of equity that would have vested within three months from the separation date (or more, for more senior level employees), and a cash contribution for health care continuation.

38. Following his layoff, Plaintiff also did not receive the severance pay that he (along with other Twitter employees) had been promised to be paid if he were terminated within a year of Musk's acquisition of the company.

V. **EXHAUSTION OF ADMINSTRATIVE REMEDIES**

39. Plaintiff has filed an administrative charge of disability discrimination under the ADA with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department. He has received a Right to Sue letter to pursue these claims in court.

## COUNT I

### Americans With Disabilities Act,
### 42 U.S.C. §§ 12101, *et seq.*

Plaintiff was disabled or perceived to be disabled as defined by the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. Plaintiff could perform the essential functions of his job with or without reasonable accommodation. As such, he was entitled to the protections of the ADA. However, after Musk's acquisition of the company, Twitter required its employees to report physically to its offices. Twitter terminated Plaintiff after he requested the reasonable accommodation that he be permitted to continue to work remotely on account of his disability. Twitter, through its rigid return to office policy, discriminated against Plaintiff on the basis of his disability. Twitter failed to meet its obligation to either provide the requested accommodation or engage in an interactive process to obtain information to evaluate the need and feasibility of the request. In so doing, Twitter interfered with the exercise or enjoyment of Plaintiff's rights under the ADA and retaliated against him for attempting to invoke those rights.

## COUNT II

### California Fair Employment and Housing Act,
### Gov. Code § 12940

Plaintiff was disabled or perceived to be disabled as defined by the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940, *et seq*. Plaintiff could perform the essential functions of his job with or without reasonable accommodation. As such, he was entitled to the protections of the FEHA. However, after Musk's acquisition of the company, Twitter required its employees to report physically to its offices. Twitter terminated Plaintiff after he requested the reasonable accommodation that he be permitted to continue to work remotely on account of his disability. Twitter, through its rigid return to office policy, discriminated against Plaintiff on the basis of his disability. Twitter failed to meet its obligation

to either provide the requested accommodation or engage in an interactive process to obtain information to evaluate the need and feasibility of the request. In so doing, Twitter interfered with the exercise or enjoyment of Plaintiff's rights under the FEHA and retaliated against him for attempting to invoke those rights.

## COUNT III

### Breach of Contract

As set forth above, from approximately April 2022 through October 2022, Twitter repeatedly informed Plaintiff (along with other employees), in consideration for their continued willingness to work for Twitter, that they would receive the same benefits and severance pay following Elon Musk's purchase of the company, including being able to work remotely (for at least a year following the acquisition), as well as receiving severance pay and benefits that were no less favorable than what Twitter employees previously received, should they be terminated within a year of the acquisition. However, following Musk's purchase of the company, Twitter breached that contract. It announced that employees would no longer be permitted to work remotely (with few exceptions). In addition to no longer being able to work remotely (and being terminated after requesting to be permitted to continue working remotely), Plaintiff also did not receive the severance package that had been promised to him, for continuing to work for Twitter through the acquisition.

## COUNT IV

### Promissory Estoppel

As set forth above, from approximately April 2022 through October 2022, Twitter repeatedly informed employees that they would receive the same benefits and severance pay following Elon Musk's purchase of the company, including being able to work remotely (for at least a year following the acquisition), as well as receiving severance pay and benefits that were

no less favorable than what Twitter employees previously received, should they be terminated within a year of the acquisition. In reasonable reliance on these promises, Plaintiff continued to work for Twitter, rather than looking for and accepting another job opportunity. However, following Musk's purchase of the company, Twitter reneged on these promises. It announced that employees would no longer be permitted to work remotely (with few exceptions). In addition to no longer being able to work remotely (and being terminated after requesting to be permitted to continue working remotely), Plaintiff also did not receive the severance package that had been promised to him, for continuing to work for Twitter through the acquisition. Plaintiff was harmed by his reliance on these promises, including having lost the opportunity to obtain other employment, when the job market was more favorable.

## COUNT V

### Federal WARN Act

Plaintiff was entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 et. seq. 24. At the time of the events at issue in this complaint, Twitter was, and is, subject to the notice and back pay requirements of the federal WARN Act because Twitter is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B). Although Plaintiff lost his job in a mass layoff by Twitter in November 2022, he did not receive the required 60 days advance notice, or pay in lieu of notice, under the federal WARN Act.

## COUNT VI

### California WARN Act

Plaintiff was entitled to the rights, protections, and benefits provided under the California WARN Act, Cal. Lab. Code § 1400 *et seq.* At the time of the events at issue in this complaint, Twitter was, and is, subject to the notice and back pay requirements of the California WARN Act because Twitter is a business enterprise that employed 75 or more employees, as defined in the California WARN Act, Cal. Lab. Code § 1400(a). Although Plaintiff lost his job in a mass layoff by Twitter in November 2022, he did not receive the required 60 days advance notice, or pay in lieu of notice, under the federal WARN Act.

## JURY DEMAND

Plaintiff requests a trial by jury on the claims asserted here.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a. Declare and find that Twitter is liable to Plaintiff under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and the Fair Employment and Housing Act, Gov. Code § 12940;

b. Order that Twitter reinstate Plaintiff with a reasonable accommodation;

c. Declare and find that Twitter is liable to Plaintiff as the result of its breach of its contracts described above;

d. Declare and find that Twitter is liable to Plaintiff under the doctrine of promissory estoppel;

e. Declare and find that the Twitter has violated the federal WARN Act, 29 U.S.C. § 2101 *et seq.* and the California WARN Act, Cal. Lab. Code §§ 1400 *et seq.*;

f. Award compensatory and any other appropriate damages, in an amount according to proof;

g. Award pre- and post-judgment interest;

h. Award reasonable attorneys' fees, costs, and expenses; and

i. Award any other relief to which Plaintiff may be entitled.

Respectfully submitted,

DMITRY BORODAENKO,

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Dated:    March 13, 2025    Email: sliss@llrlaw.com; tfowler@llrlaw.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on Defendants' counsel via the CM/ECF system on March 13, 2025.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan