MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (State Bar No. 168181)
Brian D. Berry (State Bar No. 229893)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
eric.meckley@morganlewis.com
brian.berry@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry (State Bar No. 312731)
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:     +1.650.843.4001
ashlee.cherry@morganlewis.com

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO, | Case No. 3:22-cv-7226-AMO |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| TWITTER, INC. and X CORP., | **SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendants. | Date:     November 6, 2025 |
| | Time:     2:00 p.m. |
| | Judge:    Hon. Araceli Martinez-Olguin |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................ 2

    A.    Plaintiff's Cancer Diagnosis in 2018 and Successful Treatment in 2019, More Than Two Years Before Joining Twitter. ....................................... 2

    B.    Plaintiff Begins Working for Twitter in June 2021. ................................ 3

    C.    Twitter is Acquired and Concerns Regarding Insider Threats Are Paramount. .............................................................................................. 4

    D.    Plaintiff Is Fired for Cause on November 15, 2022 Based on Twitter's Determination that His Social Media Posts and Slack Messages Violated Company Policy. ....................................................................................... 5

    E.    Plaintiff Informs Coworkers He Was "Fired" and Speculates About the Reason for His Termination. .................................................................... 7

III.  LEGAL STANDARD ........................................................................................ 9

IV.  ARGUMENT ...................................................................................................... 9

    A.    Plaintiff's First and Second Claims for Disability Discrimination Fail. ................. 9

        1.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination. ........... 10

        2.    Twitter Had Legitimate Non-Discriminatory Reasons for Plaintiff's Termination. ....................................................................................... 14

        3.    Plaintiff Cannot Establish Pretext. ......................................................... 14

    B.    Plaintiff's Third and Fourth Claims Fail Because Plaintiff Was Terminated "For Cause." ..................................................................... 15

V.   CONCLUSION ................................................................................................ 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Alter v. SCM Off. Supplies, Inc.*,
  906 F. Supp. 1243 (N.D. Ind. 1995) ................................................................. 16

*Anthony v. Trax Int'l Corp.*,
  955 F.3d 1123 (9th Cir. 2020) ........................................................................... 9

*Avila v. Cont'l Airlines, Inc.*,
  165 Cal. App. 4th 1237 (2008) .................................................................... 11, 14

*Barger v. Owens-Brockway Glass Container, Inc.*,
  No. C 97-4418 FMS, 1999 WL 51797 (N.D. Cal. Feb. 1, 1999) ...................... 10

*Bd. of Trs. of Keene State Coll. v. Sweeney*,
  439 U.S. 24 (1978) ............................................................................................ 14

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) .......................................................................................... 10

*Brundag v. Hahn*,
  57 Cal. App. 4th 228 (1997) ............................................................................. 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................................... 9

*Collins v. Gee West Seattle, LLC*,
  631 F.3d 1001 (9th Cir. 2011) ........................................................................... 15

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ........................................................................... 19

*Crosier v. United Parcel Serv.*,
  150 Cal. App. 3d 1132 (1983) ........................................................................... 15

*Cucuzza v. City of Santa Clara*,
  104 Cal. App. 4th 1031 (2002) .......................................................................... 15

*Dancause v. Mount Morris Cent. Sch. Dist.*,
  590 F. App'x 27 (2d Cir. 2014) ............................................................. 10, 11, 12

*Darby v. Childvine, Inc.*,
  964 F.3d 440 (6th Cir. 2020) ............................................................................. 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Faust v. Cal. Portland Cement Co.*,
    150 Cal. App. 4th 864 (2007)..................................................................................... 10

*Guido v. Mount Lemmon Fire Dist.*,
    859 F.3d 1168 (9th Cir. 2017).................................................................................... 17

*Gunderson v. Alta Devices, Inc.*,
    No. 19-CV-08017-BLE, 2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ............................... 16

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal. 4th 317 (2000) ........................................................................................... 9, 14

*Hersant v. Dep't of Soc. Servs.*,
    57 Cal. App. 4th 997 (1997)..................................................................................... 15

*Horn v. Cushman & Wakefield W. Inc.*,
    72 Cal. App. 4th 798 (1999)..................................................................................... 14

*Jones v. Barnhart*,
    349 F.3d 1260 (10th Cir. 2003).................................................................................. 19

*Kennedy v. Applause, Inc.*,
    90 F.3d 1477 (9th Cir. 1996).................................................................................... 10

*King v. United Parcel Serv., Inc.*
    152 Cal. App. 4th 426 (2007)..................................................................................... 14

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004) ............................................................................................... 16

*Leeper v. All. Res. Partners, L.P.*,
    356 F. Supp. 3d 761 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939
    F.3d 866 (7th Cir. 2019) .......................................................................................... 16

*MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*,
    134 Cal. App. 4th 1076 (2005)................................................................................... 18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................. 9

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................................. 9

*McGrory v. Applied Signal Tech., Inc.*
    212 Cal. App. 4th 1510 (2013)................................................................................... 14

*Meacham v. Knolls Atomic Power Lab.*,
    554 U.S. 84 (2008) ................................................................................................. 16

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

*Miller v. Md. Dep't of Nat. Res.*,
   813 F. App'x 869 (4th Cir. 2020) ........................................................................ 10

*Moore v. Warehouse Club, Inc.*,
   No. 90-1869, 1992 WL 318560 (W.D. Pa. July 27, 1992), *aff'd*, 992 F.2d 27 (3d Cir. 1993) 16

*Myricks v. Lynwood Unified Sch. Dist.*,
   74 Cal. App. 4th 231 (1999) ............................................................................... 15

*Poindexter v. Atchisoh*,
   168 F.3d 1228 (10th Cir. 1999) .......................................................................... 10

*Sandell v. Taylor-Listug, Inc.*,
   188 Cal .App. 4th 297 (2010) ............................................................................. 10

*Shell v. Burlington N. Santa Fe Ry. Co.*,
   941 F.3d 331 (7th Cir. 2019) .............................................................................. 12

*Solarcity Corp. v. Doria*,
   No. 16cv3085-JAH (RBB), 2018 WL 2229397 (S.D. Cal. May 16, 2018) ........................... 16

*Taylor v. Principal Fin. Grp., Inc.*,
   93 F.3d 155 (5th Cir. 1996) ............................................................................... 12

*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) ............................................................................... 9

*Trop v. Sony Pictures Entm't. Inc.*,
   129 Cal. App. 4th 1133 (2005) ........................................................................... 12

*Wiltz v. M/G Transp. Servs., Inc.*,
   128 F.3d 957 (6th Cir. 1997) ............................................................................. 16

**STATUTES**

29 U.S.C. § 623(f)(3) ............................................................................................ 17

29 U.S.C. § 2101(a)(6) .......................................................................................... 15

29 U.S.C. § 2102(a) ............................................................................................. 15

38 U.S.C. § 4316(c) ............................................................................................. 17

42 U.S.C. § 12102(1) ........................................................................................... 10

Age Discrimination in Employment Act ................................................................. 16, 17

Americans with Disabilities Act ..................................................................... 1, 10, 12

Cal. Gov. Code § 12926(k)(1)(B) ............................................................................ 10

Cal. Gov. Code § 12926(k)(1)(B)(iii) ............................................................... 10

Cal. Lab. Code § 1400 *et seq*. ....................................................................... 15

Cal. Lab. Code § 1400.5 .................................................................................. 18

Cal. Lab. Code § 1400.5(f) ....................................................................... 16, 18

California Fair Employment and Housing Act ..................................... 1, 10, 12

Uniformed Services Employment and Reemployment Rights Act of 1994 ................................. 17

Worker Adjustment and Retraining Notification Act of 1988 .............................. passim

**OTHER AUTHORITIES**

20 C.F.R. § 639.2 ........................................................................................... 15

20 C.F.R. § 1002.248 ..................................................................................... 17

Fed. R. Civ. P. 56(c) ......................................................................................... 9

**PLEASE TAKE NOTICE** that on November 6, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 10 of the above-entitled court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendant X Corp., formerly known as Twitter, Inc. (hereinafter "Defendant" or "X"), will, and hereby does, move this Court for an order granting summary judgment in favor of Defendant and against Plaintiff Dmitry Borodaenko ("Plaintiff") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In the operative Fourth Amended Complaint ("FAC"), which was filed on April 22, 2025, Plaintiff asserts the following four causes of action:  (1) alleged discrimination in violation of the Americans with Disabilities Act ("ADA") (Compl., p. 7, Count I); (2) alleged discrimination in violation of the California Fair Employment and Housing Act ("FEHA") (Compl., p. 7, Count II); (3) alleged violations of the federal WARN Act (Compl., p. 8, Count III); and (4) alleged violations of the California WARN Act (Compl., p. 9, Count IV).  *See* ECF No. 108.

Plaintiff's first and second claims for alleged disability discrimination fail and must be dismissed because the undisputed evidence demonstrates that Plaintiff was not "disabled" within the meaning of the ADA and the FEHA during the period he was employed with Defendant.

Plaintiff's first and second claims for alleged disability discrimination fail and must be dismissed for the separate and independent reason that the undisputed evidence demonstrates that the persons who decided to terminate Plaintiff's employment had no knowledge of any alleged disability and therefore could not and did not terminate Plaintiff based on any alleged disability; the decision-makers terminated Plaintiff's employment for legitimate, non-discriminatory reasons.

Plaintiff's third and fourth claims for violation of the federal and California WARN Acts fail and must be dismissed because the undisputed evidence demonstrates that Defendant fired Plaintiff for cause and he was not laid off.  As a result, Plaintiff was not entitled to WARN notice and/or pay under either the federal or California WARN Acts.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the Declaration of Eric Meckley and all exhibits attached thereto, the Declaration of Andrew Musk, the Declaration of James Musk, the Declaration of Walter Gilbert and all exhibits attached thereto, the Request for Judicial Notice and all exhibits attached thereto, the pleadings and the Court's

1  record on file herein, and on such other and further argument and evidence as may be presented at

2  or prior to the time of the hearing, and all matters of which this Court may properly take notice.

3  Dated: August 13, 2025                    MORGAN, LEWIS & BOCKIUS LLP

4

5                                            By      /s/ Eric Meckley

6                                               Eric Meckley
                                                Brian D. Berry
7                                               Ashlee Cherry
                                                Attorneys for Defendants
8                                               X CORP. f/k/a TWITTER, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I.    **INTRODUCTION**

2        The undisputed evidence establishes that Plaintiff Dmitry Borodaenko ("Plaintiff") cannot

3    prevail on his claims for alleged disability discrimination and violation of the federal and California

4    WARN Acts.

5        While Plaintiff unfortunately had cancer earlier in his life, he had thankfully successfully

6    completed his treatment more than two years before he joined Twitter, Inc.[1] ("Twitter" or the

7    "Company"). During the period he worked at Twitter, he was never placed on any work restrictions,

8    did not take any medication for cancer, did not undergo further treatment for cancer, never

9    requested a leave of absence, and never sought any work accommodation related to previously

10   having had cancer.  Simply put, Plaintiff did not have any physical impairment that limited a major

11   life activity and thus did not qualify as a "person with a disability" at the time Twitter decided to

12   terminate his employment. Absent that foundational element of disability discrimination, his claims

13   should be dismissed.

14       Moreover, the persons who decided to fire Plaintiff ***had no knowledge whatsoever*** about

15   Plaintiff's medical condition and did not know he previously had cancer.  The applicable case law,

16   as well as basic logic and common sense, dictate that a decision-maker cannot discriminate against

17   an employee based upon disability when the decision-maker is not even aware that the employee

18   has a disability.  Here, no causal nexus exists between his alleged disability and his termination,

19   and Plaintiff has no evidence that Twitter's legitimate, non-discriminatory reasons for firing him

20   were a pretext for unlawful disability discrimination. These additional facts provide an additional

21   independent basis for dismissing his disability discrimination claims.

22       With respect to his WARN Act claims, the undisputed evidence demonstrates that Plaintiff

23   was fired. That fact is readily apparent from the email Twitter sent to Plaintiff on November 15,

24   2022, expressly notifying him:

25       "We regret to inform you that your employment is terminated effective immediately.
         Your recent behavior has violated company policy."
26

27   ─────────────────

28   [1] Defendant X Corp. is the successor-in-interest to Twitter, Inc.  At all times relevant to this Motion, the Company was still known as "Twitter, Inc."

1   Plaintiff has admitted no one from Twitter ever told him that he was laid off or terminated

2   as part of a reduction in force and he further admitted never receiving any documentation from

3   Twitter stating that to be the case. The undisputed evidence shows that Twitter fired Plaintiff for

4   cause based on his social media and Slack posts, which violated Twitter's Respectful Workplace

5   and Code of Business Conduct policies. Plaintiff conceded that he was "shitposting" about the

6   Company. Plaintiff also expressly acknowledged in several text messages with colleagues after his

7   termination that he had been "fired" and speculated as to which of his posts may have led to his

8   firing. It is undisputed that Plaintiff was not laid off.

9   Given these undisputed material facts, Plaintiff's claims for federal and California WARN

10  Act violations must be dismissed at the summary judgment stage, because being fired for cause

11  exempts an employee from coverage under the federal and California WARN Acts. Simply put,

12  because it is undisputed that Plaintiff was fired and not laid off as part of a mass layoff, the WARN

13  Acts do not apply to him. The Court should grant Defendant's Motion for Summary Judgment in

14  its entirety.

15  **II.    STATEMENT OF MATERIAL FACTS**

16      **A.    Plaintiff Was Diagnosed with Cancer in 2018 and Successfully Completed Treatment in 2019, More Than Two Years Before Joining Twitter.**

17

18  Plaintiff was diagnosed with testicular cancer in 2018, approximately three years before he

19  began his employment with Twitter. Decl. of Eric Meckley ("Meckley Decl."), ¶ 2, Ex. 1

20  (Deposition of Dmitry Borodaenko), 49:25-50:9. He had surgery in 2018 to remove the cancer,

21  followed by chemotherapy which concluded in early 2019. *Id.* at 50:10-51:5. Both the surgery and

22  chemotherapy were successful in removing his cancer, and Plaintiff's doctor cleared him to return

23  to full-time, in-office work for his then-employer without any restrictions. *Id.* at 53:5-10; 64:4-7;

24  65:15-18. Plaintiff underwent routine observation to monitor for any recurrence or tumor growth,

25  which included periodic blood tests and full-body scans. *Id.* at 55:14-56:5. During the first year

26  following completion of treatment, Plaintiff underwent scans every three months, which were then

27  reduced to every six months after no tumor growth was detected. *Id.* Plaintiff did not undergo any

28

2

1    further treatment for cancer.  *Id*. at 52:1-4.[2]

2        **B.    Plaintiff Began Working for Twitter in June 2021.**

3        Twitter hired Plaintiff in June 2021 as an at-will employee in the position of Manager of

4    Site Reliability Engineering.  Meckley Decl., Ex. 1 at 16:4-9; 20:23-22:7; 25:15-18; 29:2-9; 33:8-

5    35:7; Ex. 1 thereto.  Plaintiff's Site Reliability Engineering (SRE) team was part of Twitter's larger

6    Infrastructure organization, which was involved in critical security aspects of Twitter's services,

7    including account security and data protection.  *Id.* at 38:6-22, 43:13-24.  In his role, Plaintiff had

8    access to systems within Twitter's infrastructure.  *Id*. at 40:8-42:2.

9        **1.    *Plaintiff was required to comply with various employment policies.***

10        During his employment, Plaintiff reviewed and understood the requirement that he comply

11    with Twitter's various employment policies and procedures.  *Id.*  at 217:19-218:20, 224:13-225:5,

12    228:17-229:4; Ex. 39 thereto.  Some of these policies were set forth in the "Playbook," which was

13    Twitter's Employee Handbook.  *Id.*  The Playbook noted Twitter's "open door" approach, which

14    encouraged employees to raise any workplace issues and explained various methods for doing so.

15    *Id.* at 218:25-219:21;  Ex. 39 thereto.    Twitter's robust anti-discrimination and reasonable

16    accommodation policies recognized disability as a protected characteristic and prohibited

17    discrimination based on disability.  *Id.* at 219:22-222:16; Ex. 39 thereto.  Additionally, the

18    Playbook included an anti-harassment policy, which prohibited, among other things, abusive

19    conduct such as "negative stereotyping," "mocking or ridiculing," "mimicking someone's culture,

20    accent, appearance or customs," and "statements made inside or outside of Twitter, including on

21    any social media service, that violate this policy."  *Id.* at 224:13-225:5.  The Playbook included a

22    flexible work policy, which provided that "[f]lexible work arrangements are a privilege (not a right)

23    and must be evaluated based on business and team needs," and that "employees and managers must

24    get approval from the Flexible Work Program team for all of these arrangements."  *Id.* at 228:17-

25    229:4.

26

27    _____
[2] Plaintiff had a final visit with his oncologist in November 2022, during which his doctor scheduled
a final scan for December 2022 or January 2023.  Meckley Decl., Ex. 1 at 55:2-13.  In January
28    2023, Plaintiff's doctor told him that his cancer was fully in remission.  *Id.* at 54:4-9.

In addition to the policies set forth in the Playbook, Plaintiff also reviewed and was bound by Twitter's Code of Business Conduct.  Meckley Decl., Ex. 1 at 35:8-36:11; Ex. 2 thereto.  Plaintiff understood that, as a manager, he was bound by several additional "Management Responsibilities," including but not limited to the duty to "[b]e the ambassadors of Twitter values and model them in [his] everyday work life, setting a strong ethical tone and building a culture of integrity with [his] team."  *Id.* at 36:12-37:2; Ex. 2 thereto.

### 2. *Plaintiff was not limited in any major life activity during his employment with Twitter.*

During his employment with Twitter, Plaintiff did not take any medication related to cancer.  *Id.* at 58:13-16.  Although he continued to undergo scans and blood tests twice a year as part of routine observation, his doctors never placed Plaintiff on any work restrictions or physical limitations.  *Id.* at 59:10-60:4.  Plaintiff never submitted any medical documentation regarding his history of cancer to Twitter and never communicated with Human Resources about his condition.  *Id*. at 71:24-10, 75:8-15.  Plaintiff also never requested any type of leave of absence or made any request to Human Resources for any type of accommodation related to cancer.  *Id.* at 49:22-24, 71:14-17.

### C. Following Twitter's Acquisition, Concerns Regarding the Risk of Insider Threats Are Paramount.

On or about October 28, 2022, X Holdings I, Inc. and X Holdings II, Inc. acquired Twitter pursuant to the terms of a Merger Agreement.  Request for Judicial Notice ("RFJN"), Ex. 1.  Following the acquisition, the Company conducted a mass layoff on November 4, 2022.  Decl. of Andrew Musk ("A. Musk Decl."), ¶ 2; Decl. of James Musk ("J. Musk Decl."), ¶ 2.  However, Plaintiff was *not* laid off in the November 4, 2022 reduction in force.  Decl. of Walter Gilbert ("Gilbert Decl."), ¶ 8.

Following the acquisition and November 4 layoff, there was significant employee hostility directed toward the Company.  A. Musk Decl., ¶ 3; J. Musk Decl., ¶ 3.  The "Social Watercooler"

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

Slack channel,[3] which was a public channel accessible to any Twitter employee, became a forum for increasingly negative, mocking, and disruptive commentary.  A. Musk Decl., ¶¶ 3-4; J. Musk Decl., ¶¶ 3-4; Meckley Decl., Ex. 1 at 133:23-134:7.  Twitter management was concerned about security and, specifically, insider threat risks, or the possibility that an employee would intentionally cause harm to the Company.  A. Musk Decl., ¶¶ 3-4; J. Musk Decl., ¶¶ 3-4.  Insider threat risks varied but could include destroying servers, disclosing confidential information, disrupting infrastructure, and hijacking Twitter user accounts.  A. Musk Decl., ¶¶ 3-5; J. Musk Decl., ¶¶ 3-5.  Such risks were particularly of concern with respect to engineers like Plaintiff who had access to site infrastructure.  A. Musk Decl., ¶ 4; J. Musk Decl., ¶ 4.  Because of these concerns, Twitter management created a team to identify potential insider threat risks.  A. Musk Decl., ¶ 3; J. Musk Decl., ¶ 3.  This team worked with the Information Security ("Info Sec") team and reviewed network and system access, audited permissions and credentials, reviewed employee public social media posts, posts on Slack channels and direct Slack messages.  A. Musk Decl., ¶ 5; J. Musk Decl., ¶ 5.

### D.    Twitter Fired Plaintiff for Cause on November 15, 2022 for Violating Company Policy.

On or around October 29, 2022, Plaintiff "boosted" a post by another user on a social media platform called Mastodon that competed with Twitter.[4]  Meckley Decl., Ex. 1 at 155:1-156:4; Ex. 16 thereto.  The post he boosted contained a "meme" featuring an image of older actor Steve Buscemi dressed like a teenage, wearing a backward baseball cap and holding a skateboard, with the caption: "Hello Fellow Software Developers, Please Print Your Last 13 Days of Code on Paper."  *Id.* at 155:1-157:17, Ex. 16.  That same day, October 29, 2022, Plaintiff shared this same meme on his public Twitter account.  Plaintiff acknowledged tweeting this meme in response to a development at Twitter at the time, specifically, a code review exercise in which Elon Musk had required engineers to bring in their code to the office.  *Id.* at 158:14-159:4; 159:18-160:3.  Plaintiff

---

[3] Slack is a messaging application/chat program for employees.  Slack "channels" allowed employees to organize messages that pertained to a specific topic.  Joining a Slack channel allowed employees to post to that channel and review posts.

[4] "Boosting" is a feature on Mastodon like the "re-tweet" feature on Twitter.  *Id.* at 156:5-7.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

also acknowledged that this mocked a person who "wants to look like a software developer but is…using outdated references to things." *Id.* at 157:18-158:5. In other words, the implication was that the new leadership at Twitter responsible for the code review exercise were playing the part of software developers but were not actually competent at their jobs. Recognizing the impropriety of the implication, Plaintiff wrote: "I found this meme on #Mastodon. No further comment #AtThisTime." *Id.* at 156:9-157:17; Ex. 16. He used the hashtag "#AtThisTime" to convey uncertainty about what might happen in the future. *Id.* at 156:20-157:2; Ex. 16.

In early November 2022, prior to his termination, Plaintiff posted another meme to the Twitter Social Watercooler channel showing a cartoon image of the Twitter bird drinking coffee while sitting in a room totally engulfed in flames, with a speech bubble saying, "This is fine" (*i.e.*, the "dumpster fire" meme). *Id.* at 131:23-134:7; Ex. 10 thereto. Plaintiff posted this meme about his own employer being a "dumpster fire" because he thought "some people might find [it] funny." *Id.* at 164: 10-14. Plaintiff admitted that the Steve Buscemi meme and the Twitter bird meme were "shitposting" about the Company. *Id.* at 161:22-25; 164:10-14.

The security review team identified Plaintiff as an insider threat risk based on his posts and his position (and expansive access to the platform's infrastructure) as a site reliability engineer. A. Musk Decl., ¶ 6; J. Musk Decl., ¶ 6. The Company decided to fire Plaintiff on November 15, 2022 based upon these concerns and for violating the Respectful Workplace Policy and Code of Conduct. A. Musk Decl., ¶¶ 7-8; J. Musk Decl., ¶¶ 7-8; Meckley Decl., Ex. 1 at 26:16-19; Gilbert Decl., ¶ 8. Plaintiff admitted to receiving an email from Twitter on November 15 expressly notifying him:

> "We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy. Our operations team will be reaching out to you with offboarding instructions. If you have any follow up questions you can email alum@twitter.com."

Meckley Decl., Ex. 1 at 114:20-115:16; Ex. 7 thereto.

Plaintiff admitted that he never received any written documentation stating that he had been laid off or was terminated as part of any reduction in force, nor was he ever told that he was being terminated as part of a layoff or reduction in force. *Id.* at 140:14-24. Plaintiff further admitted that

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

1   he understood the difference between being fired and being laid off, and that employees could be

2   fired for violating company policy or engaging in misconduct. *Id.* at 142:8-143:10.   Plaintiff made

3   no effort to determine what policy violation he had committed or ask Twitter Human Resources or

4   management any questions about his firing.  *Id.* at 116:13-21; 145:2-4.

5           **E.**    **Plaintiff Admitted That He Was "Fired."**

6         On the day of his termination, Plaintiff messaged Will Hoffler, a representative of one of

7   Twitter's vendors, stating: "Heads up. **I just got fired**. Afaik John is still there, but you might want

8   to check just in case."  Meckley Decl., Ex. 1 at 117:12-118:19; Ex. 8 thereto (emphasis added).  A

9   few days later, Plaintiff received a text message from Jojo Antonio, one of his prior managers at

10  Twitter, saying "I heard you opt out," to which Plaintiff responded "Not exactly" with a smiley

11  face.  *Id.* at 119:3-120:6; Ex. 9 thereto.  When Antonio responded, asking "You still at twitter?"

12  Plaintiff responded, "**Nope, got fired**."  *Id.* at 120:7-14 (emphasis added).

13          **F.**    **Plaintiff Speculated Whether His Termination Related to His "Shitposting".**

14        After being fired, Plaintiff communicate with various colleagues about his termination.

15  Meckley Decl., Ex. 1 at 124:15-21; 145:5-8.  In a series of texts with one of his direct reports, John

16  Yeh, Plaintiff remarked being "[s]till confused about why this happened," referring to his

17  termination.  *Id.* at 122:4-8, Ex. 10 thereto.  Yeh responded, "We just had a social hour with Hamid

18  and the trend that he's finding was around social-water cooler posts," to which Plaintiff replied,

19  "I'd love to know what it was in my case. Pretty sure I was relatively respectful."  *Id.* at 122:9-15,

20  Ex. 10.  Yeh replied, "I just went back through your posts and it all looked good to me. Maybe he

21  didn't like the dumpster fire repost," to which Plaintiff asked "Was that a tweet I linked?"  *Id.* at

22  131:23-133:4; Ex. 10.  Plaintiff admitted "dumpster fire repost" referred to the Twitter bird in a

23  room on fire meme.  *Id.* at 132:24-133:4.  When Yeh sent Plaintiff a link to the meme in question,

24  Plaintiff replied, "Can't have been this one.." to which Yeh responded, "I'm trying to find a pattern

25  in the water cooler channel. Most of the really outspoken ones are gone and some that reposted

26  tweets are gone. But the latter seemed kind of random."   *Id.* at 169:11-170:4, Ex. 10.  Plaintiff

27  admitted that he understood "gone" to mean those employees had been fired.  *Id.* at 170:5-7.

28

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

Another coworker, Dave Beckett, also messaged Plaintiff, stating: "A bunch of folks just **got fired for cause this morning**. Seems to be for slack posting." *Id.* at 137:14-138:8; Ex. 12 thereto (emphasis added).  A few minutes later, Beckett followed up with another message, saying: "Damn that was you too. Badge of honor." *Id.* at 137:9-138:12; Ex. 12. Plaintiff responded, "**Thank you.** We should meet and share stories some time soon." *Id.* at 138:13-15; Ex. 12.  Plaintiff admitted never attempting to correct Beckett's statement that Plaintiff had been fired for cause. *Id.* at 140:10-13.

Later on the day of his termination, Plaintiff posted a tweet on his public Twitter account, re-sharing the Steve Buscemi meme he had previously posted, and stating:

> "I carefully reviewed my every tweet since the Twitter acquisition close on October 28 and afaict, this is the only example of my 'recent behavior' that I can possibly qualify as shitposting. I have questions."

Meckley Decl., Ex. 1 at 160:23-161:25; Ex. 17 thereto.  Plaintiff admitted that he was motivated to review his tweets because he was questioning whether he had been fired for so-called "shitposting" and was "curious to check whether [he] [had] unknowingly posted something that could violated Twitter policies." *Id.* at 165:9-167:5.

Plaintiff messaged a former coworker, Randy Hammons, stating: "I'm out now. Probably more relieved than distressed." *Id.* at 134:21-136:6; Ex. 11 thereto.  The next day, November 16, Hammons replied: "I heard. All because of posts in SWC. I'm very sorry, dude. Anything I can do to help?" *Id.* at 136:7-25; Ex. 11 thereto.[5]

On November 17, 2022, a former coworker Gurkan Oluc messaged Plaintiff saying, "Do you have any guess on why it might happened, I didn't see any snarky comment of yours in social-watercooler and a few RTs in your Twitter." *Id.* at 145:21-146:14; Ex. 13 thereto. Plaintiff responded in part, "They [i.e., "whoever made the decision to terminate me."] may have trawled through my public tweets but even that would have been fairly mild". *Id.* at 146:15-147:10, 147:20-148:2.

---

[5] Plaintiff understood "SWC" to mean the Social Water Cooler Slack channel.  Meckley Decl., Ex. 1 at 136:18-21.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

1    **III.    LEGAL STANDARD**

2          Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates

3    the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See*

4    Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.

5    2d 265 (1986).  The moving party can satisfy this burden in two ways: (1) by presenting evidence

6    that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the

7    nonmoving party failed to make a showing sufficient to establish an element essential to that party's

8    case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party

9    meets its initial burden, the nonmoving party cannot defeat summary judgment merely by

10    demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elec.*

11    *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D*

12    *Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support

13    of the non-moving party's position is not sufficient.").  Rather, the nonmoving party must "go

14    beyond the pleadings" and by "depositions, answers to interrogatories, and admissions on file,"

15    designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324

16    (quoting Fed. R. Civ. P. 56(e).

17    **IV.    ARGUMENT**

18          **A.    The Court Should Dismiss Plaintiff's Claims for Disability Discrimination.**

19          Plaintiff's disability discrimination claims are subject to the *McDonnell Douglas* three-part,

20    burden-shifting framework. *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1130 (9th Cir. 2020)

21    (*McDonnell Douglas* burden-shifting framework applicable to ADA claims); *Guz v. Bechtel Nat'l,*

22    *Inc.*, 24 Cal. 4th 317, 354 (2000) (*McDonnell Douglas* burden-shifting framework applicable to

23    FEHA claims).  Under this test, the employee must first establish a *prima facie* case of unlawful

24    discrimination.  *Guz*, 24 Cal. 4th at 354.  If a *prima facie* case is shown, then the burden shifts to

25    the employer to set forth a legitimate non-discriminatory reason for the adverse employment action.

26    *Id.* at 355-56.  If the employer satisfies its burden, any presumption of discrimination is eliminated

27    and the burden lies upon the employee to present admissible evidence to show the employer's stated

28    reasons are a mere pretext for unlawful discrimination.  *Id.* at 356.

### 1. Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination.

To state a *prima facie* case of discrimination, Plaintiff must present admissible evidence showing that he: (1) has a disability; (2) is otherwise qualified to do the job with or without reasonable accommodation; and (3) suffered an adverse employment action because of his disability. *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996); *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007). Here, Plaintiff cannot establish the first or third prong of the *prima facie* test.

### a. Plaintiff Did Not Qualify As Disabled Under the ADA or FEHA.

A plaintiff is "disabled" under the ADA if they have a physical or mental impairment that "substantially limits" one or more major life activities. 42 U.S.C. § 12102(1). The FEHA adopts a slightly broader definition of disability, requiring a "limit" – not a "substantial" limit – on a major life activity. Cal. Gov. Code § 12926(k)(1)(B). A disease or condition "limits a major life activity" within the meaning of the FEHA if it makes the achievement of the activity "difficult." *Sandell v. Taylor-Listug, Inc*., 188 Cal .App. 4th 297, 311 (2010). Major life activities include "physical, mental, and social activities and working." Cal. Gov. Code § 12926(k)(1)(B)(iii). Even if a person has a medical condition listed within the statute, such as cancer, the person is *not* disabled unless it makes them limited in a major life activity. *See Barger v. Owens-Brockway Glass Container, Inc*., No. C 97-4418 FMS, 1999 WL 51797 (N.D. Cal. Feb. 1, 1999) (holding that mandibular cancer was not a "disability" under the ADA or FEHA where the cancer was successfully removed and Plaintiff did not experience any relapse or recurrence). The plaintiff has the burden of "articulat[ing] with precision the impairment alleged and the major life activity affected by the impairment." *Poindexter v. Atchisoh*, 168 F.3d 1228, 1231 (10th Cir. 1999). The Court may consider only the major life activity that the plaintiff asserts. *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998); *see also Miller v. Md. Dep't of Nat. Res*., 813 F. App'x 869, 876 (4th Cir. 2020) (holding that the district court was not "required to infer that [plaintiff's alleged] 'difficulties' were substantial limitations ... merely because he defined 'disability' and said he had one"); *Dancause v. Mount Morris Cent. Sch. Dist.,* 590 F. Ap"x 27, 28–29 (2d Cir. 2014) (affirming dismissal where, "short of reciting activities found in the statute that she could not 'adequately' perform, [the

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

plaintiff] did not allege any facts from which a court could plausibly infer that her [alleged condition] substantially limited these major life activities").

Here, Plaintiff admitted that his history of cancer did not pose any practical limitations or restrictions on his major life activities or work in any way. *Id.* at 95:5-14 ("Q. And does that current status [i.e., routine monitoring for a potential recurrence of cancer] limit your activities or your -- restrict your work in any way? […] A. In theory or practically? Q. Practically. A. Practically, not that I'm aware of."). Plaintiff successfully completed his cancer treatment by early 2019, more than two years before he joined Twitter. *Id.* at 50:10-51:5; 53:5-10. He was never placed on any work restrictions or limitations by his medical providers at any time during his employment with Twitter. *Id.* at 59:10-60:3. Plaintiff underwent no cancer treatment, took no cancer medication, and suffered no symptoms relating to cancer during his employment with Twitter. *Id.* at 52:1-4; 58:13-16. Plaintiff never requested any type of leave of absence or made any request to Human Resources for any type of accommodation related to cancer. *Id.* at 49:22-24, 71:14-17. He never submitted any medical documentation regarding his history of cancer or communicated with Human Resources about his condition. *Id*. at 71:24-10, 75:8-15. The undisputed fact that Plaintiff had no restrictions and did not need any accommodations "is consistent with the conclusion that [p]laintiff did not suffer from a condition that qualifies as a disability." *Avila v. Cont'l Airlines, Inc.* (2008) 165 Cal .App. 4th 1237, 1249.

While Plaintiff testified that he experienced "some minor consequences from [his] chemotherapy like neuropathy, reduced hearing," he admitted that these conditions did not limit him from performing his work. *Id.* at 76:8-77:21 ("Q: So when you were working at Twitter, were you limited in any respect with respect to neuropathy? […] A: Limited in what? Performing my work duties? Q: Yes. A: Probably not. Q: Okay. And when you were working at Twitter, were you limited in any way in performing your work duties as a result of any type of hearing issue? […] A: I had to use, you know, videoconferencing set up with headphones to make sure that I would hear everything well enough, but I don't know whether I should attribute that to hearing loss after chemotherapy. Q: So you're not sure whether using videoconferencing with headphones was related to chemo or just because people do that sometimes? A: Yeah.").

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

In addition, Plaintiff testified that any limitation to his social interactions were "theoretical" and self-imposed as "a way for [him] to limit [his] risk" of catching COVID rather than a restriction imposed by a medical provider. *Id.* at 77:22-78:19, 79:9-16, 95:5-14 ("Q. And does that current status limit your activities or your -- restrict your work in any way? […] A. In theory or practically? Q. Practically. A. Practically, not that I'm aware of. Q. How about theoretically? A. Theoretically, absolutely. Q. How theoretically? A. Cancer history does not have an expiration date, so there is still a risk that my cancer would recur. […] And I have to calculate my exposure to things like COVID-19 against that risk."). Plaintiff understood that contracting COVID would not trigger a recurrence of his cancer; rather, his concern was that a concurrent COVID infection could delay treatment if his cancer were to return. *Id.* at 67:21-68:5. By his own admission, these hypothetical risks did not substantially limit any major life activities. Plaintiff admitted he went grocery shopping in public during his employment with Twitter. *Id.* at 85:24-86:19. He also attended in an in-person lunch meeting with vendors in September 2022, even after one of them disclosed that they had tested positive for COVID just two weeks prior. *Id.* at 87:2-92:19; Ex. 3 thereto. While Plaintiff took certain precautions, such as wearing a mask in public, such measures do not amount to "an impairment that presently 'substantially limits'" a major life activity, particularly given the fact that many people wore masks in public during the COVID pandemic. *Darby v. Childvine, Inc.*, 964 F.3d 440, 446 (6th Cir. 2020); *see also Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (holding that the "fear" of developing an ADA-qualifying condition based on an underlying condition was insufficient). Here, Plaintiff cannot establish that he was disabled within the meaning of the ADA or FEHA, and as a result cannot prove the first element of the requisite *prima facie* case.

### b. Plaintiff Cannot Establish That Twitter's Decision Makers Had Knowledge of His Alleged Disability.

Plaintiff cannot establish a *prima facie* case for the additional independent reason that he cannot establish that the persons who made the decision to fire him had any knowledge of his having had cancer. *Trop v. Sony Pictures Entm't. Inc.*, 129 Cal. App. 4th 1133, 1145-46 (2005); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 163-64 (5th Cir. 1996).

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

Here, the persons who identified Plaintiff as an insider threat risk and recommended he be fired were James Musk, Andrew Musk, and Ross Nordeen, none of whom had any knowledge of Plaintiff's cancer history.  A. Musk Decl., ¶¶ 3, 7-8; J. Musk Decl., ¶¶ 3, 7-8.  Plaintiff admitted that he never communicated with any of these individuals at any time during his employment with Twitter.  *Id.* at 98:5-22, 99:9-16.  Knowledge of his prior cancer diagnoses cannot be imputed because Plaintiff never informed Twitter's Human Resources about his condition, never requested any type of leave of absence, nor requested any accommodation related to cancer.  *Id.* at 49:22-24, 71:14-17.  It is well-settled and common sense that an adverse employment decision cannot be made "because of" a disability when the employer does not know of the disability.  *Brundag v. Hahn*, (1997) 57 Cal. App. 4th 228, 236-37.  "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts."  *Id.*

Plaintiff testified that he disclosed his cancer history to his manager, Hamid Tahsildoost, but admitted he had no evidence that Mr. Tahsildoost communicated it to anyone else at Twitter or that Mr. Tahsildoost was involved in the decision to terminate Plaintiff's employment. Meckley Decl., Ex. 1 at 69:14-20, 70:6-11, 99:17-100:15, 191:12-17, 231:4-12.  The only other person at Twitter to whom Plaintiff disclosed his history of cancer was a coworker named Dave Beckett.  *Id.* at 106:23-107:22 and Ex. 5 thereto.  On November 10, 2022, Plaintiff wrote to Beckett: "I am not coming to the office, I am at risk (between us: cancer survivor) and I am not risking my life to tick a box for an idjit child."  *Id.* at 107:23-108:6, Ex. 5.  However, Plaintiff admitted Beckett was a staff engineer who did not hold a managerial position and was not involved in the decision to terminate his employment.  *Id.* at 107:9-22; Gilbert Decl., ¶ 7.  While Plaintiff testified that he was "80 percent sure" he had completed a form during onboarding identifying "cancer history" as a disability, his Workday Human Resources records clearly show the contrary and that he selected under the "Disability" field: "**I do not identify as disabled/person with a disability**."  Meckley Decl., Ex. 1 at 68:17-13, 184:4-185:7, 223:2-224:1, Ex. 40; Gilbert Decl., ¶¶ 4-6, Ex. A thereto (emphasis added).

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

1    The undisputed evidence demonstrates that in the present case the decision makers did not

2    know anything about Plaintiff's prior history of cancer history and thus could not and did not base

3    their decisions on any such alleged disability.  As a result, Plaintiff's disability discrimination

4    claims must be dismissed for this reason.  *See Avila,* 165 Cal. App. 4th at 1247 (holding that plaintiff

5    could not prove discriminatory intent because employees who made the termination decision did

6    not know of the plaintiff's disability).

### 2. Twitter Had Legitimate Non-Discriminatory Reasons for Plaintiff's Termination.

Even if Plaintiff could prove a *prima facie* case (which he cannot), Twitter has presented

evidence confirming its legitimate non-discriminatory reasons for terminating Plaintiff's

employment.  *Guz, supra,* 24 Cal.4th at 355-56.  This is a minimal burden, and the employer need

only "articulate some legitimate, nondiscriminatory reason . . ."  *Bd. of Trs. of Keene State Coll. v.*

*Sweeney* (1978) 439 U.S. 24, 25, quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 80-2

(1973).  While Plaintiff may disagree with Twitter's reasoning, the applicable law makes clear that

even though an employer's reasoning "need not necessarily have been wise or correct," that does

not make it discriminatory. *Guz, supra*, 24 Cal.4th at 358.

Here, Twitter fired Plaintiff because it believed his public posts reflected an insider threat

risk and violated Company policy.  These legitimate business-related reasons are not based on any

protected characteristics.  *See, e.g., King v. United Parcel Serv., Inc.* 152 Cal. App. 4th 426, 434-

436 (2007) (no discriminatory animus where employment was terminated based on the legitimate

belief that the plaintiff violated the company's integrity policy by falsifying timecards); *McGrory*

*v. Applied Signal Tech., Inc.* 212 Cal. App. 4th 1510, 1524, 1527-28 (2013) (plaintiff's dishonesty

and violation of company's policies was a legitimate, non-discriminatory reason for termination).

Therefore, even if Plaintiff could establish a *prima facie* case, which he cannot, his discrimination

claim still must be dismissed.

### 3. Plaintiff Has No Admissible Evidence to Establish Pretext.

To avoid summary judgment, Plaintiff must show through admissible evidence that

Twitter's stated reasons for his termination were pretextual. *See, e.g.*, *Horn v. Cushman &*

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

1  *Wakefield W., Inc.*  72 Cal. App. 4th 798, 806-807 (1999).  Such evidence must be specific and

2  significantly probative; mere speculation and self-serving conclusions are insufficient to overcome

3  a defendant's stated legitimate reasons for the adverse employment action at issue.  *See Hersant v.*

4  *Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1009 (1997); *Cucuzza v. City of Santa Clara*, 104 Cal.

5  App. 4th 1031, 1038 (2002).  A triable issue cannot be created by "speculation, conjecture,

6  imagination or guess work."  *Myricks v. Lynwood Unified Sch. Dist.*, 74 Cal. App. 4th 231, 237

7  (1999).  "[S]uspicions of improper motives . . . based primarily on conjecture and speculation" are

8  not sufficient to meet this burden.  *Crosier v. United Parcel Serv.*, 150 Cal. App. 3d 1132, 1139

9  (1983).

10      Here, Plaintiff cannot proffer any evidence, let alone "specific and significantly probative"

11  evidence, connecting his termination to any alleged disability.  Plaintiff admitted that, during his

12  employment with Twitter, no one ever made any negative or derogatory comment regarding people

13  who had cancer or disabilities.  Meckley Decl., Ex. 1 at 194:13-195:4.  And, as described *supra*, he

14  cannot contradict the fact that the persons who identified him as an inside threat for termination

15  had no knowledge of any alleged disability.  A. Musk Decl., ¶ 7-8; J. Musk Decl., ¶¶ 7-8.  Finally,

16  Twitter fired more than thirty (30) other additional employees on November 15 for engaging in

17  similar "shitposting" as Plaintiff, an undisputed fact that completely undercuts any inference that

18  Plaintiff was chosen for termination because of his prior (unknown) medical history.  A. Musk

19  Decl., ¶ 3; J. Musk Decl., ¶ 3.

20      **B.**    **Plaintiff's WARN Act Claims Must Be Dismissed Because Plaintiff Was Fired**
        **"For Cause."**

21

22      The WARN Act only applies when an employer separates an employee as part of a mass

23  layoff.  29 U.S.C. § 2102(a); 20 C.F.R. § 639.2; Cal. Lab. Code § 1400 *et seq*.  Terminations "for

24  cause" are explicitly exempted from the WARN Act's requirements.  29 U.S.C. § 2101(a)(6)

25  (defining "employment loss" as "an employment termination, *other than a discharge for cause*…")

26  (emphasis added); *see also Collins v. Gee West Seattle, LLC*, 631 F.3d 1001, 1006 (9th Cir. 2011)

27  ("The [federal WARN] Act, however, also excludes those who retire, *are discharged for cause*, or

28  voluntarily depart from the definition of those experiencing employment loss.") (emphasis added).

15

Similarly, the California WARN Act does not apply to terminations for cause.  *See* Cal. Lab. Code § 1400.5(f) (defining "termination" as "the cessation or substantial cessation of industrial or commercial operations in a covered establishment"); *see also Gunderson v. Alta Devices, Inc.*, No. 19-CV-08017-BLE, 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021) ("The California WARN Act is similar to the federal WARN Act in most respects.").

Where an individual is terminated for cause, the termination does not qualify as an "employment loss" under the WARN Act.  *See Wiltz v. M/G Transp. Servs., Inc*., 128 F.3d 957, 963 (6th Cir. 1997) ("The three who failed the drug test suffered termination for cause and therefore cannot be counted in the fifty"); *Alter v. SCM Off. Supplies, Inc*., 906 F. Supp. 1243, 1250–51 (N.D. Ind. 1995) (holding that employees who were terminated after they failed drug tests did not count as "employment losses" under the WARN Act); *Leeper v. All. Res. Partners, L.P.*, 356 F. Supp. 3d 761, 764 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) (finding that employee who was fired for testing positive during a drug screen was discharged for cause); *Moore v. Warehouse Club, Inc*., No. 90-1869, 1992 WL 318560, at *4 (W.D. Pa. July 27, 1992), *aff'd*, 992 F.2d 27 (3d Cir. 1993) (finding no "employment loss" when an employee was either terminated for cause for excessive absenteeism and tardiness or voluntarily quit); *Solarcity Corp. v. Doria*, No. 16cv3085-JAH (RBB), 2018 WL 2229397, at *5 (S.D. Cal. May 16, 2018) (finding employee lacked standing to bring a WARN Act claim because he was terminated for cause before layoffs began).

The federal WARN Act does not define "for cause."  But the statutory language makes clear that an employer need only have *a* reason to fire an employee in order to exempt that termination from coverage under the WARN Act.  For example, the statute does not use the adjectives "*good* cause" or "*just* cause;" rather it exempts any termination "for cause."  Webster's Dictionary defines "cause" to mean "a reason for an action or condition."  It is axiomatic that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 102 (2008) ("We have to read [the ADEA] the way Congress wrote it.").  "Courts should rarely depart from a statute's clear meaning

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

because it risks creating a perception that they are inserting their own policy preferences into a law." *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1174 (9th Cir. 2017) (citations omitted). Here, the plain language of the WARN Act exempts from coverage a termination "for cause" – which means a termination for any bona fide reason.

The way in which Congress has chosen to use different language regarding "cause" terminations in other employment-related statutes is instructive. For example, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), like the WARN Act, simply uses the phrase "for cause." *See* 38 U.S.C. § 4316(c); *see also* 20 C.F.R. § 1002.248 (defining a "discharge *for cause*" under USERRA as a discharge "based either on conduct or, in some circumstances, because of the application of other legitimate nondiscriminatory reasons.") (emphasis added). In contrast, the Age Discrimination in Employment Act ("ADEA") uses the phrase "good cause." *See* 29 U.S.C. § 623(f)(3) (Under the ADEA, "[i]t shall not be unlawful for an employer, employment agency, or labor organization … to discharge or otherwise discipline an individual for *good cause*") (emphasis added).

The Ninth Circuit has acknowledged that where "Congress use[s] different language" in statutes, "such Congressional choice must be respected." *Guido*, 859 F.3d at 1174 (citations omitted) ("Congress used different language [in the 1972 Title VII Amendment] than it used in the 1974 ADEA Amendment, which changes the ADEA's meaning relative to Title VII, and such Congressional choice must be respected. [Citation] If Congress had wanted the 1974 ADEA Amendment to achieve the same result as the 1972 Title VII Amendment, it could have used the same language.").

The "for cause" exemption under the federal WARN Act has an analogous counterpart in the California WARN Acts, as "[t]he California WARN Act is similar to the federal WARN Act in most respects." *See Gunderson*, 2021 WL 4461569, at *3.. Specifically, the California WARN Act states:

> An employer may not order a *mass layoff*, relocation, or *termination* at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order to the following: (1) The employees of the covered establishment affected by the order.

17

Labor Code section 1401(a)(1) (emphasis added).

The terms "mass layoff" and "termination" have precise meanings as defined in Labor Code section 1400.5:

> (c) "Layoff" means a separation from a position for lack of funds or lack of work.
> (d) "Mass layoff" means a layoff during any 30-day period of 50 or more employees at a covered establishment.
> (e) "Relocation" means the removal of all or substantially all of the industrial or commercial operations in a covered establishment to a different location 100 miles or more away.
> (f) "Termination" means the cessation or substantial cessation of industrial or commercial operations in a covered establishment.

Here, it is undisputed that Plaintiff did not lose his employment because of a "layoff" as defined in the statute because he has not presented any evidence that he was separated from his position "for lack of funds or lack of work." Rather, the only admissible evidence in the record is that Twitter fired Plaintiff because Twitter determined that his public posts violated Company policy. A. Musk Decl., ¶¶ 7-8; J. Musk Decl., ¶¶ 7-8; Meckley Decl., Ex. 1 at 26:16-19; Gilbert Decl., ¶ 8.

Nor was Plaintiff subject to a "termination" as defined in the California WARN Act. The statute defines "termination" narrowly to mean "the cessation or substantial cessation of industrial or commercial operations in a covered establishment." *Id.* § 1400.5(f). There is no dispute that the Company did not cease operations in Borodaenko's place of employment, nor is there any dispute that Plaintiff's employment did not end due to a cessation of operations.[6] Thus, based upon the plain language of the statute, Plaintiff's termination was outside the coverage of the California WARN Act.

The California WARN Act was intended simply to supplement the federal WARN Act by requiring notification for layoffs, terminations, and relocations affecting fewer employees than the federal threshold and to "give communities a chance to prepare for the impact of large layoffs which do not trigger notification under the [federal] WARN Act." *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076 (2005) (quoting S. Rules Comm., Third Reading Floor

---

[6] Similarly, no dispute exists that a "relocation" has not occurred here. A "relocation" means the removal of all or substantially all of the industrial or commercial operations in a covered establishment to a different location 100 miles or more away. Labor Code section 1400.5(e).

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO

Analysis of Assemb. Bill No. 2957, at 1, 4 (Aug. 27, 2002)). Nothing in the legislative history indicates an intent to apply the California WARN notice requirements to employees fired for cause. On the contrary, both the federal and California statutory texts are entirely consistent on this point, *e.g.*, an employee "discharge[d] for cause" (federal WARN Act language) equally was not fired for "lack of funds or lack of work" (CA WARN Act language) – and thus an employee like Plaintiff Borodaenko who was fired for violating a company policy would be exempt from coverage under both Acts.

Any argument by Plaintiff that his posts did not violate Company policy or did not warrant his being terminated is irrelevant and immaterial. As case law has made clear, courts should not analyze whether an employer's decision to fire an employee was *sound or erroneous* but instead must limit their analysis to whether the decision was discriminatory. *See Cornwell v. Electra Cent. Credit Union* 439 F.3d 1018, 1029 (9th Cir. 2006) (stating that a plaintiff cannot "create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted"); *see also Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (a court should not "act as a super personnel department that second guesses employers' business judgments" (internal quotations omitted)).   By analogy here, it is irrelevant whether Plaintiff's social media posts warranted him being fired versus receiving a final written warning or some lesser form of discipline; rather, the Court *only* needs to consider the undisputed fact that Twitter had *a non-discriminatory reason* to fire Plaintiff.

Ample evidence of such a reason exists here, as described *supra*.  Because it is undisputed that he was fired "for cause," Plaintiff's WARN Act claims must be dismissed.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, all of Plaintiff's claims against Defendant fail, and the Court should grant Defendant's motion for summary judgment in its entirety.

1    Dated: August 13, 2025                          MORGAN, LEWIS & BOCKIUS LLP

2

3                                                    By _____ */s/ Eric Meckley*
                                                        Eric Meckley
4                                                       Brian D. Berry
                                                        Ashlee Cherry
5                                                       Attorneys for Defendant
                                                        X CORP. f/k/a TWITTER, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-7226-AMO